UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE<br><br>IDC CLAMBAKES, INC.,<br><br>DEBTOR | C.A. No. 07-0049-S |

**BRIEF OF GOAT ISLAND SOUTH CONDOMINIUM ASSOCIATION, INC., AMERICA CONDOMINIUM ASSOCIATION, INC., CAPELLA SOUTH CONDOMINIUM ASSOCIATION, INC., HARBOR HOUSES CONDOMINIUM ASSOCIATION, INC.**

ON APPEAL FROM A FINAL JUDGMENT OF THE
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

**REDACTED PURSUANT TO PROTECTIVE ORDER**

William R. Grimm (#1938)
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600 (FAX)

Charles D. Blackman (#5522)
155 South Main Street, Suite 101
Providence, Rhode Island 02903
(401) 455-1445
(401) 351-9653 (FAX)

April 13, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

BASIS FOR APPELLATE JURISDICTION .......... 1

STATEMENT OF THE ISSUES .......... 1

STANDARD OF REVIEW .......... 1

STATEMENT OF THE CASE .......... 2

A. PROCEDURAL HISTORY .......... 2

B. FACTS .......... 6

SUMMARY OF ARGUMENT .......... 9

ARGUMENT .......... 10

A. THE BANKRUPTCY COURT ERRED IN APPLYING THE DOCTRINE OF CLAIM PRECLUSION TO THE CONDOMINIUM ASSOCIATIONS' CLAIMS. .......... 10

1. Claim Preclusion Does Not Apply because Debtor was Not a Party to the 1999 Action and the Rhode Island Supreme Court Did Not Decide Anything Regarding *Debtor's* Liabilities to the Condominium Association .......... 10

2. The Doctrine of Issue Preclusion Does Not Apply .......... 11

3. The Court-Ordered Accounting Was Not an Adjudication of the Condominium Associations' Damage Claims that Are Now Pending in State Court .......... 12

B. DEBTOR IS JUDICIALLY AND EQUITABLY ESTOPPED TO CONFLATE THE SEPARATE CORPORATE IDENTITIES OF THE IDC ENTITIES .......... 13

C. THE BANKRUPTCY COURT'S DECISION IS INCONSISTENT WITH ITS OTHER ORDERS .......... 15

D. A BANKRUPTCY COURT CANNOT DISALLOW CLAIMS BASED ON THE "TOTALITY OF CIRCUMSTANCES" AND AN INADEQUATE SUMMARY JUDGMENT RECORD .......... 17

E. THE BANKRUPTCY COURT'S DECISION IS BASED IN PART ON ERRONEOUS FACTUAL ASSUMPTIONS ........ 21

F. DEBTOR TRESPASSED ON CONDOMINIUM PROPERTY FOR SEVEN YEARS ........ 24

CONCLUSION ........ 24

# TABLE OF AUTHORITIES

**Cases**

Blanchard v. Peerless Ins. Co., 958 F.2d 483, 488 & n.6 (1st Cir.1992) ....... 20

Boateng v. InterAmerican Univ., 210 F.3d 56, 60 (1st Cir. 2000) ....... 21

BP West Coast Products LLC v. Green, 318 F. Supp.2d 987 (E.D. Ca. 2004) ....... 21

In re Colarusso 382 F.3d 51, 57-58 (1st Cir. 2004) ....... 1

In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15-16 (1st Cir. 2003) ....... 21

Campbell v. Lederer Realty Corp., 47 R.I. 8, 11-12, 129 A. 732, 733 (1925) ....... 25

E.I. Du Pont De Nemours & Co., Inc. v. Cullen, 791 F.2d 5 (1st Cir. 1986) ....... 21

E.W. Audet & Sons, Inc., 635 A.2d 1181, 1186 (R.I. 1994) ....... 11

Eastern Motor Inns, Inc. v. Ricci, 565 A.2d 1265, 1272 (R.I. 1989) ....... 23

Ferreira v. Strack, 652 A.2d 965, 969 (R.I. 1995) ....... 25

Franco v. Selective Ins. Co., 184 F.3d 4, 9 (1st Cir. 1999) ....... 15

Frederique-Alexandre v. Department of Natural and Environmental Resources, 2007 WL 613738, *3 (1st Cir. Mar. 1, 2007) ....... 19

Gens v. Resolution Trust Corp., 112 F.3d 569, 572-73 (1st Cir. 1997) ....... 15

Heiser v. Woodruff, 327 U.S. 726 (1946) ....... 10

Kremer v. Chemical Construction Corp., 456 U.S. 461, 481-82 (1982) ....... 10

McCarthy v. Azure, 22 F.3d 351, 363 (1st Cir. 1994) ....... 16

Mulholland Const. Co. v. Lee Pare & Associates, Inc., 576 A.2d 1236, 1238 (R.I. 1990) ....... 11

In re Ontos, Inc., No. 06-1512 (1st Cir. March 1, 2007) ....... 16

Parente v. Town of West Warwick, 868 F.2d 522, 523 (1st Cir. 1989) ....... 21

Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987) ....... 15

Rathbun v. Autozone, Inc., 253 F.Supp.2d 226, 228 (D.R.I. 2003) ....... 1

Rhode Island Economic Development Corporation v. The Parking Company, L.P., 909 A.2d 943, 945 (R.I. 2006) ....... 18

Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002) .......... 1

Rodriguez v. Montalvo, 649 F.Supp. 1169, 1179 (D.P.R. 1986) .......... 20

Rogan v. Menino, 175 F.3d 75, 79 (1st Cir. 1999) .......... 19

St. Jean Condominium Ass'n v. DeLeo, 745 A.2d. 738, 740-41 (R.I. 2000) .......... 24

St. Sava Home v. Christopher, 537 A.2d 69,72 (Pa. Commw. Ct. 1988) .......... 23

In re Spigel, 260 F.3d 27, 33 (1st Cir. 2001) .......... 10

Stella v. Town of Tewksbury, 4 F.3d 53, 55 (1st Cir. 1993) .......... 19

Tyler v. City of Haverhill, 272 Mass. 313, 316, 172 N.E. 342, 343 (1930) .......... 23

In re Varrasso, 37 F.3d 760, 763 (1st Cir. 1994) .......... 1

Young v. City of Providence *ex rel.* Napolitano, 404 F.3d 4, 13 (1st Cir. 2005) .......... 19

**Statutes**

28 U.S.C. § 158(a)(1) .......... 1

RIGL § 34-36.1-2.07(e) .......... 24

RIGL § 34-36.1-3.02(a)(9) .......... 24

RIGL § 34-36.1-3.03(a) .......... 24

RIGL § 34-36.1-3.12 .......... 24

**Rules**

Fed. R. Bank. P. 7056 .......... 1

Fed. R. Bank, P. 8013 .......... 21

Fed. R. Civ. P. 56 .......... 1

**Texts and Treatises**

41 Am. Jur. 2d, Improvements § 3 (2004) .......... 23

42 C.J.S. Improvements § 3 (1991) .......... 23

Restatement (Second) of Torts § 158, 329 (1965) .......... 25

## BASIS FOR APPELLATE JURISDICTION

This Court has appellate jurisdiction over the final judgment of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1).

## STATEMENT OF THE ISSUES

1. Did the Bankruptcy Court Misapply the Doctrine of Res Judicata and Improperly Disallow on Summary Judgment the Condominium Associations' Valid Claim for Trespass Damages?

2. Did the Bankruptcy Court Improperly Disallow the Condominium Associations' Valid Claim for Trespass Damages Based on the "Totality of the Circumstances"?

## STANDARD OF REVIEW

The standards under Rule 7056 of the Federal Rules of Bankruptcy Procedure are the same as those under Rule 56 of the Federal Rules of Civil Procedure. In re Varrasso, 37 F.3d 760, 763 (1st Cir. 1994). The appellate standard of review is likewise the same. A district court reviews a bankruptcy court's order granting summary judgment *de novo*. In re Colarusso 382 F.3d 51, 57-58 (1st Cir. 2004). The reviewing court is required to accept Appellants' version of the facts as true and to draw all reasonable inferences therefrom in Appellants' favor. Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002). The court may not weigh conflicting evidence or superimpose its own ideas of probability, likelihood, or fairness as to the ultimate outcome of the case. Rathbun v. Autozone, Inc., 253 F.Supp.2d 226, 228 (D.R.I. 2003).

## STATEMENT OF THE CASE

### A. PROCEDURAL HISTORY

This bankruptcy followed a prior pending State court action, America Condominium Ass'n v. IDC, Inc., IDC Properties, Inc. and Thomas R. Roos, 844 A.2d 117 (R.I. 2004), affirmed on reargument, 870 A.2d 434 (R.I. 2005). In America Condominium, the Rhode Island Supreme Court held that Debtor's purported landlord, IDC Properties, Inc., violated the Rhode Island Condominium Act by attempting to unlawfully extend a right to conduct additional development within the Goat Island South Condominium for twenty years. The upshot of the America Condominium decisions was that (1) certain portions of the Goat Island South Condominium that were once reserved for possible future development were found to be common elements of the condominium (as opposed to being "units" that IDC Properties claimed to own separately), and (2) the condominium unit owners (rather than IDC Properties) controlled their own unit owners association. Significant here is a portion of the Goat Island South Condominium known as the "Reserved Area."

IDC Properties claimed to own the Reserved Area after attempting to unlawfully extend and exercise its development rights in December 1994. IDC thereafter paid condominium fees associated with the Reserved Area to an IDC-controlled condominium association. Beginning in 1998, in the face of a threatened (and long foreseen) lawsuit by the unit owners, IDC Properties improved the Reserved Area with a building that later came to be known as The Newport Regatta Club. Because IDC Properties constructed the Regatta Club in the face of a known claim, the Supreme Court found that it constructed the Regatta Club at its peril and confirmed title of the Reserved Area and the Regatta Club in the unit owners as part of the condominium common elements. America Condominium I, 844 A.2d at 135. The Court also held that the

condominium associations had to account to IDC Properties for the condominium fees paid after 1995 based on IDC's incorrect premise that the undeveloped land was three separately-owned "units" of the condominium. Id. n.24.[1]

The Supreme Court remanded the case to Newport County Superior Court for entry of an Amended Partial Judgment under Rule 54(b) and for trial of the associations' remaining claims for money damages. Id. The Supreme Court did not, as Debtor argued falsely to the Bankruptcy Court, "den[y] the condominium associations a right to recover money damages in *America I.*" (App. 0164) (Debtor's Memorandum in Support of Motion for Summary Judgment at 19 (September 1, 2006)). The remaining damage claims are now pending in the Rhode Island Superior Court.

On May 27, 2005, pursuant to the Supreme Court's mandate, the Rhode Island Superior Court (Nugent, J.) entered an Amended Partial Judgment under Rule 54(b). (App. 0630-32.) After voluntarily dismissing a state court receivership action, Debtor filed this bankruptcy on June 16, 2005. (App. 003.) The next day, on June 17, 2005, the State Court plaintiffs (i.e., the America Condominium Association and the Capella South Condominium Association) requested a writ of execution for possession of the property. (App. 0607, 0627-29.) The State Court Plaintiffs sought judicial process only against the State Court Defendants (i.e., IDC Properties, Inc., IDC, Inc., and Thomas R. Roos). They did not ask that any judicial process be issued against Debtor. Id.

On June 21, 2005, Debtor filed an Adversary Complaint in Bankruptcy Court, seeking a temporary restraining order and preliminary injunction to enjoin the Condominium Associations from interfering with Debtor's wrongful possession of the condominium's property. (App. 0078,

---

[1] Contrary to the Bankruptcy Court's Decision, IDC Properties did not make a "request for an accounting [or] for reimbursement of expenses paid in connection with the Reserved Area after December 1994." That finding is clearly erroneous.

0600) Debtor then asserted that it was a "tenant" under an unrecorded lease of the premises from IDC Properties. (App. 0656, 0678).

On June 22, 2005, the Condominium Associations[2] moved to dismiss the entire bankruptcy action pursuant to 11 U.S.C. § 1112(b), charging that this bankruptcy case was a not brought in good faith, that it was a "sham," and that its only purpose was to adjudicate a "two party dispute" before a judge of Debtor's choosing. (App. 004, ##10,13). The Bankruptcy Court heard argument on June 23, 2005. (App. 0387-443).

The Condominium Associations argued that Debtor had improperly invoked the bankruptcy laws as a means of avoiding Judge Nugent in Newport County, to relitigate issues already decided by the Rhode Island Supreme Court, and to tie the Condominium Associations up in protracted litigation while continuing to make millions of dollars operating a business on property that it did not own.[3] (Record # 37-39). Debtor, by contrast, argued that (1) this bankruptcy was a legitimate filing under the Bankruptcy Code, (2) that IDC Clambakes was a legitimate and separate company than the State Court Defendants (*i.e.*, IDC, Inc. IDC Properties, Inc., and Thomas R. Roos), (3) that IDC Clambakes, Inc. was not a party to the prior State court proceedings and that its rights and obligations had never been litigated. (App. 0673-695)

The Bankruptcy Court resolved the initial motion practice in Debtor's favor. (App. 0441) Judge Votolato accepted Debtor's counsel's representations that it was legitimately a separate

---

2 The original movants were the America Condominium Associations, Inc., Capella South Condominium Association, Inc and Harbor Houses Condominium Associations, Inc. (App. 004, #10) The Goat Island South Condominium Association, Inc. joined the motion on June 29, 2005 (App. 004, #13), following an organizational meeting on June 25, 2005.

3 The Condominium Associations' position was not unfounded. Roos testified at the ensuing hearing that IDC continued book events at the former Regatta Club after the Rhode Island Supreme Court's decisions on the belief that it could tie the condominium unit owners up in potentially years of additional bankruptcy litigation. (App. 0455) (Testimony of Thomas Roos) ("We also felt that -- we knew that title or not having been resolved . . . *you know, worse case scenario. . . there were years of -- years would go by before the rights of IDC Clambakes to be on the site would be actually, you know, fully determined . . .").*

company than IDC Properties. (App. 0422). Based on this ruling, the Condominium Associations later entered into a Consent Order under which they allowed Debtor to continue operating a business on the property until November 5, 2005. (App. 0015, #93; Record #33). As a result of the Consent Order and this bankruptcy, the bankruptcy estate earned approximately $1.5 million in profits from its 2005 operations (see App. 0756 (describing profits as "receivable"), and the Debtor (or other IDC entities) avoided potentially scores of lawsuits for breach of contract or fraud.

On October 3, 2005, the Condominium Associations timely filed proofs of claim against the bankruptcy estate claiming money damages for Debtor's trespass on the unit owners' property from 1998 to April 8, 2005. (App. 0091-95). Debtor objected to the Condominium Associations' claims on March 16, 2006. (App. 0096). Debtor contemporaneously filed a Second Adversary Complaint in the Bankruptcy Court that collaterally attacked the America Condominium decisions and sought restitution from the Condominium Associations on an unjust enrichment theory. (App. 0084; Record #27). The Condominium Associations moved to dismiss the Second Adversary Complaint or, alternatively, that the Court abstain under 28 U.S.C. 1334(c). (App. 0086, ##8-9; Record #27). The Bankruptcy Court abstained from considering Debtor's Second Adversary Complaint, leaving Debtor free to pursue the claims in State Court *against* the Condominium Associations on the premise that Clambakes' rights were not adjudicated in the prior litigation. (App. 0131).

On September 1, 2006, Debtor moved for summary judgment with respect to the Condominium Associations' trespass claims. (App. 0143). The Condominium Associations objected on September 21, 2006, and supported their objection with an Affidavit of Daniel

Kinder and sworn testimony from Debtor's own witnesses.[4] (App. 0241-0530). Those facts, which this Court is bound to accept under Bankruptcy Rule 7056, set forth as follows.

**B. FACTS**

1. The Goat Island South Condominium was established by a Declaration of Condominium dated January 12, 1988, which was thereafter amended and restated by a First Amended and Restated Declaration of Condominium dated March 3, 1988 (the "FAR Declaration"). (App. 0266-0354).[5]

2. Both the Original Declaration and the FAR Declaration described the northern portion of the Condominium as the "Reserved Area." As amended and restated, the declarant reserved for itself and its successors and assigns the right until December 31, 1994 to further develop the Reserved Area. (App. 0284-288) (FAR Declaration, ¶¶6.1-6.8).

3. The Reserved Area is not a legally separate lot. It is merely a name ascribed to a portion of the Goat Island South Condominium. (App. 272, 0340) (FAR Declaration ¶1.30 & "Exhibit D-6" thereto). It was originally a common element of the condominium that was subject to defeasance by the declarant's valid exercise of "special declarant rights." (App. 272, 0286) (FAR Declaration, ¶¶ 1.30, 6.3); see also America Condominium Ass'n v. IDC, 870 A.2d 434, 443 (R.I. 2005) ("America Condominium II") (holding that development rights under the Condominium Act amount to right to defease the unit owners of commonly owned property).

4. IDC Properties, Inc. purchased the special declarant rights on October 19, 1994. At the time that IDC Properties purchased the rights, it understood that there was an expiration of

---

[4] The Bankruptcy Court subsequently stayed discovery over the Condominium Associations' objection, and denied the Condominium Associations discovery from IDC Properties pending decision of Debtor's motion. (App. 0068, #471).

[5] The distinction between the Original Declaration and the FAR Declaration is not material in this appeal. Debtor's original motion papers distinguishes between the Original Declaration and the FAR Declaration to buttress *IDC Properties'* frivolous claims in the State Courts that notwithstanding America I and America II, its development rights were valid and exercisable in June 2005. (App. 0503-26). The Rhode Island Superior Court rejected that premise on September 5, 2006. (App. 0529).

development rights on December 31, 1994 and that it either had to "rush forward and execute [them]" or extend them. (App. 0373-74).

5. On December 28 and December 29, 1994, IDC Properties purported to extend and/or exercise its special declarant rights. The Rhode Island Supreme Court has since declared that its purported extension of the special declarant rights (*i.e.*, the Fifth Amendment) was unlawful, see America Condominium I, 844 A.2d at 130, and that its purported exercise of those rights (*i.e.*, the Sixth Amendment) was ineffective, see America Condominium II, 870 A.2d at 442; America Condominium I, 844 A.2d at 131.

6. Debtor, through its principal, Thomas R. Roos and attorneys, had actual knowledge in the fall of 1997, if not before, that IDC Properties' assertion of title to the Reserved Area was in dispute. (App. 0377-385) (Deposition of Timothy More) ("Matt Medeiros [then-counsel for the America Condominium Association] . . . took the position even that the creation of the North Development Unit wasn't valid either."); (App. 0458-62, 0465-66) (Testimony of Thomas Roos) ("I recognized that there was -- that there was some exposure to the -- to the development rights which were specified in the declaration and which were extended by the vote taken -- the variety of votes taken in 1994. I recognize that there was -- that there was a possibility that they were not -- that they'd be -- that they could be challenged in court. . . ." and 81-82 ("I believe that they were trying to say that I couldn't build on the property" and also identifying Defendants' Exhibit 7, a letter from Thomas Roos dated November 14, 1997 that threatens unit owners with counterclaim for *slander of title*)); and (App. 0375)(Deposition of Thomas Roos).

7. Debtor also had actual knowledge (through Roos) no later than the fall of 1997 that Chicago Title Insurance Company had declined to insure IDC Properties' assertion of title to

the Reserved Area for the reasons that, in hindsight, predicted the Rhode Island Supreme Court's decisions. (App. 460-61, 470) (Testimony of Thomas Roos, identifying Exhibit 10)

8. IDC Properties signed a Tolling Agreement dated January 5, 1998. (App. 0355)

9. Debtor had actual knowledge regarding the Tolling Agreement because its principal, Thomas R. Roos, signed it. Id.

10. IDC Properties constructed the former Newport Regatta Club during 1998. (App. 0365, ¶4.)

11. Debtor leased the premises from IDC Properties beginning in 1998. (App. 0462-63, 471).

12. The leased "Premises" included the improvements to the Reserved Area. (App. 0472).

13. The lease between Debtor and Properties was not recorded. (App. 0464) (by stipulation on question from Court).

14. The condominium associations lacked knowledge, actual or constructive, that a landlord-tenant relationship allegedly existed between Debtor and IDC Properties until June 2005. (App. 0266, ¶ 4).

15. At the time that Debtor entered into the lease with Properties, Debtor (again, through its principal, Thomas R. Roos) had actual knowledge that its landlord's title was in dispute. (App. 0465 and supra ¶¶ 6-8).

16. The Condominium Associations did not expressly or impliedly consent to Debtor's use or occupation of the Premises beginning in 1998. (App. 0267, ¶ 5). Debtor entered on the condominium property without consent of the unit owners and with full knowledge that its landlord's title was in dispute.

17. According to Debtor, it paid IDC Properties $15,000 per month, amounting to approximately $[redacted] in rent for the period between 1998 and 2005. (App. 463, 0656).

18. Debtor never paid the associations anything for its use and occupation of the property over the seven year period in question. (App. 0267, ¶ 6).

19. The Reserved Area was never separately owned by IDC Properties but rather "always were common elements of the condominium." America Condominium II, 870 A.2d at 443. IDC Properties built the Newport Regatta Club in the face of a known claim and therefore at its peril. America Condominium I, 844 A.2d at 135.

20. On October 3, 2005, the Condominium Associations asserted trespass claims, seeking the fair value of Debtor's use and occupation of the Reserved Area for the period between 1998 and April 8, 2005. (App. 0091-95). The condominium associations make no claim on account of Debtor's use of the premises after April 8 2005, which is the period covered by the Consent Order. Id.

## SUMMARY OF ARGUMENT

Debtor has relied on inconsistent positions to justify this bankruptcy in the first instance and then to support its motion for summary judgment. When it served its interests, Debtor asserted that "Clambakes was never made a party to the litigation between [IDC] Properties and [the condominium associations]" and that "the issue of the use and enjoyment of the Reserved Area by Clambakes' operating business has never been litigated." (App. 0616-17). Now that it no longer serves its interests, Debtor conflates the avowed separate corporate identities of IDC Clambakes and IDC Properties and argues that the Rhode Island Supreme Court adjudicated *Debtor's* rights and liabilities vis á vis the condominium associations even though neither Debtor nor Debtor's liabilities were even before the Court.

The doctrine of res judicata does not bar the Condominium Associations' claims against Debtor. The doctrine of claim preclusion requires an identity of parties and claims, neither of which exists here. The America Condominium litigation involved different claims between different parties. The only way to arrive Debtor's desired result is to confuse the doctrines of claim preclusion and issue preclusion, which is what the Bankruptcy Court did.

Debtor is judicially and equitably estopped to deny is separate legal existence from IDC Properties. Debtor obtained extraordinary relief under Chapter 11, including a complete discharge of its liabilities under a confirmed plan of reorganization. It also earned approximately $1.5 million in net profits from its 2005 operations based in the premise that Clambakes and Properties are different. The Bankruptcy Court erred in letting Debtor change its position mid-course and to disavow its previous position when it no longer served Debtor's interests.

Legal consequences follow from Debtor's initial positions on which the Condominium Associations and the Bankruptcy Court relied and acted. One of those consequences is that because Debtor was never in lawful possession of the unit owners' property between 1998 and April 2005, it is liable to the Condominium Associations for trespass damages.

## ARGUMENT

### A. THE BANKRUPTCY COURT ERRED IN APPLYING THE DOCTRINE OF CLAIM PRECLUSION TO THE CONDOMINIUM ASSOCIATIONS' CLAIMS.

Claim preclusion and issue preclusion are different legal doctrines.[6] The doctrine of claim preclusion (commonly, *res judicata*) bars relitigation of the same claim between the same parties. Mulholland Const. Co. v. Lee Pare & Associates, Inc., 576 A.2d 1236, 1238 (R.I. 1990).

---

[6] The rules of claim preclusion and issue preclusion apply in bankruptcy proceedings. Heiser v. Woodruff, 327 U.S. 726 (1946); In re Spigel, 260 F.3d 27, 33 (1st Cir. 2001). The preclusive effect of a Rhode Island court's judgment is determined with reference to Rhode Island law. Kremer v. Chemical Construction Corp., 456 U.S. 461, 481-82 (1982); In re Spigel, 260 F.3d at 33.

Issue preclusion (commonly, collateral estoppel) bars relitigation of a factual or legal issue that was actually litigated and decided in prior litigation. E.W. Audet & Sons, Inc., 635 A.2d 1181, 1186 (R.I. 1994). While issue preclusion may be asserted offensively by a third-party to collaterally estop his opponent to relitigate a *fact or issue*, claim preclusion applies only as to an identical claim between the same parties or their privies. Mullholland, supra. The Bankruptcy Court confused these principles and reached the wrong result.

1. Claim Preclusion Does Not Apply because Debtor was Not a Party to the 1999 Action and the Rhode Island Supreme Court Did Not Decide Anything Regarding *Debtor's* Liabilities to the Condominium Association.

Claim preclusion does not apply because there is neither an identity of parties or claims. First, as Debtor repeatedly pointed out in its efforts to justify this bankruptcy case in the first instance, Debtor was not a party to the America Condominium litigation. (App. 0616-17) (Debtor's Memorandum in Support of Application for a Temporary Restraining Order at 13-14, A.P. No. 05-1040 (filed June 21, 2005) ("the issue of the use and enjoyment of the Reserved Area by Clambakes' operating business has never been litigated . . . because Clambakes never had its day in court.")) Neither Debtor's rights nor its liabilities were adjudicated in the former litigation. As Debtor originally told the Bankruptcy Court in a sworn affidavit:

> Despite having never raised the issue in the 1999 Litigation and having never brought any action against Clambakes, the Sub-Associations are ignoring the separate and distinct corporate identity of Clambakes and are attempting to treat Clambakes as one in the same as IDC [Properties]. In fact, Clambakes is not the same entity.

(Affidavit of Tucker Coffin, ¶11, 14)(App. 0657). Debtor advanced arguments to this effect and succeeded on those arguments. (App. 0398-99, 419, 422, 441, 447, 657, 686-87).

Second, the claims that were decided in America Condominium were not trespass claims, let alone trespass claims against Debtor. They were not even claims for money damages. The

claims decided by the America Condominium judgment were all declaratory judgment claims relating to the validity of several (now-declared unlawful) amendments to the condominium declaration, an illegal representative voting scheme, the ownership of the disputed parcels, and control of the Goat Island South Condominium Association. (App. 0630-32). The Supreme Court was not presented with any claim for money damages (as Debtor falsely represented to the Bankruptcy Court) and, therefore, did not decide any claim for money damages.

The America Condominium litigation determined that *Debtor's landlord* did not separately own the Reserved Area (and ordered an accounting of condominium fees paid by IDC Properties after 1995). *Debtor's* potential liabilities to the associations were not then in issue. It is therefore impossible that the Supreme Court adjudicated anything relating to Debtor's potential liabilities to the unit owners. Claim preclusion cannot apply.

2. The Doctrine of Issue Preclusion Does Not Apply.

The doctrine of issue preclusion is also inapplicable here. Issue preclusion is limited to facts and issues that were actually litigated and decided. The doctrine of issue preclusion does not apply here for three reasons.

First, the "right to recover money damages" by a party against a third party is not an "issue;" it is a claim. There is no rule that a former judgment in favor of a landlord bars a subsequent claim against the landlord's tenant.[7]

Second, *Debtor's rights and liabilities* were not in issue in the America Condominium litigation, let alone "actually litigated and decided." The Condominium Associations did not even know that Debtor claimed a leasehold interest in their property under an unrecorded lease.

7 For example, an injured party can assert separate claims for premises liability against a landlord and a tenant. An earlier finding that the landlord was non-negligent does not also mean that the tenant was non-negligent. Thus, while the injured party may be collaterally estopped to relitigate the landlord's negligence, he is not barred from pursuing claims against the tenant.

(App. 0266, ¶ 4). Debtor was not even before the America Condominium Court. Thus, while the prior State court proceedings adjudicated *IDC Properties'* lack of title, the case had nothing to do with Debtor, the unrecorded lease, or Debtor's wrongful use of the premises for seven years.

Third, the Supreme Court did not decide anything relative to money damages. The claims on appeal were all declaratory judgment claims. The America Condominium Court specifically remanded the matter for trial of the remaining claims for money damages. America Condominium I, 844 A.2d at 135.

3. The Court-Ordered Accounting Was Not an Adjudication of the Condominium Associations' Damage Claims that Are Now Pending in State Court.

The Bankruptcy Court's judgment is founded on a footnote in America Condominium I. That footnote addresses the scope of the Court-ordered accounting of condominium fees paid by IDC Properties after 1995:

> This accounting is confined to the common expenses paid by defendants [IDC, Inc., IDC Properties, Inc., and Thomas R. Roos] on the master units after the expiration of their development rights on December 31, 1994. It does not include any profits that the defendants [IDC, Inc., IDC Properties, Inc., and Thomas R. Roos] may have earned from its operation of the Newport Regatta Club.

America I, 844 A.2d at 135 n.24 (hereinafter, "Footnote 24"). Reading Footnote 24 in a vacuum, the Bankruptcy Court concluded this footnote forecloses the Condominium Associations from seeking damages against any of the State Court defendants and any third party. The Bankruptcy Court took Footnote 24 out of context.

The true background of Footnote 24 had nothing to do with money damages. The court-ordered accounting and the accompanying Footnote 24 was the Supreme Court's response to one of IDC Properties' arguments relating to title. Properties used its payment of condominium fees

as evidence of its title and to bolster its arguments that enforcement of the Condominium Act would be "unfair." (App. 0900, 915, 917, 927, 939, 1006, 1008, 1020). Specifically, IDC Properties argued that the disputed parcels were "units" because "units" pay condominium fees and it paid condominium fees associated with those parcels beginning in 1995. Id. While the Supreme Court ultimately held that the undeveloped parcels were not "units," it also found that it would be inequitable for the unit owners to retain the benefit of the fees that IDC Properties paid but should not have paid. America Condominium I, 844 A. 2d at 135n.24. The Court *sua sponte* ordered an accounting on that issue. That issue, however, was not actually litigated.

The associations' claims are also not precluded by Footnote 24 because the condominium associations are not seeking *IDC Properties*' or *IDC Inc.*'s profits, or, for that matter, all of Debtor's *profits*. The Condominium Associations are merely seeking the fair value of Debtor's use and occupation of their property. While the Supreme Court stated that the State Court defendants (*i.e.*, IDC Properties, IDC Inc. and Thomas R. Roos) were not liable to account for *their* profits, the Supreme Court did not state in Footnote 24 or anywhere else that the associations are not entitled to be compensated for the fair value of a third party's unlawful use and enjoyment use of the Reserved Area. Meanwhile, Debtor has consistently maintained in this proceeding that *IDC Properties'* profits and *IDC Inc.*'s profits are different than *IDC Clambakes*' profits. (App. 0463, 0656, 0750-55). Because *IDC Properties' profits* and *IDC Inc.'s profits* are not in issue (or reachable) in this bankruptcy, Footnote 24 has no preclusive effect.

### B. DEBTOR IS JUDICIALLY AND EQUITABLY ESTOPPED TO CONFLATE THE SEPARATE CORPORATE IDENTITIES OF THE IDC ENTITIES

The doctrine of judicial estoppel "precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already [successfully] asserted in another."

Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987). Judicial estoppel operates to prevent litigants from "playing fast and loose with the courts" by using "intentional self-contradiction ... as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." Id.; see also Gens v. Resolution Trust Corp., 112 F.3d 569, 572-73 (1st Cir. 1997). "Unfair advantage" exists where a party "succeeded previously with a position directly inconsistent" with the position it is advancing in the litigation. Franco v. Selective Ins. Co., 184 F.3d 4, 9 (1st Cir. 1999).

Debtor argued at the outset of this bankruptcy case that Properties and Clambakes were not the same and that the State Court judgment had no effect on its rights as a legally separate and independent corporation. Debtor filed an affidavit that "Clambakes is not the same entity [as IDC Inc or IDC Properties]." (App. 0657, ¶ 14). It proffered testimony that IDC Clambakes, Inc. is a "totally separate company" with "its own assets and liabilities," App. 0447, and argued that "Clambakes . . . had to file this proceeding solely as a result of the impact of that litigation upon *Clambakes as a third-party*." (App. 0687) (emphasis added). Indeed, this entire bankruptcy is founded on Debtor's contention that IDC Clambakes, Inc. "is a meaningful, independent, separate business [than Properties]." App. 0398.

> MR. SHINE: Your Honor, please, IDC Clambakes is a separate corporation that Mr. Roos operates and controls. Several. Ten or 12. They're separate corporations, separate existences . . . and it's a real business.
>
> * * *
>
> [T]his is not a frivolous filing . . . Clambakes wasn't a party, wasn't involved in those proceedings. Clambakes believed, and its special counsel under Rule 11 has filed a complaint that on its face is colorable . . . that asserts that there is a course of conduct and activities involving Clambakes. Not IDC. We don't represent IDC [Inc. or Properties, Inc.]. Clambakes is a Chapter 11 debtor. We're counsel to the Chapter 11 debtor [IDC Clambakes, Inc.] . . . . They've got to try to protect the customers and the assets . . . these

> issues were not litigated in the Superior Court and in the Supreme Court involving IDC.
>
> * * *
>
> And all I can tell you is that [because the sole stockholder of Debtor was involved in the 1999 litigation] disrespects the legal existence of a viable, valid independent corporation . . . .

(App. 0398-99, 0419).

The Bankruptcy Court respected the corporate form that Debtor advanced, App. 0422 ("THE COURT: I can't ignore Mr. Shine's arguments that corporations do have some recognition."), and granted a TRO over the condominium associations' objection. (App. 0441). The Bankruptcy Court later confirmed a plan of reorganization and Debtor has been awarded all of the relief that it requested, and permitted Debtor to sue the Associations in State Court all based on the premise that Clambakes' rights and liabilities vis á vis the Condominium Associations were not adjudicated in the prior State Court litigation. (App. 0102). In this posture, Debtor is judicially estopped to claim that its rights and liabilities were decided in the America Condominium litigation.

Debtor is also equitably estopped to deny that it is a legally separate corporation and a non-party to the America Condominium decisions. Under the law of corporations, a corporation is *per se* estopped to deny its separate legal existence. See In re Ontos, Inc., No. 06-1512 (1st Cir. March 1, 2007) ("a corporation may generally not pierce its own veil."), citing, McCarthy v. Azure, 22 F.3d 351, 363 (1st Cir. 1994) (corporation cannot invoke alter ego doctrine); see also 1 Fletcher Cyclopedia on the Law of Private Corporations, § 47 at 773 (Rev. 1999). Debtor relied on a separate corporate existence to justify this bankruptcy, apparently believing that it could milk several years of unlawful use and occupancy through protracted litigation. (App. 0455). Debtor is now estopped to deny the separateness of its own liabilities. See 1 Fletcher on

Corporations, id. (a corporation "cannot be inconsistently regarded and at the same time disregarded"); see also McCarthy v. Azure, 22 F.3d 351, 363 (1st Cir. 1994) ("As appellant is not even arguably an innocent third party disadvantaged by someone else's blurring of the line between a corporation and the person who controls it, but, rather, is himself the one who is claimed to have obscured the line, he cannot be permitted to use the alter ego designation to his own behoof.").

Debtor cannot have it both ways. As Debtor has now obtained the benefit of a confirmed a plan of reorganization based on the stated independence of Clambakes and the legal separateness of Debtor's rights and liabilities from those of its landlord, it follows that Debtor is also separately answerable for damages to the Condominium Associations for its unauthorized use and occupation of the Condominiums' property for seven years.

### C. THE BANKRUPTCY COURT'S DECISION IS INCONSISTENT WITH ITS OTHER ORDERS

The Bankruptcy Court's judgment is also inconsistent with its treatment of the Debtor's claims against the Condominium Associations. In May 2006, the Bankruptcy Court allowed Debtor to pursue equitable claims for restitution and unjust enrichment and other claims against the Condominium Associations in State Court on the theory that Debtor's rights and liabilities were not adjudicated in the America Condominium litigation. In September 2006, however, Debtor argued and Judge Votolato held that the Condominium Associations' claims against Debtor were adjudicated in America Condominium I. Besides being unfair, these conclusions make no sense.

First, it is impossible that the Supreme Court adjudicated Debtor's liabilities but not its rights. This is particularly true where, as is the case here, Debtor was neither a party nor even mentioned once by name. (App. 0792-1023). There was no evidence in the Supreme Court

record regarding Debtor, its unrecorded lease, or the profits of the various IDC companies over the years of Debtor's operation.

Second, a tenant who accepts a lease knowing that his landlord may not have good title cannot operate a business on the property for seven years, keep all the profits, pay the true owner nothing for his use and occupancy, and sue the true owner for restitution for any improvements made to the property and for damages to its business when the true owner demands its property back. The correct rule is the rule that the Rhode Island Supreme Court followed in America Condominium: one who builds on the land of another in the face of a known claim does so at his peril, see America I, 844 A.2d at 135, and a person who wrongly occupies the land of another under a false claim of title is accountable to the true owner for trespass damages. Rhode Island Economic Development Corporation v. The Parking Company, L.P., 909 A.2d 943, 945 (R.I. 2006).

D. A BANKRUPTCY COURT CANNOT DISALLOW CLAIMS BASED ON THE "TOTALITY OF CIRCUMSTANCES" AND AN INADEQUATE SUMMARY JUDGMENT RECORD.

As an independent basis for granting summary judgment, the Bankruptcy Court held "based on the totality of circumstances, that to award the Association anything further as additional damages in this bankruptcy would be clearly overkill and an unjust enrichment." (App. 0142) (Decision at 9). This holding is rife with procedural, legal, and factual error.

First, there is no "totality of the circumstances" defense to the law of trespass. Nor is there a doctrine that permits a bankruptcy court to deny an available legal remedy simply because the bankruptcy judge thinks it is unfair. Subjective notions of "fairness" do not come into play in the law of trespass. The Bankruptcy Court correctly found based on undisputed facts that Debtor was a trespasser between 1998 and 2005. (App. 0140) (Decision at 7 ("Therefore, . .

. Debtor was indeed a trespasser, as was its lessor.")). All that remains to be done here is the determination of the Condominium Associations' damages

Second, Judge Votolato came up with the "totality of the circumstances" theory on his own without notice to the Condominium Associations that he intended to rule on this basis. This was error. Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 29 (1st Cir.1996). "Sua sponte grants of summary judgment are allowable so long as the losing party was on notice that she had to come forward with all of her evidence." Young v. City of Providence *ex rel.* Napolitano, 404 F.3d 4, 13 (1st Cir. 2005); see also Frederique-Alexandre v. Department of Natural and Environmental Resources, 2007 WL 613738, *3 (1st Cir. Mar. 1, 2007); Rogan v. Menino, 175 F.3d 75, 79 (1st Cir. 1999); Stella v. Town of Tewksbury, 4 F.3d 53, 55 (1st Cir. 1993). Debtor never advanced the "totality of circumstances" rule because there is no such rule, and the Condominium Associations never had the opportunity to offer evidence that speaks to the "totality of circumstances." The record is totally undeveloped—by both sides—on that point.

Third, the "totality of circumstances" do not compel the conclusion that the Condominium Associations should not be paid the fair value of the use and occupation of the condominium property for seven years. The Bankruptcy Court drew this conclusion with no record of the actual facts. Meanwhile, Debtor made many millions of dollars from its illegal use of the condominium's property:

- According to Debtor, beginning in 1998, "Clambakes operated a successful business with wedding and banquet facilities with annual gross sales in excess of $4 million." (App. 1115) (Amended Complaint, IDC Clambakes, Inc. v. Carney, N.C. No. 05-177, ¶ 246 (December 28, 2006)) ;see also App. 0680, 1064, ¶ 240; Record #23, Exh F.[8]

[8] Debtor produced different numbers in this bankruptcy proceeding. True to character, Debtor says one thing when it is on offense and something else on defense.

- According to Debtor, IDC Properties built the Regatta Club at a cost of approximately $ 4 million. (App. 0692; see also Testimony of Thomas Roos, No. 05-12267 at 94 (July 6, 2005) (stating that IDC Properties paid for improvements)

- According to Debtor, it earned approximately $[redacted] between 1998 and 2005 before taxes, rents and management fees, of which it paid approximately $[redacted] to IDC Inc. and $[redacted] to IDC Properties.

Clambakes ran a successful business between 1998 and 2005 on the condominium's property without permission from the unit owners' association and has yet to pay anything to the true owners of the property for its use and occupancy.

The Bankruptcy Court held, as a matter of law, that when a person builds a building on land that he does not own, he can retain the profits from his unlawful enterprise for however long he can tie the true owner up in litigation and that it would "overkill" and "unjust enrichment" if the trespasser were compelled to pay the fair value of his use and occupation of the premises during the period of his trespass. Significantly, the Rhode Island Supreme Court reached the opposite conclusion in The Parking Company, L.P., supra on similar facts.

The Bankruptcy Court's decision is completely unsupported and erroneous, and beyond a power of any court to conclude on a bare summary judgment record. See Blanchard v. Peerless Ins. Co., 958 F.2d 483, 488 & n.6 (1st Cir.1992) (summary judgment is not appropriate where more than one inference can be drawn from totality of circumstances); Rodriguez v. Montalvo, 649 F.Supp. 1169, 1179 (D.P.R. 1986) (summary judgment improper where issues turn on the totality of circumstances). There is no "totality of the circumstances" rule that allows a bankruptcy judge to disallow a claim at law based on his individualized notions of fairness. However, there is not even a record here of what the "totality of circumstances" are.

### E. THE BANKRUPTCY COURT'S DECISION IS BASED IN PART ON ERRONEOUS FACTUAL ASSUMPTIONS

The Bankruptcy Court's Decision is erroneous in large measure because the facts on which it relied concerning the State Court proceedings are simply not true. Fed. R. Bank P. 8013In some instances, Debtor misstated the facts, and the Bankruptcy Court accepted Debtor's misrepresentations.

For example, Debtor told the Bankruptcy Court, falsely, that "the parties actively contested the issue and entitlement to damages in the state court proceedings," App. 0163 (Debtor's Memorandum in Support of Motion for Summary Judgment at 16 (September 1, 2006), and argued falsely that that the Supreme Court "denied the condominium associations a right to recover money damages in *America I.*" App. 0164 (Id. at 19). The falsity of these statements are highly important here because the Bankruptcy Court expressly relied on them:

> The Debtor correctly points out that the Supreme Court in America I has already addressed and ruled upon the Associations' entitlement to damages, and for the reasons advanced by Debtor (principally, *res judicata*), I conclude that Claims Nos. 16-19 should be and are DISALLOWED.

(App. 0140) (Decision at 7.)

The State Court litigants did not "actively contest the issue and entitlement to damages." This Court can and should take judicial notice of the State Court briefs. E.I. Du Pont De Nemours & Co., Inc. v. Cullen, 791 F.2d 5 (1st Cir. 1986) (an appellate court may take judicial notice of State court pleadings); see also In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15-16 (1st Cir. 2003).[9] The Court should see for itself that the money damage claims were not

---

9 Federal courts are entitled to take judicial notice of proceedings in other courts, both within and without the federal judiciary. Boateng v. InterAmerican Univ., 210 F.3d 56, 60 (1st Cir. 2000). Thus, federal courts can take judicial notice of published State court opinions, see White v. Gittens, 121 F.3d 803, 805 (1st Cir. 1997), Parente v. Town of West Warwick, 868 F.2d 522, 523 (1st Cir. 1989), and pleadings and briefs filed in State courts – not for the truth of the matters asserted therein but to show the various contentions and arguments raised in other actions

argued, litigated, or decided in the America Condominium appeals. (App. 0792-1023). Those appeals were before the Supreme Court on cross-appeals of Rule 54(b) certifications of four declaratory judgment claims. The Supreme Court specifically remanded the action for trial of the associations' compensatory and punitive damage claims. America Condominium I, 844 A.2d at 135. The damage phase of that case is now pending in the Rhode Island Superior Court. Debtor misled the Bankruptcy Court on this material issue.

The Bankruptcy Court was similarly wrong in its assumptions about the America Condominium litigation. In interpreting that portion of America Condominium I that discussed IDC Properties' unlawful construction of the Regatta Club and Footnote 24, the Bankruptcy Court described the Rhode Island Supreme Court's opinion as follows:

> *In addressing Properties request for an accounting and for reimbursement of expenses paid in connection with the Reserved Area after December 1994, as well as its multi-million dollar investment in the Newport Regatta Club*, the Supreme Court said . . . .

The Bankruptcy Court was wrong. IDC Properties did not request an accounting of condominium fees or reimbursement for expenses paid in connection with the Reserved Area after December 1994. There was no claim or argument to that effect. The Rhode Island Supreme Court ordered the accounting remedy sua sponte. Judge Votolato disallowed the Condominium Associations' claims based on a false perception of what the America Condominium appeals were really about.

The Bankruptcy Court likewise erred in finding that the Rhode Island Supreme Court "fashioned a complete and quite generous remedy for the transgressions of the Roos entities, notably that the association, which now owned the Regatta Club, would not have to reimburse

---

and to review how other Courts had addressed those issues. BP West Coast Products LLC v. Green, 318 F. Supp.2d 987 (E.D. Ca. 2004).

IDC Properties one dime for its investment in that facility. . . . that, together with the accounting ordered by the Supreme Court, constituted full compensation to the Association . . ." (App. 140-41 (Decision at 7-8). The Supreme did not "fashion a remedy" or "award" the Associations anything with respect to the operation of the Regatta Club. The Supreme Court interpreted and applied the Rhode Island Condominium Act and declared that that the disputed parcels were always common elements. America Condominium II, 870 A.2d at 442-43. The Supreme Court also restated the longstanding rule of law that one who builds in the face of a known claim does so at its peril, America Condominium I, 844 A.2d at 135, accord Eastern Motor Inns, Inc. v. Ricci, 565 A.2d 1265, 1272 (R.I. 1989), St. Sava Home v. Christopher, 537 A.2d 69,72 (Pa. Commw. Ct. 1988), Tyler v. City of Haverhill, 272 Mass. 313, 316, 172 N.E. 342, 343 (1930), and applied black letter law that "a permanent improvement placed on the land of another, by a person having no title or interest therein, without the owner's consent, becomes a part of the realty and the property of the owner of the fee." 42 C.J.S. Improvements § 3 (1991) (in black letters); accord 41 Am. Jur. 2d, Improvements § 3 (2004). The Rhode Island Supreme Court did not "fashion" a remedy, let alone a "generous" one. It did not say anything even remotely close to saying that the Regatta Club "constituted full compensation" to the unit owners. It mandated the entry of an amended declaratory judgment and remanded the case for trial of the associations' damage claims.

The Bankruptcy Court' also misplaced reliance on the principle that "the Association is 'entitled to only one satisfaction of the tort, even though two or more parties contributed to the loss.'" (App. 0141). That principle has no application here. That principle applies where one sues joint tortfeasors and one tortfeasor completely discharges the liability of the other. Here, the Associations did not sue Properties for trespass damages, and Properties has not satisfied any

judgment to the Associations other than to surrender possession of the Reserved Area, which required the involvement of the State Police.[10]

The Bankruptcy Court got it wrong. The Associations neither filed a trespass claim against Properties seeking damages, nor have the associations been satisfied "in tort." To borrow the Bankruptcy Court's expression, IDC has not paid the unit owners "one dime." The only thing that happened is that the Supreme Court declared the parties' real property rights under the Condominium Act.

F. DEBTOR TRESPASSED ON CONDOMINIUM PROPERTY FOR SEVEN YEARS

Debtor trespassed on the Condominium Associations' property for seven years, as the Bankruptcy Court correctly found. There is no dispute that beginning in 1998, Debtor entered, occupied, and remained on the Reserved Area and the improvements thereon based on an unrecorded "lease" with a landlord that had no title to the premises. The Rhode Island Supreme Court has declared with finality that IDC Properties is not, and never was, the true owner of the property. Debtor acquired no lawful right to possess the Reserved Area or the improvements from Properties. Properties could not lease what it did not own, St. Jean Condominium Ass'n, Inc. v. DeLeo, 745 A.2d. 738, 740-41 (R.I. 2000), and could not lease a common element of the condominium separately from one of its units. RIGL § 34-36.1-2.07(e). Meanwhile, Debtor

---

[10] The Court also misstated that the Condominium Act provides that " common elements may not be conveyed (sold, rented, or encumbered) without the vote of at least 80 percent of the association." While the Condominium Act provides that the common elements of a condominium cannot be *conveyed or encumbered* without 80% approval of the unit owners, see RIGL § 34-36.1-3.12; see also St. Jean Condominium Ass'n v. DeLeo, 745 A.2d. 738, 740-41 (R.I. 2000), the statute is different with respect to leasing. The Act provides that unless the condominium documents state otherwise, (1) a condominium association acting through a quorum may lease the common elements of the condominium, see RIGL § 34-36.1-3.02(a)(9), or (2) the Executive Board may exercise all powers of the association, including the power to lease the common elements. See RIGL § 34-36.1-3.03(a). Ultimately, the power of a condominium association executive board to lease the common elements of a condominium has nothing to do with this case and is beyond the issues presented in this bankruptcy appeal. However, this Court should correct that the misstatement so that the Bankruptcy Court's Decision does not spawn another decade of litigation.

itself contends in State Court that the character of its use was "hostile" to the unit owners and therefore, non-permissive. (App. 1114, ¶ 231) (Amended Complaint, IDC Clambakes v. Carney, N.C. 05-177, ¶ 231 (filed Dec. 28, 2006)); see also App. 1063, ¶ 225 (Record #23, Exh F). This is an admission of its trespass.

A trespass occurs when a person intentionally enters the property of another without authorization or consent to do so. Ferreira v. Strack, 652 A.2d 965, 969 (R.I. 1995); see also Restatement (Second) of Torts§ 158, 329 (1965). Moreover, a party who enters on property of another under a false claim of title is accountable to the true owner for trespass damages. Rhode Island Economic Development Corporation v. The Parking Company, L.P., 909 A.2d 943 (R.I. 2006), citing, Campbell v. Lederer Realty Corp., 47 R.I. 8, 11-12, 129 A. 732, 733 (1925).

The bottom line here is that Clambakes knew everything that Tom Roos knew. Clambakes accepted an unrecorded lease from Properties with knowledge of the defects in Properties' title. Had IDC Properties prevailed in America Condominium, Clambakes would have had a valid lease from the owner. However, IDC Properties did not prevail and Clambakes' lease was a nullity from its inception. Clambakes thus operated a business on someone else's land for seven years and made millions of dollars. Under The Parking Company and Lederer Realty, Clambakes must pay for the fair value of its use and occupation of the unit owners' land, which is merely a fraction of its "profits" during that period.

Debtor was not entitled to summary judgment. Debtor was a trespasser. The matter should proceed to trial for determination of damages.

## CONCLUSION

For the reasons stated above, the Decision of the Bankruptcy Court dated January 24, 2007 should be reversed, except as to the trespass finding.

GOAT ISLAND SOUTH CONDOMINIUM ASSOCIATION, INC., AMERICA CONDOMINIUM ASSOCIATION, INC., CAPELLA SOUTH CONDOMINIUM ASSOCIATION, INC., HARBOR HOUSES CONDOMINIUM ASSOCIATION, INC.

By their Attorneys

/s/ William R Grimm
William R. Grimm (#1938)
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600 (FAX)

/s/ Charles D. Blackman
Charles D. Blackman (#5522)
155 South Main Street, Suite 101
Providence, Rhode Island 02903
(401) 455-1445
(401) 351-9653 (FAX)

Dated: April 13, 2006

**CERTIFICATION**

To: Michael Levin, Esq.
Winograd Shine & Zacks
123 Dyer Street
Providence, RI 02903

Paul Sweeney, Esq.
Linowes and Blocher LLP
200 Wisconsin Avenue, Suite 800
Bethesda, MD 20814-4842

I hereby certify that I caused to be delivered by electronic means a copy of this Brief to counsel of record, as above, on the 13th day of April, 2007.

/s/ Charles D. Blackman

796221