**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

C.A. No. 07-0049-S

**IN RE:**

IDC CLAMBAKES, INC.,
**DEBTOR**

---

**GOAT ISLAND SOUTH CONDOMINIUM ASSOCIATION, INC., AMERICA CONDOMINIUM ASSOCIATION, INC., CAPELLA SOUTH CONDOMINIUM ASSOCIATION, INC., HARBOR HOUSES CONDOMINIUM ASSOCIATION, INC.,**
**APPELLANTS,**

**v.**

**IDC CLAMBAKES, INC.,**
**APPELLEE and CROSS-APPELLANT.**

---

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

---

**Brief for the Debtor-Appellee and Cross-Appellant.**

---

# TABLE OF CONTENTS

Page

**TABLE OF CONTENTS** ... i
**TABLE OF AUTHORITIES** ... ii
**STATEMENT OF ISSUES** ... 1
**STANDARD OF APPELLATE REVIEW** ... 1
**STATEMENT OF CASE** ... 1
**Nature of the case** ... 1
**Procedural History** ... 2
**Facts** ... 7
**SUMMARY OF ARGUMENT** ... 12
**THE PROOFS OF CLAIM WERE PROPERLY DISALLOWED AS AN IMPERMISSIBLE DOUBLE RECOVERY UNDER EQUITABLE PRINCIPLES OF LAW** ... 13
***The Proofs of Claim Were Properly Disallowed as an Impermissible Double Recovery.*** ... 13
***The Bankruptcy Court Properly Disallowed the Claims Based on Principles of Equity.*** ... 20
**THE BANKRUPTCY COURT CORRECTLY HELD THAT THE CONDOMINIUM ASSOCIATIONS CANNOT RECOVER ANY DAMAGES FROM DEBTOR BECAUSE THE ISSUE OF DAMAGES WAS ALREADY LITIGATED IN *AMERICA I*.** ... 23
***The Form of Res Judicata Known as Issue Preclusion (Collateral Estoppel) Bars the Condominium Associations' Proof of Claim.*** ... 24
***The Condominium Associations Are Estopped From Seeking Trespass Damages Against Debtor.*** ... 27
**Identity of Issues** ... 27
**Final Judgment on the Merits** ... 31
**Mutuality of Parties** ... 31
**THE BANKRUPTCY COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE CONDOMINIUM ASSOCIATIONS ON THE TRESPASS ISSUE.** ... 31
***The Bankruptcy Court Erroneously Concluded That The Condominium Associations Had Moved For Summary Judgment; Therefore, It Erred In Holding That Debtor Was A Trespasser As A Matter Of Law.*** ... 33
***It Was Error For The Bankruptcy Court Not To Consider Debtor's Defenses Against The Claims And On Which Debtor Had A Right To Trial.*** ... 34
***Neither IDC Properties, as a co-owner, nor Debtor to whom IDC Properties had given a possessory right can be trespassers.*** ... 36
***The Bankruptcy Court Erred In Holding That Debtor Had To Show That It Had Exclusive Possession Of The Reserved Area.*** ... 39
**The Condominium Associations never had possession of the Reserved Area during the relevant period** ... 40
**The burden of proving "exclusive possession" was on the Condominium Associations, not Debtor.** ... 42
**The Condominium Associations failed to establish actual or constructive possession of the Regatta Club at the time of the alleged trespass.** ... 43
***Debtor was on the Reserved Area with the consent or acquiescence of the owners and, therefore, could not be a trespasser.*** ... 47
**CONCLUSION** ... 48

## TABLE OF AUTHORITIES

**Page**

### Cases

*America Condo. Ass'n v. IDC, Inc.*, 844 A.2d 117 (R.I. 2004), *aff'd on reh'g*, 870 A.2d 434 (R.I. 2005)....passim
*Arnold Printworks, Inc. v. Apkin (In re Arnold Printworks),* 815 F.2d 165 (1st Cir. 1987)....22
*Aro Mfg. Co. v. Convertible Top Co*, 377 U.S. 476 (1964) ....16
*Augustine v. Langlais*, 121 R.I. 802, 402 A.2d. 1187 (1979) ....14
*Babcock v. Wells*, 25 R.I. 23, 54 A. 596 (R.I. 1903)....36
*Berberian v. Avery*, 205 A.2d 579 (R.I. 1964)....42, 43
*Broom v. Pearson*, 200 S.W. 191 (Tex. App. 1917) ....37
*Brown v. City of State Center*, 2006 Iowa App. LEXIS 1148 (IA App. October 11, 2006)....45
*Calise v. Hidden Valley Condo. Ass'n, Inc.*, 773 A.2d 834 (R.I. 2001)....18
*Carpenter v. Logee*, 53 A. 288 (R.I. 1902) ....40
*Carr v. Deking* 765 P.2d 40 (Wash. Ct. App. 1988), *review denied* 112 Wash.2d 1019 (Wash. 1989)....37
*Casey v. Mason*, 59 P. 252 (Okla. 1899)....44, 45
*City Nat'l Bank v. United States*, 907 F.2d 536 (5th Cir. 1990) ....29
*Clausen v. Storage Tank Dev. Corp.*, 21 F.3d 1181 (1st Cir. 1994) ....16
*Commercial Union Ins. Co. v. Pelchat*, 727 A.2d 676 (R.I. 1999) ....31
*Daniels v. Coleman*, 169 S.E.2d 593 (S.C. 1969)....40
*Dean v. Comstock*, 1863 Ill. Lexis 110 (1863)....40
*DiBiase Corp. v. Jacobowitz*, 682 N.E.2d 1382 (Mass. App. Ct. 1997)....36
*E.W. Audet & Sons, Inc. v. Firemen's Fund Ins. Co*, 635 A.2d 1181 (R.I. 1994) ....27
*Ferreira v. Strack*, 652 A.2d 965 (R.I. 1995) ....43
*Gens v. Resolution Trust Corp.* (*In re Gens*), 112 F.3d 569, 572-73 (1st Cir. 1997)....28
*Granfianciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) ....22
*Hackett v. Hyson*, 72 R.I. 132, 48 A.2d 353 (R.I. 1946)....17
*Horgan v. Bickerton*, 17 R.I. 483, 23 A. 23 (R.I. 1891)....36
*Howland v. Menard*, 1980 R.I. Super. LEXIS 189 (1980) ....26, 31
*In re Hyperion Enterprises, Inc.*, 149 B.R. 281 (Bankr. R. I. 1993)....25
*In re IDC Clambakes, Inc.,* 2007 Bankr. LEXIS 232 ....24
*In re IDC Clambakes, Inc.,* 2007 Bankr. LEXIS 232 (Bankr. R.I. 2007)....passim
*In re Indian Palms Associates, LTD,* 61 F.3d 197 (3rd Cir. 1995.) ....48
*In re Laroche*, 207 B.R. 369, 371 (Bankr. R.I. 1997) ....26, 27
*In re Medeiros*, 153 B.R. 9 (Bankr. D. R.I. 1993) ....25
*In re Varrarusso*, 37 F.3d 760 (1st Cir. 1994) ....1
*Jackson v. O'Rorke*, 98 N.W. 1068 (Neb. 1904)....37
*Jardines Bacata, Ltd. v. Diaz-Marquez*, 878 F.2d 1555 (1st Cir. 1989)....34, 35
*Jaycox v. E.M. Harris Bld'g Co.*, 754 S.W.2d 931 (Mo. 1988)....46
*Kathios v. General Motors Corp.*, 862 F.2d 944 (1st Cir. 1988)....25
*Kremerr v. Chemical Constr.Corp.*, 456 U.S. 461 (1982) ....25
*Kresha v. Kresha*, 371 N.W.2d 280 (Neb. 1985) ....37
*Langenkamp v. Culp,* 498 U.S. 42 (1990)....22

*Lawrence v. Palraka*, 1991 R.I. Super. LEXIS 109 (Aug. 6, 1991) .......... 18
*Lennon v. Dacomed Corp. et al.*, 901 A.2d 583 (R.I. 2005) .......... 26
*Littleton v. Roberts*, 187 S.E. 349 (S.C. 1936) .......... 45
*Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc.*, 304 B.R. 111 (Bankr. N.J. 2003) .......... 22
*Maryland Coal and Realty Company v. Eckhart*, 337 A.2d 150 (Md. 1975) .......... 41
*Maryland Lumber Co. v. White*, 205 Md. 180, 107 A.2d 73 (Md. 1954) .......... 17
*Matthews v. Forrest*, 69 S.E.2d 553 (N.C. 1952) .......... 41
*McInnis v. AMF, Inc.*, 765 F.2d 240 (1st Cir. 1985) .......... 19
*McKenna v. Austin*, 77 U.S. App. DC 228 (1943) .......... 16
*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984) .......... 25, 26
*Moore v. Blount*, 160 So. 319 (La. Ct. App. 1935) .......... 37
*More v. Urbano*, 198 A.2d 211 (Conn. 1964) .......... 45
*Omniglow Corp. v. Unique Indus., Inc.*, 184 F. Supp.2d 105 (D. Mass. 2002) .......... 17
*Penobscot Indian Nation v. Key Bank*, 112 F.3d 538, 562 (1st Cir. 1997) .......... 34
*Pepper v. Litton*, 308 U.S. 205 (1939) .......... 20
*Pillo v. Reading Co.*, 232 F. Supp. 761 (E.D. Pa. 1964) .......... 16
*Plunkett v. State of Rhode Island*, 869 A.2d 1185 (R.I. 2005) .......... 25, 26
*Polk v. Henderson*, 17 Tenn. 310 (1836) .......... 44
*Providence Teachers Union v. McGovern*, *319 A.2d 358* (R.I. 1974) .......... 27
*Ride v. Medeiros (In re Medeiros),* 153 B.R 9, 11 (Bankr. R.I. 1993) .......... 26
*Robert's River Rides, Inc. v. Steamboat Dev. Corp.*, 520 N.W.2d 294 (Iowa 1994) .......... 42, 45
*Rochester Ford Sales, Inc. v. Ford Motor Co.*, 287 F.3d 32 (1st Cir. 2002) .......... 1
*Sayles v. Mitchell*, 47 A. 320 (R.I. 1900) .......... 40, 43
*Smith v. Hart*, 2005 R.I. Super. LEXIS 34 (Feb. 7, 2005) .......... 38, 42
*Sousa v. Casey*, 306 A.2d 186 (R.I. 1973) .......... 17
*State v. Godette*, 751 A.2d 742 (R.I. 2000) .......... 27
*State v. Verrecchia*, 766 A.2d 377 (R.I. 2001) .......... 42, 43
*Sunshine Dev., Inc. v. Federal Dep. Ins. Corp.,* 33 F.3d 106 (1st Cir. 1994) .......... 22
*Swartzbaugh v. Sampson*, 54 P.2d 73 (Cal. Ct. App. 1936) .......... 37
*Villarini-Garcia v. Hospital Del Maestro*, 112 F.3d 5 (1st Cir. 1997) .......... 16
*Wood v. Essex*, 38 94 A. 666 (R.I. 1915) .......... 40
*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971) .......... 16

**Statutes**

11 U.S.C.§105 .......... 21
28 U.S.C. § 1738 .......... 25
28 U.S.C. §157(b) .......... 21, 22

**Treatises**

75 Am. Jur. 2d Trespass § 36 .......... 40
75 Am. Jur. 2d Trespass § 37 .......... 40
75 Am. Jur. 2d Trespass § 44 .......... 44
RESTATEMENT (SECOND) JUDGMENTS, § 27 .......... 31
RESTATEMENT (SECOND) OF TORTS, § 157 .......... 40
Restatement, Torts §885(3) (1939) .......... 16

W. Prosser, Torts, §46 (3d ed. 1964) ........................................................................................ 16
W.W. Allen, Annotation, *Accountability of Cotenants For Rents and Profits or Use and Occupation*, 51 A.L.R.2d 388 (1957) ........................................................................... 38

## STATEMENT OF ISSUES

1. Did the Bankruptcy Court properly disallow the Condominium Associations' proof of claim for trespass damages as an impermissible double recovery based on its equitable authority?

2. Did the Bankruptcy Court properly hold that the Condominium Associations could not recover any damages from the Debtor because the issue of damages was already litigated in *America I*?

3. Did the Bankruptcy Court err in deciding that Debtor was a trespasser where the Condominium Associations had not moved for Summary Judgment and the effect was to deny Debtor an opportunity to present defenses to the Condominium Associations' proofs of claim?

## STANDARD OF APPELLATE REVIEW

The district court reviews grants of summary judgment by the bankruptcy court by an appellate standard. *In re Varrarusso*, 37 F.3d 760; 763 (1st Cir. 1994). Therefore, it "reviews grants of summary judgment de novo, construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor" and "may affirm the entry of summary judgment on "'any ground revealed by the record.'" *Rochester Ford Sales, Inc. v. Ford Motor Co.*, 287 F.3d 32, 38 (1st Cir. 2002) (citations omitted).

## STATEMENT OF CASE

### A. Nature of the case

This is an appeal from a decision of the United States Bankruptcy Court for the District of Rhode Island holding that IDC Clambakes, Inc. ("Debtor") was a trespasser from 1998 to 2005 in the former Newport Regatta Club. However, the Bankruptcy Court disallowed the Condominium Associations' proofs of claim for trespass damages (the "Proofs of Claim"),

holding that those damages were precluded by the Rhode Island Supreme Court's 2004 and 2005 decisions and that it would be "overkill and clearly an unjust enrichment" to allow the Proofs of Claim.[1]

**B. Procedural History**

From 1998 through 2005, Debtor leased certain improved real property known as the Regatta Club from IDC Properties, Inc. ("IDC Properties"). The Regatta Club became a well-known, high-end event and banquet facility operated by Debtor, especially for weddings. (Rec. App. #31, p. 4.)[2]

In 1999, Cappella South Condominium Association, Inc. ("Capella"), America Condominium Association, Inc. ("America") and Harbor House Condominium Association, Inc. ("Harbor," collectively with Capella and America, the "Sub-Condominium Associations")[3] filed suit against IDC Properties, IDC, Inc., and Thomas R. Roos, their sole shareholder, (collectively, the "Roos Entities") in Newport Superior Court, Case No. 99-0232, challenging IDC Properties' development of the Reserved Area (the "Reserved Area Litigation"). (Rec. App. #31, p. 5.) On appeal of the superior court's grant of partial summary judgment for the Sub-Condominium Associations, the Rhode Island Supreme Court issued decisions in 2004 and in 2005 after a rehearing.[4] (Rec. App. #31, p. 4.) Specifically, the Court ruled that "title rested with the unit owners in common ownership from the creation of the condominium" and that the property on which the Regatta Club had been built was owned by all of the condominium unit owners,

---

[1] *In re IDC Clambakes, Inc.*, No. 05-12267, 2007 Bankr. LEXIS 232 (Bankr. R.I. Jan. 24, 2007) (Rec. App. #9.) (*In re Clambakes* decision attached as Ex. 1.)

[2] "Rec. App." refers to the Record on Appeal filed by the parties.

[3] The Sub-Condominium Associations, collectively with Goat Island South Condominium Association ("GISCA"), are referred to as the "Condominium Associations.

[4] *America Condo. Ass'n v. IDC, Inc.*, 844 A.2d 117 (R.I. 2004), *aff'd on reh'g*, 870 A.2d 434 (R.I. 2005) (Rec. App. #20, Ex. A.) The 2004 decision is referred to as "*America I*" and the 2005 decision as "*America II*" (Rec. App. #20, Ex. B.) (*America I* attached as Ex. 2.)

including IDC Properties, as common area. (Rec. App. #20, Ex. A and B; Rec. App. #39, pp. 2-4.)

Although Debtor was not a party to the Reserved Area Litigation,[5] the Rhode Island Supreme Court's rulings directly impacted Debtor's ability to conduct business as a lessee of the Reserved Area. Accordingly, in order to protect its business operations and avoid potential substantial and possibly irreparable harm to the many couples for whom Debtor was scheduled to conduct weddings at the Regatta Club, Debtor initiated the bankruptcy case pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on June 16, 2005. (Rec. App. #41, Rec. App. #31, p. 6.)

On June 17, 2005, with notice and knowledge of Debtor's Chapter 11 filing, the Sub-Condominium Associations filed an Application for Writ of Execution for Possession and Writ of Ejectment against the Roos Entities seeking, for the first time, to evict them from the Reserved Area and the Regatta Club (the "Eviction Proceeding"). (Rec. App. #36, p. 4.) Debtor was not a party to the Eviction Proceedings. (Rec. App. #36, p. 4.) The Superior Court granted the Application (the "Writ Order") but stayed execution until June 23, 2005 in order to enable Debtor to be heard before the Bankruptcy Court. (Rec. App. #36, p. 4.)

The Eviction Proceeding could not have come at a worse time – early in Debtor's 2005 wedding season. Debtor faced wedding cancellations, having to find alternate, acceptable venues for its clients, lost good will and revenues, and the risk of numerous lawsuits from angry clients. In order to avoid a financial disaster, Debtor sought to enjoin the eviction and filed for a

[5] In their brief, the Condominium Associations allege that they did not know of Debtor or of the unrecorded lease between Debtor and IDC Properties. App. Br. (Appellants' Brief filed 4/13/07) pp. 8, 12-13. As discussed below, this assertion is not accurate.

temporary restraining order against the Condominium Associations to preclude them from taking any action that would prevent Debtor's operations at the Regatta Club. (Rec. App. #39, p. 1.)

The Condominium Associations moved to dismiss the bankruptcy case (Rec. App. #38.),[6] claiming that Debtor filed for bankruptcy in bad faith because it had no intention of reorganizing, to avoid the unfavorable decisions of the Rhode Island Supreme Court, and to relitigate the dispute that it claimed had already been decided. (Rec. App. #38, pp. 10-12.)

So that it could honor its commitments to its customers for the 2005 wedding season, Debtor agreed to the appointment of a Chapter 11 Trustee (the "Trustee") by consent order entered on July 11, 2005. (Rec. App. #33.) On August 18, 2005, the Bankruptcy Court entered a Consent Order (the "Consent Order") authorizing the Trustee to pay the Condominium Associations pay $450,000 by as adequate protection for Debtor's use of the Regatta Club and the Reserved Area from April 8, 2005 (the date of the Rhode Island Supreme Court Decision in *America II*) through November 5, 2005. (Rec. App. #33.) On November 5, 2005, the Trustee vacated the Regatta Club.

On October 3, 2005, the Condominium Associations filed four identical Proofs of Claim in Debtor's bankruptcy case, each for $3,507,290. (Rec. App. #32.) All four claims stated, in relevant part, that:

> **To the extent not precluded by Rhode Island Supreme Court's decision** in America Condo. Ass'n v. IDC, Inc., 844 A.2d 117 (R.I. 2004) ("America I"), affirmed on reargument, 870 A.2d 434 (R.I. 2004 ("America II"). [the Condominium Associations] assert a claim for damages against [Debtor] arising from the Debtor's trespass on condominium property for seven years beginning in 1998.

[6] The Motion to Dismiss was first filed by America, Capella and Harbor House. (Rec. App. #38.) Then, GISCA filed its Motion to Dismiss the Bankruptcy Case, or, Alternatively, For Other Relief, joining in and adopting the arguments of the original Motion to Dismiss. (Rec. App. #37.) The separate motions will be treated as one.

(Rec. App. #32.) (emphasis added.)

On December 16, 2005, Debtor filed its Amended Chapter 11 Plan of Reorganization and Amended Disclosure Statement, proposing to pay its creditors in full. (Rec. App. #1, Dkt. #170, 171.)

On December 19, 2005, GISCA filed an Objection to Debtor's Plan and Disclosure Statement. (Rec. App. #1, Dkt. #174.) Curiously, GISCA argued that speculative and hypothetical claims "may threaten Debtor's ability to offer a 100% Plan as advertised."[7] (Rec. App. #1, Dkt. #174, p. 9.) Ignoring the rehabilitative purpose of Chapter 11, GISCA filed a competing plan of liquidation on December 19, 2005. (Rec. App. #1, Dkt. #177.)

GISCA's true motives were revealed when it disclosed that it had retained a company to operate a banquet business from the Regatta Club in direct competition with Debtor and from which GISCA would also profit. (Rec. App. #30, p. 6.) GISCA further proposed that all of Debtor's contracts with its customers be transferred to GISCA and that Debtor's liquor license, a valuable asset[8], be transferred to GISCA or its nominee.[9] (Rec. App. #30, pp. 6 and 7.)

On January 17, 2006, Debtor filed a Second Amended Plan of Reorganization (the "Plan"). (Rec. App. #29.) Debtor again provided for a full recovery to its creditors, due to a $3.3 million new value infusion from its sole shareholder, Thomas R. Roos. (Rec. App. #29.)

On March 14, 2006, Debtor filed an Objection to Claims of the Condominium Associations (the "Claims Objection"). (Rec. App. #26.) Debtor asserted, among other reasons, that (1) it had a right to use and occupy the Regatta Club, (2) it had paid for its use and

[7] The Condominium Associations are quick to ascribe inconsistency and ill motive to Debtor. However, they have no problem challenging Debtor's good-faith in filing its petition and then asserting duplicative claims that would have made the filing entirely appropriate.
[8] The competitor has yet to obtain its own liquor license.
[9] On February 8, 2006, the Condominium Associations withdrew their liquidation plan on the eve of the Bankruptcy Court's considering Debtor's challenge to the bona fides of their liquidation proposal. (Rec. App. 1, Dkt. #226-27.)

occupancy, (3) the Proofs of Claim were barred by estoppel, laches and res judicata, and (4) Debtor was not liable to the Condominium Associations for trespass. (Rec. App. #26.)

On March 15, 2006, after hearing and solicitation of votes, the Bankruptcy Court entered an Order confirming Debtor's Plan. (Rec. App. #29.)

On March 24, 2006, the Condominium Associations filed their Response to Debtor's Objection to Claims. (Rec. App. # 28.)

On September 1, 2006, Debtor filed a Motion for Summary Judgment to disallow the Proofs of Claim (Rec. App. #20.), and the Condominium Associations objected. (Rec. App. #19.) Importantly, the Condominium Associations never filed a motion for summary judgment on their trespass claim.

On September 27, 2006, the Bankruptcy Court heard oral argument on Debtor's Motion for Summary Judgment, and the Condominium Associations' objections. (Rec. App. #16.)

On January 24, 2007, the Bankruptcy Court issued a Decision and Order Disallowing the Associations' Claims for Money Damages for Trespass (the "Decision") (Rec. App. #9.) and a Judgment in the Decision and Order Disallowing the Associations' Claims for Money Damages for Trespass (Rec. App. #8.) The Decision granted in part, and denied in part, Debtor's summary judgment motion.[10]

The Bankruptcy Court held that Debtor, as IDC Properties' "lessee", trespassed on the Reserved Area, but "[b]eyond finding that there was a trespass, however, I cannot agree with the

[10] Erroneously, the Bankruptcy Court stated that "[p]rocedurally, then, (1) the Associations' Motion for Summary Judgment is GRANTED IN PART, on the issue whether there was a trespass by Debtor; (2) the balance of the relief sought by the Association is DENIED; (3) the Debtor's Cross Motion for Summary Judgment is also GRANTED IN PART , as to whether the Association's claims are barred by *res judicata*, as well as its joint tortfeasor liability argument . . . ." As discussed below, the Associations never filed for summary judgment. Procedurally, if it did not conclude that Debtor was entitled to summary judgment on its motion on the trespass issue, the Bankruptcy Court should have denied the motion, especially as Debtor had other defenses that were not part of the summary judgment process.

Association arguments regarding its claims for damages." *In re IDC Clambakes, Inc.,* 2007 Bankr. LEXIS 232 (Bankr. R.I. 2007), *9 (Rec. App. #9, p. 5.) Specifically, the Bankruptcy Court held:

> In addition to the foregoing rulings based on res judicata, and damages vis-à-vis joint tortfeasors, this Court also concludes independently, based on the totality of the circumstances, that to award the Association anything further as additional damages in this bankruptcy would clearly be overkill and an unjust enrichment.

*In re IDC Clambakes, Inc.*, 2007 Bankr. LEXIS at *11 (Rec. App. #9, p. 5)

On February 9, 2007, the Condominium Associations filed an appeal, seeking reversal of the Decision to the extent it disallowed their Proofs of Claim. (Rec. App. #7.) On February 20, 2007, Debtor filed a cross-appeal. (Rec. App. #6.) Debtor requests that this Court affirm the Decision to the extent it disallowed the Proofs of Claim and reverse the ruling that Debtor was a trespasser. Alternatively, the Court should remand this case to permit Debtor to present its additional defenses to the Proofs of Claim.

**C. Facts**

1. GISCA was originally established by the Declaration of Condominium dated January 12, 1988, and recorded in the Land Records on January 20, 1988, in Condominium Volume 115 at Page 138 *et seq.* (the "Original Declaration"). The Original Declaration has not been challenged. (Rec. App. #20, p. 4.)

2. The Original Declaration created a condominium on Goat Island in Newport, Rhode Island, composed of six defined parcels. (Rec. App. #20, p. 4.) Three of the units contained residential buildings, known as the America, Capella and Harbor House, all of which

total 154 condominium units.[11] (Rec. App. #20, p. 4.)

3. GISCA purports to be the master condominium association for Goat Island. (Rec. App. #20, p. 4.)

4. At all relevant times, America, Capella and Harbor House were sub-condominiums of the GISCA. (Rec. App. #20, p. 5.) Each of the sub-condominiums consisted of individually owned units. (Rec. App. #20, p. 5.)

5. At all relevant times, IDC Properties owned one or more individual units in the Condominium Associations. (Rec. App. #20, p. 5.)

6. During the period from 1995 to November 2005, IDC Properties paid, and GISCA solicited and accepted, payments of condominium fees for the Reserved Area. *See America I*, 844 A.2d at 134, (Rec. App. #20, Ex. A.)

7. In 1997-1998, IDC Properties commenced building a function center on the Reserved Area, which became known as the Newport Regatta Club (the "Regatta Club"). (Rec. App. # 20, p. 5.)

8. At no time from 1988 through April 8, 2005, did anyone other than IDC Properties, IDC Marina, Inc. or Debtor possess or occupy the Reserved Area or the Regatta Club. (Rec. App. #20, p. 5.)

9. From 1998 through April 2005, Debtor made rent payments to IDC Properties totaling approximately $1.1 million for its use and enjoyment of the Reserved Area and the Regatta Club. (Rec. App. #20, p. 5.)

10. At all relevant times, IDC Properties and Debtor relied upon the fact that record title to the Regatta Club and the Reserved Area was vested in IDC Properties. (Rec. App. #20,

---

[11] Prior to 1995, the Reserved Area was partially developed with a parking lot and some other structures. (Rec. App. #20, p. 4.)

p. 5.) Moreover, no one ever sought (or even claimed any right) to disturb IDC Properties' or Debtor's possession. (Rec. App. #20, p. 5.)

11. On March 24, 2004, the Rhode Island Supreme Court declared in the Reserved Area Litigation, that "the disputed portions vested in the individual unit owners in fee simple." *America I*, 844 A.2d at 132-33, (Rec. App. #20, Ex. A.) "Such individuals include . . . IDC in its capacity as the owner of several sub-condominiums." *America I*, 844 A.2d at 133 n.22, (Rec. App. #20, Ex. A.)

12. The Supreme Court further stated:

> However, with respect to the defendants' payments of common expenses on the disputed parcels after the declarant's development rights had expired, we concur that to permit the plaintiffs to enjoy the benefits of such expenditures would constitute an inequitable windfall.
> However, we do not agree that this should form the basis for denying the plaintiffs' appeal and, instead, we remand the matter to the Superior Court for an accounting on this issue. n24
>
> n24 This accounting is confined to the common expenses paid by defendants on the master units after the expiration of their development rights on December 31, 1994. **It does not include any profits that the defendants may have earned from its operation of the Newport Regatta Club**.

*America I*, 844 A.2d at 135 (Rec. App. #20, Ex. A.) (emphasis added)

13. According to the Rhode Island Supreme Court, title to the Reserved Area vested in the individual 154 unit owners in fee simple as tenants in common. *See America I*, 844 A.2d at 133, (Rec. App. #20, Ex. A.) In *America II*, the Supreme Court modified its prior opinion to hold that "<u>title rested with the unit owners in common ownership from the creation of the condominium</u>." *America II*, 870 A.2d at 443 (emphasis added).

14. On July 5, 2005, at a hearing before on Debtor's motion for a preliminary injunction enjoining its eviction from the Reserved Area and the Regatta Club, the Condominium

Associations' counsel conceded that his clients were unable to recover damages from Debtor when he made the following admission:

> They [Rhode Island Supreme Court] restricted the accounting to just that issue, **in effect precluding my clients from recovering anything from the use of that property** by IDC during that period . . . .[12]

15. On July 5, 2005, at the hearing on Debtor's preliminary injunction request, counsel for the Condominium Associations again admitted that his clients were not entitled to recover damages from Debtor, stating:

> . . . . They get to keep all the profits that they made for the six, seven years that they operated, or more than that, I guess. I guess it's about seven years. <u>They got to keep all that</u>. [13]

16. On August 3, 2005, the Condominium Associations'' counsel again stated:

> You've got a legal use and made millions of dollars in profits and you are going to keep them.[14]

17. On November 10, 2005, Hon. Justice Stephen Nugent acknowledged the Supreme Court's holding when he made the following statement while ruling against Debtor's request for an injunction from eviction:

> Ultimately, Mr. Roos gambled and lost. However, his gamble, in effect, paid off, because he gained eight years of operating a highly profitable business, which, in the Supreme Court's infinite wisdom, **he does not have to account for or pay back to the unit owners** who were, according to the Supreme Court decision, the rightful owners of that space. In fact, he gained, because he's also, the Supreme Court ruled in its infinite wisdom, entitled to get back the expenses for the common expenses of the Condominium

---

[12] Michael P. DeFanti, Esq., U.S. Bankruptcy Court RI, 7/5/2005, Transcript ("Tr.") at 131, line 19, p.132, line 1. (Rec. App. #20 Ex. C p. 131) (Relevant pages attached as Ex. 3.) Opposing counsel has judicially admitted that his clients are precluded from asserting the Claims. However, his statement that his clients do not have to pay anything is not accurate. That matter is the subject of a State Court proceeding and is not before this Court.
[13] *Id*. at 132, line 1. (Rec. App. #20, Ex. D, p. 132.) (emphasis added.) (Relevant pages attached as Ex. 4.)
[14] Michael P. DeFanti, Esq., US Bankruptcy Court RI, 8/3/2005, Tr. at 48, line 9 (Rec. App. #20 Ex. E, p. 48.) (Relevant pages attached as Ex. 5.)

Association.[15]

18. Understanding that the Rhode Island Supreme Court left open the adjudication of Debtor's claims for damages against the Condominium Associations, on March 14, 2006, Debtor filed a counterclaim to GISCA's Proofs of Claim in the form of an adversary complaint (A.P. 06-1049 (the "Adversary Proceeding")) seeking declaratory judgment, injunctive relief, breach of contract, misrepresentation, tortious interference with contract, tortious interference with prospective business advantage, abuse of process and civil conspiracy. (Rec. App. #27.)

19. On May 1, 2006, the Condominium Associations filed a Motion to Dismiss (Rec. App. #25.) and GISCA filed a Motion to Abstain (the "Abstention Motion") (Rec. App. #24.) from the Adversary Proceeding. In its Abstention Motion, GISCA argued for mandatory, and in the alternative, discretionary, abstention. (Rec. App. #24.) In support of its argument for discretionary abstention, GISCA pointed to the Consent Order of August 25, 2005, which preserved the rights of Debtor to pursue state court remedies against the Condominium Associations. (Rec. App. #24, p. 12.) *See also* (Rec. App. #33, ¶3). In relevant part, the Consent Order provided:

> [t]he automatic stay is lifted to enable Debtor . . . to seek a State court determination of its claims against the Condominium Associations relating to the Regatta Club Premises, including its claims to possession of the Premises . . ., and the Condominium Associations may defend against such claims without regard to the Stay.

20. On June 14, 2006, the Bankruptcy Court entered an Order granting the Abstention Motion and denying the Motion to Dismiss (the "Abstention Order"). (Rec. App. #21.) In the Abstention Order, the Court held that discretionary abstention of the Adversary Proceeding was

[15] Hon. Stephen Nugent, RI Superior Court, 11/10/2005, Tr. at 18, line 22. (Rec. App. #20, Ex. F, p. 18.) (emphasis added.) (Relevant pages attached as Ex. 6.)

appropriate, but specifically held that "The proof of claim litigation will remain in this Court, and. . . . [n]othing in this Order is intended to preclude Debtor from raising any affirmative defenses regarding the Associations' Proof of Claim filed in this Case." (Rec. App. #21, p. 2.)

## ARGUMENT

### SUMMARY OF ARGUMENT

The Bankruptcy Court properly determined that the Condominium Associations were barred from recovering damages from the Debtor and appropriately disallowed their Proofs of Claim. The only error below was the court's finding that the Condominium Associations had established the elements of trespass by Debtor.

The Proofs of Claim were properly disallowed as an impermissible double recovery. The Bankruptcy Court properly considered equitable issues and exercised its equitable jurisdiction to determine that allowing damages would be overkill and an unjust enrichment.

Also, the court correctly adopted the Debtor's arguments concerning estoppel ("principally r*es judicata"*). The term "*res judicata*" is commonly used to refer to two preclusion doctrines: "issue preclusion" (also known as collateral estoppel) and "claim preclusion". As Debtor correctly and successfully argued below, issue preclusion bars further recovery by the Condominium Associations. They now try to shift the discussion to claim preclusion (awkwardly also known as *res judicata*) and to raise irrelevant issues concerning the separate legal existence of the Debtor and IDC Properties.

Seeking a reversal, the Condominium Associations confuse these distinct concepts. The Bankruptcy Court, however, properly considered issue preclusion and disallowed the Proofs of Claim. The disallowance should be affirmed.

Moreover, the Bankruptcy Court erred in finding that the Condominium Associations established the elements of trespass as a matter of summary judgment before considering all the defenses Debtor had raised. The Condominium Associations had not moved for such relief, and many of Debtor's defenses have not yet been presented for consideration. Debtor is entitled to be heard on those defenses.

As a co-owner of the Reserved Area, IDC Properties was not a trespasser and was within its rights to allow Debtor to be on the property. With IDC Properties' consent, Debtor could not be trespasser.

The Bankruptcy Court erroneously held that it was Debtor's burden to show that it had exclusive possession of the property. According to blackletter law, the Condominium Associations must demonstrate that they had either actual or constructive possession of the Reserved Area when Debtor entered the property to maintain their trespass claim. Because the Condominium Associations never had possession of the Reserved Area, Debtor could not be a trespasser.

Debtor was on the Reserved Area with the consent and acquiescence of the owners of the Reserved Area. Therefore, it was error for the Bankruptcy Court to hold that Debtor was a trespasser. This Court should reverse the Bankruptcy Court's findings concerning trespass and affirm the disallowance of the Proofs of Claim.

## I. THE PROOFS OF CLAIM WERE PROPERLY DISALLOWED AS AN IMPERMISSIBLE DOUBLE RECOVERY UNDER EQUITABLE PRINCIPLES OF LAW

### A. *The Proofs of Claim Were Properly Disallowed as an Impermissible Double Recovery.*

The Court should affirm disallowance of the Condominium Associations' Proofs of Claim as an impermissible double recovery. In rendering its decision on the Proofs of Claim, the

Bankruptcy Court properly foreclosed the Condominium Associations' attempt at a double recovery. Specifically, the Bankruptcy Court acknowledged that the Supreme Court already provided the Condominium Associations with a complete remedy for its claims and that "the Association is 'entitled to only one satisfaction of the tort, even though two or more parties contributed to the loss.'" *In re IDC Clambakes, Inc.*, 2007 Bankr. LEXIS at *11 (Rec. App. #9, p. 7.) (*quoting Augustine v. Langlais*, 121 R.I. 802, 402 A.2d. 1187, 1189 (1979)). In analyzing the trespass damages issue, the Bankruptcy Court correctly determined that the Proofs of Claim for trespass should not be allowed because in *America I*, the Supreme Court "fashioned a complete and quite generous remedy for the transgressions of the Roos' entities . . . ."[16] *Id.* at *10 (citations omitted).

The protracted litigation between the parties spanned many years and traversed the courts within Rhode Island. Nevertheless, each of the courts acknowledged that the Condominium Associations have received a complete relief for the alleged trespass of IDC Properties and Debtor.

The Condominium Associations initially brought suit against Roos and IDC Properties to challenge the allocation of voting rights and determination of condominium fees. In *America I*, the Supreme Court held that title to the land underneath the Regatta Club vested[17] with the unit

[16] As the Bankruptcy Court pointed out, the Supreme Court fashioned a complete remedy for the Condominium Associations. However, the Supreme Court further recognized that on remand IDC Properties' rights would be subject of further proceedings including, but not limited to, a remand for an accounting:

> However, with respect to defendants' payments of common expenses on the disputed parcels after the declarant's development rights had expired, we concur that to permit the plaintiffs to enjoy the benefits of such expenditures would constitute an inequitable windfall. . . . we remand the matter to the Superior Court for an accounting on this issue.

*America I*, 844 A.2d at 48. (Rec. App. #20, Ex. A.)

[17] *America II* clarified the Supreme Court's prior holding in *America I* to reflect that title rested with the unit owners from creation of the condominiums, rather than after expiration of the declarant's rights. *See America II,* 870 A.2d at 443. (Rec. App. #20, Ex. B.)

owners upon expiration of the condominium declarant's rights regarding the master units, and further explained that IDC Properties "constructed the parcel at their peril and cannot now contend that equity should prevent plaintiffs from prevailing because of their expenditures." *America I*, 844 A.3d at 135. (Rec. App. #20, Ex. A). In fact, counsel for the Condominium Associations aptly admitted the limits of the relief and damages afforded them by the Supreme Court:

> Mr. DeFanti : . . . We get the building; they get to keep all the profits that they made for the six, seven years that they operated, or more than that, I guess. I guess it's about seven years. They got to keep all that. We couldn't go after them and we got to keep the building. That's basically what the supreme court did, it adjudicated all these issues***[18]

The Condominium Associations surmised that the Supreme Court granted them title to the land, and the improvements thereon as the limits of their damages. Based upon the Supreme Court's admonition that IDC Properties constructed the Regatta Club at its own peril, the Condominium Associations initiated the Eviction Proceeding. (Rec. App. #36, p. 4.) As Debtor and IDC Properties were in the midst of wedding season, Debtor was forced to seek protection under Chapter 11 of the United States Bankruptcy Code to avoid eviction from the Regatta Club that would have disrupted 73 weddings scheduled for 2005. (Rec. App. #39, p. 1. *See also*, Rec. App. #36, Aff. T. Coffin, ¶ 2.) Ultimately, Debtor was compelled to consent to appointment of the Trustee, who in turn agreed to vacate the Regatta Club and turn it over to the Condominium Associations on November 5, 2005. (Rec. App. #34.) *See also*, Consent Order (Rec. App. #35). The Bankruptcy Court ordered Debtor to pay $450,000 to the Condominium Associations for use

[18] Michael P. DeFanti, Esq., U.S. Bankruptcy Court RI, 7/5/05, Tr., p. 132. (Rec. App. #20, Ex. D) Curiously, the Condominium Associations accuse Debtor of arguing "falsely to the Bankruptcy Court" that the Supreme Court denied the Condominium Associations the right to recover money damages in *America I*. This is precisely what Mr. DeFanti himself argued below. *See* App. Br., p. 3. In fact, not all issues between the parties are adjudicated. The state court litigation continues on remanded issues and those on which the Bankruptcy Court abstained. The Condominium Associations' right to damages from Debtor was resolved by *America I*.

of the Regatta Club during the 2005 wedding season. (Rec. App. #35.) Based upon the holdings in *America I* and *America II*, the Condominium Associations received their damages – certain rights to the Reserved Area and the Regatta Club.

The Condominium Associations have received full compensatory damages for the alleged trespass.[19] The Bankruptcy Court recognized that to allow the Condominium Associations to collect against Debtor on any other claims, including their Proofs of Claim, would amount to an impermissible double recovery.

The prohibition on double recovery is well-settled blackletter law: generally, a plaintiff is only entitled to be made whole, and therefore, cannot collect multiple damages for the same injury. *See Clausen v. Storage Tank Dev. Corp.*, 21 F.3d 1181 (1st Cir. 1994). It is a fundamental tenet of tort law that "entirely apart from any release, a plaintiff who has recovered any item of damage from one [tortfeasor] may not again recover the same item from another [tortfeasor]; the law, that is, does not permit a plaintiff to recover double payment." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 348 (1971) (*citing Aro Mfg. Co. v. Convertible Top Co*, 377 U.S. 476 (1964); *McKenna v. Austin*, 77 U.S. App. DC 228, 234 (1943); Restatement, Torts §885(3) (1939); W. Prosser, Torts, §46 (3d ed. 1964)). As the First Circuit has noted, absent limited exceptions, "courts are loath to promote double recoveries." *Villarini-Garcia v. Hospital Del Maestro*, 112 F.3d 5, 8 (1st Cir. 1997) (reducing judgment by amount already paid to plaintiff by another tortfeasor). *See also, Pillo v. Reading Co.*, 232 F. Supp. 761, 762 (E.D. Pa. 1964) (holding that a satisfied judgment against a tortfeasor barred plaintiff from suing for same injury because of the prohibition against double recovery);

[19] However, the Bankruptcy Court abstained from adjudicating the legal rights of Properties and Debtor regarding their state law claims against the Condominium Associations, including pursuit of easement rights and other real property rights. (Rec. App. #21.) Accordingly, the only rights fully determined and awarded on the issue of damages were the rights of the Condominium Associations, not the rights of IDC Properties or Debtor.

*Omniglow Corp. v. Unique Indus., Inc.*, 184 F. Supp.2d 105, 121 (D. Mass. 2002) (explaining that full compensation prevented recovering against other joint-infringers). The Bankruptcy Court understood that these principles of law necessitated the disallowance of any monetary claims in favor of the Condominium Associations.

In Rhode Island, the limitation on double recovery is preserved by offsetting the amount a plaintiff receives from one tortfeasor against the amount he may recover from another tortfeasor. *See Sousa v. Casey*, 306 A.2d 186 (R.I. 1973); *Hackett v. Hyson*, 72 R.I. 132, 48 A.2d 353 (R.I. 1946) (holding that satisfaction of a judgment against one tortfeasor reduces the recovery available to other joint tortfeasors by that amount). In *Sousa*, the Supreme Court of Rhode Island held that in a civil action for assault and battery there could be only one verdict for a single sum against all who are found liable for a tort. *Sousa*, at 194. The Supreme Court stated:

> It is generally well settled that in a civil action for assault or battery, where two or more defendants are found liable, their liability is joint and several and the suit may be maintained against any one or all of them. <u>There can be but one verdict for a single sum against all who are found guilty of the tort</u>.

*Id.* at 637 (emphasis added) (remanding the case to the Superior Court for a trial on the correct damages to be applied against all defendants). *See also Augustine v. Langlais*, 121 R.I. 802 (1979) (explaining that the statute and its decisional authority are "predicated on the fundamental doctrine that an injured person is only entitled to one satisfaction of the tort, even though two or more parties contributed to the loss.") (*citing Maryland Lumber Co. v. White*, 205 Md. 180, 190-200, 107 A.2d 73, 80-81 (Md. 1954)). Accordingly, if a settlement, or satisfaction of judgment amount, paid to a plaintiff exceeds the plaintiff's total damages, <u>a remaining joint tortfeasor would not be liable to the plaintiff for any damages whatsoever</u>. *See Calise v. Hidden Valley*

*Condo. Ass'n, Inc.*, 773 A.2d 834, 840 (R.I. 2001) (reducing amount owed under a default judgment against a joint tortfeasor by amount already paid to plaintiff by a settling tortfeasor).

The Condominium Associations argue that "an injured party can assert separate claims for premises liability against a landlord and a tenant. An earlier finding that the landlord was non-negligent does not also mean that the tenant was non-negligent." App. Br. p. 12, n.7. Flawed logic and double negatives aside, yes, an injured party can assert separate claims for premises liability against a landlord and tenant. However, under the well-settled law cited above, if the total liability is assessed against the landlord, the injured party may not thereafter obtain additional damages from the tenant. The Bankruptcy Court properly determined that the Condominium Associations are not entitled to any further relief from Debtor because they have already received their full recovery for their alleged damages from their claims against IDC Properties.

The Condominium Associations maintain that principles of joint tortfeasor liability are inapplicable because they never asserted a claim for trespass against IDC Properties. This distinction is both irrelevant under joint tortfeasor law, and contrary to the Condominium Associations' own judicial admissions.

In *Lawrence v. Palraka*, 1991 R.I. Super. LEXIS 109 (Aug. 6, 1991), the superior court held that identity of the torts asserted against joint tortfeasors was irrelevant to a double recovery analysis. The court rejected a plaintiff's attempt at double recovery where a plaintiff sued two different tortfeasors under different theories of law. In *Lawrence*, a drunk driver hit and killed a man. Decedent's estate settled with the drunk driver. *See id.* at *2. Subsequent to the settlement, the estate brought suit against the server who served the driver alcohol, for violations under the Rhode Island Liquor Liability Act. *See id*. The plaintiff argued that the server and

driver's torts occurred at different points leading up to the accident, and were brought under different theories of law, so they were not joint tortfeasors. Rejecting the plaintiff's argument, the Superior Court explained that "parties are jointly and severally liable if they are both the legal cause of harm that cannot be apportioned, whether conduct is concurring or consecutive. The fact that one cause of action arose out of statutory law and one out of common law is not determinative of whether the tortfeasors are joint." *Id.* (*citing McInnis v. AMF, Inc.*, 765 F.2d 240, 250 (1st Cir. 1985)). Under this analysis, the court determined that even though the driver and the server committed different torts at different times, the server and the driver were joint tortfeasors. Accordingly, the court offset the amount the estate received in settlement with the driver from the damages it could collect from the server. *Id.* at *3-5.

Similar to the plaintiff in *Lawrence*, the Condominium Associations pursued multiple and different legal theories of recovery against IDC Properties and Debtor.[20] Nevertheless, the trespass claims asserted against Debtor caused the exact same legal harm as the claims brought against IDC Properties in America I.

The prohibition against double recovery does not rise and fall on semantics. Thus, although the Condominium Associations never asserted a trespass claim against IDC Properties, they clearly admit, and it is undisputed, that the harm alleged by the Condominium Associations arises from the alleged tortious conduct of Clambakes, IDC Properties and Roos. Whether the tort is trespass or breach of fiduciary duty, the injury is the same. Moreover, the alleged harm caused by Debtor cannot be apportioned from the harm allegedly caused by IDC Properties. The

[20] In the original suit now pending on remand in Newport Superior Court, the Condominium Associations brought a seven-count complaint against the Roos Entities, seeking declaratory judgment that certain voting procedures and amendments were void, that IDC Properties no longer had an ownership interest in the Master Units, for compensatory damages based upon IDC Properties' allegedly invalid use of the Master Units, an accounting for allocation of common expenses, compensatory damages for breach of fiduciary duty, injunctive relief for interference with an easement and punitive damages against IDC Properties. *America I*, 844 A.2d at 135 (Rec. App. #20, Ex. A.)

alleged damages stemming from Debtor's use of the Reserved Area are not separate from IDC Properties' use of the area. To borrow the Condominium Associations' hypothetical, if a landlord and tenant were each sued for a slip-and-fall injury occurring on the premises, the claims against each may be different, but the harm is indistinguishable, and therefore, not apportionable between the tortfeasors. The Condominium Associations have not set forth <u>any</u> evidence indicating that their "harm" can be apportioned as between IDC Properties and Debtor.

The Condominium Associations attempt to circumvent *America I and America II*, and seek additional remedies beyond what they are entitled to. The prohibitions on double recovery were intended to stem precisely this kind of "overkill." *See In re IDC Clambakes, Inc*., 2007 Bankr. LEXIS at *12. (Rec. App. # 9).

For the foregoing reasons, the Decision should be affirmed and the Proofs of Claim disallowed in their entirety. The Supreme Court determined that the remedy provided to the Condominium Associations was limited. Monetary damages for profits from the operation of the Regatta Club are not recoverable.

### *B. The Bankruptcy Court Properly Disallowed the Claims Based on Principles of Equity.*

The United States Supreme Court has explicitly held that a bankruptcy court has the power to consider all the circumstances when it determines the allowance or disallowance of a claim:

> As we have said, the Bankruptcy Court in passing on allowance of claims sits as a court of equity. . . . <u>In the exercise of its equitable jurisdiction the Bankruptcy Court has the power to sift the circumstances surrounding any claim</u> to see that injustice or unfairness is not done in administration of the bankruptcy estate.

*Pepper v. Litton*, 308 U.S. 205, 307-08 (1939) (emphasis added).

It was under this broad and equitable framework that the Bankruptcy Court properly concluded "independently, based on the totality of the circumstances, that to award the Association anything further as additional damages in this bankruptcy would clearly be overkill and an unjust enrichment." *In re Clambakes, Inc.*, 2007 Bankr. LEXIS at * 11. (Rec. App. #9). It made these findings after looking at the totality of the circumstances, just as an equity judge should do when evaluating a core proceeding under 28 U.S.C. §157(b) and section 105 of the Bankruptcy Code. The Condominium Associations misread the meaning of this sentence, and mistakenly argue that the "totality of the circumstances" is some sort of independent basis for relief. *See* App. Br. 18. Their argument that it was inappropriate for the Bankruptcy Court to apply a "totality of the circumstances" defense similar to that found elsewhere in Rhode Island law is wholly inapplicable and nonsensical. The Bankruptcy Court did not apply such a rule in the Decision.

Incredibly, the Condominium Associations assert that the Bankruptcy Court had no authority to determine these equitable issues, because "[s]ubjective notions of 'fairness' do not come into play in the law of trespass." App. Br., p. 18. Section 105 of the Bankruptcy Code refutes the Condominium Associations' flawed view of the Bankruptcy Court's authority:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C.§105(a).

The Condominium Associations studiously ignore the fact that they subjected themselves to, and indeed availed themselves of, the jurisdiction of a court of equity when they filed their

Proofs of Claim. *See, e.g.*, *Granfianciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 & n.4 (1989) (holding that the filing of a proof of claim against a bankruptcy estate triggers the process of allowance or disallowance of claims, thereby subjecting the claimant to the Bankruptcy Court's equitable power); *Langenkamp v. Culp,* 498 U.S. 42, 44 (1990) (". . . . the creditor's claim. . . become[s] integral to the restructuring of Debtor-creditor relationship through the Bankruptcy Court's *equity jurisdiction*") (emphasis in original); *Sunshine Dev., Inc. v. Federal Dep. Ins. Corp.,* 33 F.3d 106 (1st Cir. 1994) (explaining that the filing of a proof of claim subjects the claimant to the bankruptcy court's equity jurisdiction). The adjudication of Proofs of Claim is a core matter, vested solely in the Bankruptcy Court's jurisdiction, pursuant to 28 U.S.C. §157(b)(2)(B). *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc.*, 304 B.R. 111 (Bankr. N.J. 2003) ("When a creditor files a proof of claim it submits itself to the Bankruptcy Court's equitable power, and the claims, even those arising under state law, become core proceedings within the jurisdiction of the Bankruptcy Court").

Judge Votolato, presiding over a court of equity, properly considered the circumstances surrounding the Proofs of Claim. *See Arnold Printworks, Inc. v. Apkin (In re Arnold Printworks),* 815 F.2d 165, 169 (1st Cir. 1987) (explaining that bankruptcy courts adjudicate claims "in an exercise of 'summary jurisdiction' as a court of equity"). Judge Votolato was aware of the long and complicated history among the parties, and comprehended the remedy awarded to the Condominium Associations in *America I* and *II* when he denied their further claims against Debtor. He was aware that when parties come to bankruptcy, they have often already litigated issues contentiously. He acknowledged that when Debtor first availed itself of the Bankruptcy Court, it attempted to re-litigate previous issues, but that in 2005, Debtor "got down to business and began in earnest to address its Chapter 11 duties, *i.e.,* its plan was promptly

confirmed, all other creditors and fees were paid in full, and sufficient funds were placed in escrow to pay the Association [sic] in full if these claims are allowed as filed." *In re IDC Clambakes, Inc.*, 2007 Bankr. LEXIS 232 at *7. (Rec. App. #9.)

Further, Judge Votolato was aware that Mr. Roos deposited over $3 million of his own money to ensure that Debtor could pay its creditors in full. (Rec. App. #31.) When they realized that Mr. Roos was funding Debtor's 100% plan, the Condominium Associations decided to try to reach the monies explicitly denied them by the Supreme Court. Although the Supreme Court denied their right to any of the profits from operation of the Regatta Club, the Condominium Associations now seek those profits indirectly by claiming back rent from Debtor, even though Debtor has already paid that rent to IDC Properties. The Bankruptcy Court recognized that it was unjust to allow the Condominium Associations to receive further compensation. If the Condominium Associations prevailed on this broad theory of entitlement, they would similarly be able to seek "trespass" damages from the brides who were married at the Regatta Club, and the vendors who provided services at the Regatta Club. There would be boundless opportunities for the Condominium Associations to enrich themselves beyond the total damages awarded by the Supreme Court. Such absurd possibilities would also cut against finality and closure sought in this protracted litigation. The Bankruptcy Court was able to evaluate these factors when it determined it would be overkill and unjust enrichment to allow further recovery.

## II. THE BANKRUPTCY COURT CORRECTLY HELD THAT THE CONDOMINIUM ASSOCIATIONS CANNOT RECOVER ANY DAMAGES FROM DEBTOR BECAUSE THE ISSUE OF DAMAGES WAS ALREADY LITIGATED IN *AMERICA I*.

The Condominium Associations are barred from recovering any trespass damages. The issue of disallowance of rent as damages, as reflected in the Condominium Associations' proof of claim, has been litigated. In *America I,* the Supreme Court remanded the case to the lower

court for an accounting in favor of the Roos Entities. In doing so, the Supreme Court limited this accounting to "the common expenses paid by defendants on the master units after the expiration of their development rights on December 31, 1994. It does not include any profits that the defendants may have earned from its operation of the Newport Regatta Club." *America I*, 844 A.2d at 135 n.24 (Rec. App. # 20, Ex. A.) The Supreme Court limited the amount of damages the Condominium Associations were entitled to by barring them from obtaining any of the profit. Profits plainly include rent paid by the Debtor to IDC Properties to them by their tenant.[21] Moreover, because Tom Roos is the sole shareholder of both the Debtor and IDC Properties, those profits flow through to him. As a Defendant in *America I* and *II*, the Bankruptcy Court properly denied the Condominium Associations' attempt to take Roos' profits from the Regatta Club. The Bankruptcy Court recognized that the Condominium Associations' Proofs of Claim were an inappropriate attempt to relitigate a decided issue. The Bankruptcy Court's holding was correct as a matter of law and its factual findings were not clearly erroneous.

### *A. The Form of Res Judicata Known as Issue Preclusion (Collateral Estoppel) Bars the Condominium Associations' Proof of Claim.*

The Court should affirm what the Bankruptcy Court properly recognized on summary judgment: that the facts merit denial of the Proofs of Claim based on issue preclusion. The Bankruptcy Court held that "Debtor correctly points out that the Supreme Court, in *America I*, has already addressed and ruled upon the Associations' entitlement to damages, _and for reasons advanced by Debtor_ (principally res judicata) I conclude that Claim Nos. 16-19 should be and hereby are DISALLOWED." *In re IDC Clambakes, Inc.,* 2007 Bankr. LEXIS 232,*10 (R.I. Bankr. Jan. 24, 2007) (Rec. App. #9.) (emphasis added). The Condominium Associations

[21] In essence, the Condominium Associations are attempting to force Debtor to pay rent twice. See Section I, supra, pp. 13 *et seq*.

incorrectly assert that the Bankruptcy Court "confused" the doctrines of res judicata and collateral estoppel and "reached the wrong result."[22] *See* App. Br., p. 11-12. They misunderstand Judge Vololato's holding and mistakenly contend that his decision was based on claim preclusion.[23] *See* App. Br. 11. They are wrong. The thrust of Debtor's argument (as adopted by the Bankruptcy Court) was that issue preclusion, not claim preclusion, prevented the Condominium Associations from seeking damages in this case.

The Bankruptcy Court was not confused when it adopted Debtor's argument and stated that it was based on "principally" res judicata. "The term 'res judicata' is commonly used to refer to two preclusion doctrines: 1) collateral estoppel or 'issue preclusion' and 2) res judicata or claim preclusion."[24] *Plunkett v. State of Rhode Island*, 869 A.2d 1185, 1188 (R.I. 2005); *see also In re Hyperion Enterprises, Inc*., 149 B.R. 281, 282 (Bankr. R. I. 1993) ("the doctrine of res judicata is composed of two aspects: 1) claim preclusion and 3) issue preclusion") (Votolato, J.) (citations omitted). In *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984), the United States Supreme Court explained:

> The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. Most commentators refer to these effects collectively as the doctrine of 'res judicata.' Res judicata is often analyzed further to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion.' Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. Claim preclusion refers to the effect of a judgment in

[22] The Condominium Associations focus on <u>claim</u> preclusion and argue that the claims asserted in *America I* are different than the claims asserted in the bankruptcy proceedings. *See* App. Br. 11-12. But, the Bankruptcy Court's holding was based on <u>issue</u> preclusion. Thus, their arguments on claim preclusion are irrelevant.

[23] The Condominium Associations also argue that the "right to recover money damages" is not an "issue," it is a claim. *See* App. Br. 12. However, they fail to cite any supporting case law. The amount of damages is an "issue" not a claim. *See Kathios v. General Motors Corp*., 862 F.2d 944 (1st Cir. 1988) (holding that issue preclusion prevented a plaintiff from relitigating the amount of his damages.)

[24] Res judicata principles apply to bankruptcy proceedings. *See In re Medeiros*, 153 B.R. 9, 11 (Bankr. D. R.I. 1993). "What those principles are and how they apply in respect to a state court judgment, is itself a matter of state law." *Id.* at 11 (citing 28 U.S.C. § 1738; *Kremerr v. Chemical Constr.Corp.*, 456 U.S. 461, 466 (1982).)

> foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.

*Id*. at 77 n.1 (citations omitted).

Although the term res judicata is often used to describe both claim preclusion and issue preclusion, the concepts are applied in different situations. Claim preclusion is the preclusive effect of a final action between two parties on the claims that were actually litigated or should have been litigated in the initial proceeding. *Plunkett*, 869 A.2d at 1188. It is normally invoked in a subsequent action based upon the same demand or claim. Claim preclusion requires: 1) identity of parties, 2) identity of issues and 3) finality of judgment. *See Ride v. Medeiros (In re Medeiros),* 153 B.R 9, 11 (Bankr. R.I. 1993); *Howland v. Menard*, 1980 R.I. Super. LEXIS 189, *17 (1980)

By contrast, issue preclusion, as argued successfully by Debtor below, bars the relitigation of a particular issue that was decided in a prior lawsuit even if the current lawsuit involves different claims. *See In re Laroche*, 207 B.R. 369, 371 (Bankr. R.I. 1997)*; see also Lennon v. Dacomed Corp. et al.*, 901 A.2d 583, 590 (R.I. 2005) ("res judicata or claim preclusion . . . prohibits the relitigation of issues that were tried or might have been tried in the original suit . . . the doctrine of collateral estoppel or issue preclusion, by contrast, 'makes conclusive in a later action on a different claim the determination of issues that were actually litigated in a prior action.'") (citations omitted)). Issue preclusion evolved because the more rigidly defined claim preclusion was not always adequate to prevent repetitive litigation in situations where the strict requirements of claim preclusion could not be met. *See Howland*, 1980 R.I. Super. LEXIS at *18. The party invoking issue preclusion does not have to be a party or in privity with a party in the first proceeding. *See id*. Contrary to the Condominium

Associations' assertions, the Bankruptcy Court correctly applied the law of issue preclusion to the facts of this case. There is no error of law that justifies reversal of the Bankruptcy Court's application of issue preclusion.

### *B. The Condominium Associations Are Estopped From Seeking Trespass Damages Against Debtor.*

While litigation remains pending between the parties on other matters not disposed of in *America I* and *America II* (under the Abstention Order, the causes of action asserted by the Roos Entities are subject to further proceedings in state court), it is clear that the Bankruptcy Court was correct in finding that issue preclusion bars the Condominium Associations' Proofs of Claim.[25] For issue preclusion to apply, there must be: (1) identity of the issues; (2) final judgment on the merits; and (3) establishment that the party against whom collateral estoppel is asserted was a party or in privity with the party in the prior action. *See Providence Teachers Union v. McGovern*, 319 A.2d 358, 361 (R.I. 1974); *see also In re Laroche*, 207 B.R. at 371. Here, the three predicates of issue preclusion have been met.

#### 1. Identity of Issues

Rhode Island courts consider three factors when determining whether there is an identity of issues. *See, e.g.*, *State v. Godette*, 751 A.2d 742, 746 (R.I. 2000); *E.W. Audet & Sons, Inc. v. Firemen's Fund Ins. Co*, 635 A.2d 1181 (R.I. 1994). First, the issue must be identical to the issue decided in the prior proceeding; second, the issue must have been actually litigated; and third, the issue must be necessarily decided. *See Godette,* 751 A.2d at 746. In this instance the prior state court proceedings satisfy all three factors.

[25] Any other issues not resolved by *America I* and *America II* will have to be litigated between the parties in the state court litigation, including the rights of Debtor to pursue claims against the Condominium Associations, as specifically preserved in the Consent Order and Abstention Order. (Rec. App. #22.)

The issue presented by the Condominium Associations' proof of claim is identical to the issue addressed in *America I* - whether the Condominium Associations had rights to the Reserved Area, and if so, the applicable measure of damages owed to them. As discussed above, in *America I*, the Supreme Court remanded the case for an accounting in order to remedy IDC Properties' payment of "common expenses" after December 31, 1994. *See America I*, 844 A.2d at 135 (Rec. App. #20, Ex. A.) The Supreme Court directed that the accounting would exclude "any profits that the defendants may have earned from its operation of the Newport Regatta Club." *Id*. n.24. Thus, the Supreme Court limited the type of damages the Condominium Associations were entitled to. Everyone that has interpreted the language in *America I*, including the Condominium Associations, agree footnote 24 precludes the Condominium Associations from seeking profits from the operation of the Regatta Club. The Rhode Island Superior Court later ratified the Supreme Court's confiscatory relief, stating:

> Ultimately, Mr. Roos gambled and lost. However, his gamble, in effect, paid off, because he gained eight years of operating a highly profitable business, which, in the Supreme Court's infinite wisdom, he does not have to account for or pay back to the unit owners who were, according to the Supreme Court decision, the rightful owners of that space.[26]

In arguments before the Bankruptcy Court,[27] counsel for the Condominium Associations admitted and conceded that the Supreme Court foreclosed the recovery of profits:

> [The Rhode Island Supreme Court] restricted the accounting to just that issue, in effect precluding [the Condominium Associations] from recovering anything from the use of that property by IDC during that period . . . . They get to keep all the profits that they made for the six, seven years that they operated, or more than that,

[26] Hon. Stephen P. Nugent, RI Superior Court, 11/10/2005, Tr., p. 18, line 22 (emphasis added) (Rec. App. #20 , Ex. F, p. 18.)

[27] In addition to this being a judicial admission, the doctrine of Judicial estoppel also prevents a party from prevailing in one forum and then relying on a contradictory argument to prevail in another. *Gens v. Resolution Trust Corp.* (*In re Gens*), 112 F.3d 569, 572-73 (1st Cir. 1997)

> I guess. I guess it's about seven years. They got to keep all that. We couldn't go after them . . . .[28]

While arguing their motion to dismiss this bankruptcy case on August 3, 2005, counsel for the Condominium Associations again admitted to the Bankruptcy Court that:

> You've got a legal use and made millions of dollars in profits and you are going to keep them.* * * My client bore a substantial cost to get that building. It gave up 6, 7 years of use to get that building. It probably gave up multi-millions, two or three times what it got in return.[29]

Further, in the attachment to the Proofs of Claim, the Condominium Associations explicitly admit that they are on thin ice in pursuing damages from Debtor:

> **To the extent not precluded by Rhode Island Supreme Court's decision** in America Condo. Ass'n v. IDC, Inc., 844, A.2d 117 (R.I. 2004) ("America I"), affirmed on reargument, 870 A.2d 434 (R.I. 2004) ("America II"). . . .

(Rec. App. #32.) (emphasis added).

Under the doctrine of judicial admissions a court may, in its discretion, treat statements in a document submitted to the court as binding admissions of fact. *See, e.g.*, *City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990). Here the Condominium Associations have admitted that they are not entitled to a recovery and the Bankruptcy Court agreed that a recovery would be unjust.

Similarly, while arguing against Debtor's Motion for Summary Judgment, counsel for the Condominium Associations admitted that "I think it's important for the Court to actually look

[28] Michael P. DeFanti, Esq., U.S. Bankruptcy Court RI, 7/5/05, Tr, p. 131, line 19, p.132, line 1 (emphasis added.) (Rec. App. #20, Ex.s C and D) It is remarkable that appellants' brief asserts that Debtor "falsely represented to the Bankruptcy Court" that the Supreme Court was presented with a claim for money damages when the Condominium Associations' own lawyer made the very same argument the prior year. App. Brief 12.

[29] Michael P. DeFanti, Esq., U.S. Bankruptcy Court R.I., 8/3/05, Tr., p. 48, line 9; (Rec. App. #20, Ex. E.)

closely at footnote 24 because it's that language that is controlling here."[30] Counsel for the Condominium Associations further stated:

> And everybody should be in agreement that the Supreme Court after determining the title issue…remanded the case for the accounting defined in footnote 24. And as the Court said in footnote 24, this accounting is confined to the common expenses paid by the defendants on their master units after the expiration of their development rights on December 31st, 1994. It does not include any profits that the defendants, meaning IDC Properties, Inc., IDC Inc. and Thomas Roos, may have earned from its operations of the Newport Regatta Club….[31]
>
> I'm not sure exactly what Mr. Roos may have obtained in connection with the — I can't go after profits of IDC Properties, Inc., IDC Inc. or Thomas Roos in connection with the accounting action that's going to be heard in the Newport County Superior Court at some point. This footnote says that that accounting is going to be – I have to pay them back condo fees and I can't ask for their profits. We're not asking for the profits of IDC Properties, Inc. or IDC Inc. or Thomas Roos in these proceedings.[32]

The rent paid by Debtor to IDC Properties was a profit of IDC Properties' ownership. Debtor and IDC Properties had a lease agreement, whereby IDC Properties received $15,000 a month in rent from Debtor. (Rec. App. #35, Coffin Aff., ¶2.) Rental income payable by Debtor to IDC Properties is part of the revenue generated that constituted a component of IDC's and Mr. Roos' Regatta Club "profits."[33] In these proceedings, the Condominium Associations are seeking rental payments from Debtor as damages for their alleged trespass. That issue has been determined and recovery is prohibited.

---

[30] William R. Grimm, Esq., U.S. Bankruptcy Court R.I., 9/27/06, Tr., p.21, lines 2-4. (Rec. App. #16.) (Relevant pages attached as Ex. 7)
[31] *Id*. at p. 21, lines 14-25. (Rec. App. #16.)
[32] *Id*. at p.22, lines 7-16. (Rec. App. #16.)
[33] Profit is defined as "the excess of revenues over expenditures in a business transaction." Black's Law Dictionary (8th ed. 2004.)

### 2. Final Judgment on the Merits

Judgments resulting from ordinary court proceedings are final and on the merits unless dismissed without prejudice. RESTATEMENT (SECOND) JUDGMENTS, § 27. The Supreme Court issued a final judgment in *America I* and *America II* as to the relief entitled to the Condominium Associations. In footnote 24 of the *America I* opinion, the Supreme Court held that the Condominium Associations are barred from "any profits that defendants may have earned from its operation of the Newport Regatta Club." *America I*, 844 A.2d at 135 n.24 (Rec. App. #20, Ex. A.) This final determination bars the allowance of the Claims in the Bankruptcy Court.

### 3. Mutuality of Parties

In Rhode Island, the party against whom issue preclusion is sought must be the same or in privity with a party in the prior case. *See Commercial Union Ins. Co. v. Pelchat*, 727 A.2d 676 (R.I. 1999). The party asserting issue preclusion does not need to be a litigant or in privity with a party in the prior proceeding. *See Howland*, 1980 R.I. Super. LEXIS at *18. In this case, the Condominium Associations were the plaintiffs in *America I*; it does not matter that Debtor was not a party in *America I*. Issue preclusion bars the Condominium Associations' Proofs of Claim.

## III. THE BANKRUPTCY COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE CONDOMINIUM ASSOCIATIONS ON THE TRESPASS ISSUE.

While Debtor believes that the Bankruptcy Court correctly determined that the Condominium Associations are not entitled to recovering anything from Debtor in connection with its use of the Regatta Club, it submits that the Bankruptcy Court erroneously decided that Debtor was a trespasser. Should this Court reach this issue, the Bankruptcy Court should not have affirmatively found Debtor to be a trespasser for the following reasons:

A. The Bankruptcy Court erroneously stated that the parties had filed cross-motions for summary judgment. Debtor filed a Motion for Summary Judgment. The

record is clear that the Condominium Associations filed no such motion. Therefore, the Condominium Associations had no right to affirmative relief on this record.

B. Moreover, Debtor had asserted numerous bases for disallowing the Condominium Associations' trespass claim when it filed its objection. Specifically included among those objections were estoppel and laches,[34] on which Debtor has not been heard. Therefore, the Bankruptcy Court's finding that Debtor was a trespasser before it had been heard on its other defenses was premature and in error.

C. Any co-owner of jointly owned property has a right to possess the property. As the Rhode Island Supreme Court noted,[35] IDC Properties owned a number of condominium units. In addition, as the declarant, it owned units that had yet to be sold. Therefore, it had a right to possess, be on and invite others, such as Debtor, on the Reserved Area.[36] IDC Properties could not trespass on its own property. Debtor, claiming its possessory rights through IDC Properties, likewise could not be trespasser.

D. The Bankruptcy Court erroneously held that Debtor had the burden to show that Debtor had exclusive possession of the property. That is not Debtor's burden. To establish trespass, the Condominium Associations must demonstrate that they had either actual or constructive possession of the Reserved Area when Debtor was on the property. The person claiming trespass must show that it has actual or constructive possession of the property at the time of the alleged trespass. The Condominium

[34] Other defenses, such as consent and acquiescence, are also implicit in Debtor's objections, which were not a subject of its motion for summary judgment and on which it has yet to be heard.
[35] *America I,* at 133, n. 22 (Rec. App. #20, Ex. A.)
[36] The Condominium Associations' counsel erroneously argued that based on Rhode Island Supreme Court's decision IDC Properties was a trespasser from 1988 to 1997. Rec. App. #16, p. 27-28. Also, the Bankruptcy Court erroneously held that IDC Properties was a trespasser. However, the Supreme Court determined no such thing. IDC Properties had every right to be on property it owned, whether as one of the co-owners or as the declarant of the condominium.

Associations never had either actual or constructive possession of the Reserved Area during the relevant period. Therefore, they never had a possessory right that the law of trespass protects. Thus, Debtor was not a trespasser.

E. As Debtor occupied the Reserved Area with consent and acquiescence of the owners of the property, Debtor did not trespass on the property. Therefore, it was error for the Bankruptcy Court to hold that Debtor was a trespasser.

***A. The Bankruptcy Court Erroneously Concluded That The Condominium Associations Had Moved For Summary Judgment; Therefore, It Erred In Holding That Debtor Was A Trespasser As A Matter Of Law.***

On September 1, 2006, Debtor moved for summary judgment requesting that the Bankruptcy Court decide that, as a matter of law, Debtor was not a trespasser and that the Claims should be disallowed. (Rec. App. #20.) The Condominium Associations' replied to the motion. (Rec. App. #19.) Debtor filed its response. (Rec. App. #17.) The Court then heard oral argument.

The record is crystal clear. The Condominium Associations never moved for summary judgment, and Debtor had no notice that the court was considering judgment as a matter of law against it. If it had such notice, it would have presented its other defenses to the Proofs of Claims. If the Bankruptcy Court concluded, as we submit it erroneously did, that Debtor had not demonstrated that it was not a trespasser as a matter of law then the court should have just denied the motion. But, it was error to affirmatively find that Debtor was a trespasser on the existing record and for other reasons discussed below.[37]

---

[37] A district court has power to order summary judgment sua sponte, . . . but that power should be exercised sparingly. Courts that yearn for the blossom when only the bud is ready act at their peril; proceeding with unnecessary haste frequently results in more leisurely repentance. Consequently, we have too often in the recent past been forced to vacate sua sponte summary judgments.

For sua sponte summary judgment to be a viable option, discovery in the case must be sufficiently advanced and the party against whom judgment was ordered must have been on notice to bring

### *B. It Was Error For The Bankruptcy Court Not To Consider Debtor's Defenses Against The Claims And On Which Debtor Had A Right To Trial.*

Debtor objected to the Condominium Associations' multiple claims for trespass, alleging numerous reasons for its objection, not all of which were addressed or appropriate for summary judgment consideration. Debtor has not been heard on most of its defenses to the Claims. For example, Debtor asserted that the Condominium Associations' trespass claims are barred by the doctrines of estoppel and laches, neither of which was raised nor addressed in the summary judgment proceedings. (App. Rec. #26, p. 1.)

Implicit in Debtors objections to the Claims is that it had a legal right to be on the property. In several instances, the Condominium Associations have stated that they had no knowledge of Debtor or its lease, assertions that are inaccurate. (App. Br. 8, 12-13.)

During oral argument on Debtor's Motion for Summary Judgment, the Condominium Associations made similar assertions. In rebuttal, Debtor's counsel referred the court to several

---

> forth all of its evidence on the essential elements of the critical claim or defense. "Notice" in this context means that the losing party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward. Doubts on this score should be resolved in the loser's favor; "great care must be exercised to assure that the [unsuccessful party] has had an adequate opportunity to show that there is a genuine issue and that his opponent is not entitled to judgment as a matter of law." . . . It is only after these preconditions have been met that the court can proceed to ascertain fairly whether a genuine issue of material fact does or does not exist.

*Jardines Bacata, Ltd. v. Diaz-Marquez*, 878 F.2d 1555, 1561 (1st Cir. 1989) (citations omitted)

> .* * * "It is [clear] that district courts have the power to grant summary judgment sua sponte." * * * Two conditions, however, circumscribe the district court's exercise of this power: first, discovery must be "sufficiently advanced that the parties have enjoyed a reasonable opportunity to glean the material facts;" second, the district court must "give the targeted party appropriate notice and a chance to present its evidence on the essential elements of the claim or defense."
>
> * * *
>
> . . . however, the district court never "gave the [cross-Appellants] a meaningful opportunity to cull the best evidence supporting [their] positions, and to present that evidence, together with developed legal argumentation, in opposition to the entry of summary judgment" with respect PIN, Phillips, and Pardilla. . . . On the contrary, the district court's sua sponte ruling took these parties by surprise; only Marcello had moved for summary judgment and neither Schiavi nor the Palmer Defendants filed defamation claims against Marcello. . . . .

*Penobscot Indian Nation v Key Bank*, 112 F.3d 538, 562 (1st Cir. 1997) (citations omitted)

documents authored by the Condominium Associations' representatives. As argued by the Debtor, those documents, written in 1997 and 2003, contain references to Debtor by name and include objections to Debtor's municipal licensing applications to expand its entertainment license. The Condominium Associations are playing fast and loose with the facts to yet again claim ignorance of Debtor or its lease. Moreover, these documents would be offered at trial to show that the owners consented or acquiesced to Debtor's presence on the Reserved Area. Such consent would bar their trespass claims. However, Debtor has not been heard on the owners' consent or acquiescence. Discovery on these defenses was stayed pending the Bankruptcy Court's ruling on the Debtor's Motion for Summary Judgment. (Rec. App. #1, Dkts. #448 and #471.) No depositions have been taken. Thus, it was error for the Bankruptcy Court to preclude Debtor from presenting evidence on its other defenses to the trespass claims. [38]

Additionally, holding that Debtor and IDC Properties were trespassers could have far-reaching consequences and could further complicate an already complicated dispute. Possession, consent, acquiescence and other issues concerning Debtor and IDC Properties are being litigated now in the state court. Judge Votolato earlier abstained from considering these same issues now pending in state court where he agreed they should be litigated. (Rec. App. #21.) The record in the Bankruptcy Court is less than "procedurally correct." Certainly the trespass issues were not completely ventilated at hearing or in briefs. At a minimum, this Court should ensure full consideration at the federal level of the trespass issues, including the defenses Debtor raised.

[38] *Jardines Bacata, Ltd.*, 878 F.2d , at 1561

### C. *Neither IDC Properties, as a co-owner, nor Debtor to whom IDC Properties had given a possessory right can be trespassers.*

In *America I*, the Rhode Island Supreme Court found that the Reserved Area is a common area because IDC Properties was too late in implementing its development rights on the property. Consequently, all the unit owners, including IDC Properties, were "'tenants in common in proportion to their respective undivided interests'" in the property. *America I* at 132-133, quoting *DiBiase Corp. v. Jacobowitz*, 682 N.E.2d 1382, 1385 (Mass. App. Ct. 1997); see id. 844 A.2d at 133 n.22 ("By individual unit owners we include . . . IDC in its capacity as owner of several sub-condominiums"). (Rec. App. #20, Ex. A.) Proceedings continue in State court, and Debtor and IDC Properties reserve all of their rights. Nonetheless, IDC Properties, both as successor declarant and then as a unit owner, was a co-owner of the Reserved Area and rightfully invited Debtor onto the property.

There is no dispute that IDC Properties, at least as a co-owner of the Reserved Area under *America I*, leased the Reserved Area and Regatta Club to Debtor. Debtor took possession of the property with the consent of IDC Properties and paid monthly rent totaling $1.1 million to IDC Properties. Under Rhode Island law, a tenant in common can assign his or her interest in the common property to third parties without the consent of his or her cotenants. *See Babcock v. Wells*, 25 R.I. 23, 24, 54 A. 596, 596-97 (R.I. 1903) (affirming cotenant's assignment of her share in land to a mortgagee to secure a loan); *Horgan v. Bickerton*, 17 R.I. 483, 485, 23 A. 23, 23 (R.I. 1891) (holding that a cotenant can convey his share of the property without prejudicing the rights of his cotenants). Hence, when Debtor leased the property from IDC Properties, Debtor assumed the rights and privileges of a cotenant and, therefore, was not a trespasser.

> [W]here a lease is executed by one tenant in common of the entire estate for a term of years, and such lease is repudiated by the cotenants, the lessee in the lease is held to be not a trespasser but a tenant by sufferance of the estate occupied under such lease. [Citations omitted.] In other words, the lessee of one tenant in common stands in the shoes of his lessor[.]

*Kresha v. Kresha*, 371 N.W.2d 280, 281 (Neb. 1985) (quoting *Jackson v. O'Rorke*, 98 N.W. 1068, 1070 (Neb. 1904)) (emphasis added).

Here, Debtor, as lessee or as an invitee, stepped into the shoes of the cotenant lessor and owner, IDC Properties. Consequently, the Condominium Associations' sole remedy, if any, was limited to an action for co-possession:

> It is well settled that each tenant in common of real property may use, benefit and possess the entire property subject only to the equal rights of cotenants. [Citations omitted.] Thus, a cotenant may lawfully lease his own interest in the common property to another without the consent of the other tenant and without his joining in the lease. The nonjoining cotenant is not bound by this lease of the common property to third persons. [Citations omitted.] The lessee "steps into the shoes" of the leasing cotenant and becomes a tenant in common with the other owners for the duration of the lease. [Citations omitted.] A nonjoining tenant may not demand exclusive possession as against the lessee, but may only demand to be let into copossession.

*Carr v. Deking* 765 P.2d 40, 43 (Wash. Ct. App. 1988), *review denied* 112 Wash.2d 1019 (Wash. 1989) (emphasis added). *See also Swartzbaugh v. Sampson*, 54 P.2d 73, 79 (Cal. Ct. App. 1936)

It is also well-settled that out-of-possession cotenants may not gain a windfall from another cotenant's investment and labor on the common property while they were out of possession. *See Moore v. Blount*, 160 So. 319, 323 (La. Ct. App. 1935) (holding that cotenant "cannot be charged for the use of the building he erected at his own expense, even though the lot on which it stands is in part owned by plaintiff."); *Broom v. Pearson*, 200 S.W. 191, 193 (Tex. App. 1917) (affirming holding that cotenant "should not have been charged with rent of the land

in this case until a demand for possession was made, and then not upon their improvements." (Emphasis added.).

Here, the Eviction Proceedings were not initiated until June 17, 2005, and even then not against Debtor. (Rec. App. #36.) The Rhode Island Supreme Court likewise held that the three sub-condominium associations should not reap the profits of the work and investment of their cotenant IDC Properties when it ruled that an accounting by IDC Properties "does not include any profits that the defendants may have earned from its operation of the Newport Regatta Club." *America I*, 844 A.2d at 135 n.24. (Rec. App. #20, Ex. A.)

The Condominium Associations cannot make a claim for rent because Debtor already paid rent to their cotenant IDC Properties:

> Since one cotenant may explicitly rent out his mere undivided interest in the premises and the effect thereof is simply to render the lessee, for the time being, a cotenant of the other owners * * *, it is apparent that the latter have no interest in rents paid on such a lease whether or not they permitted the lessee to enjoy sole occupancy.

W.W. Allen, Annotation, *Accountability of Cotenants For Rents and Profits or Use and Occupation*, 51 A.L.R.2d 388, 407 (1957). *See also Smith v. Hart*, 2005 R.I. Super. LEXIS 34 (Feb. 7, 2005) (one who has consent or privilege and enters onto another's property is not a trespasser). Consequently, in accordance with the law of cotenancy, there is no basis for the Condominium Associations' trespass claims and no basis for an accounting against Debtor who has already paid rent to cotenant IDC Properties for the use of the property. The only remedy available to the other unit owners, as cotenants to the subject property, was to be let into possession so that all the cotenants, or their assignees, might enjoy their share.

The Bankruptcy Court erred in declaring Debtor a trespasser because Debtor was given a right to be on the property by virtue of IDC Properties' consent as co-owner and actual possessor

### *D. The Bankruptcy Court Erred In Holding That Debtor Had To Show That It Had Exclusive Possession Of The Reserved Area.*

The Condominium Associations had the burden of showing that they had possession of the property, which they did not and could not do. From 1988, before any condominium units were ever sold, and continuously thereafter through April 8, 2005, either IDC, Inc., as the condominium declarant, or IDC Properties,[39] as the successor declarant, or Debtor, as a lessee or occupant with consent, had actual possession of the Reserved Area. Therefore, IDC Properties had continuous constructive and actual possession of the Reserved Area at all relevant times. Even as it sold sub-condominium units to individual owners, no one else was in actual possession of the Reserved Area. However, IDC Properties, and then Debtor, had actual possession, which remained undisturbed until Debtor departed the Regatta Club in November 2005.

Neither the non-IDC owners nor the Condominium Associations were ever "in possession" of the Reserved Area either before or during Debtor's occupancy of the Regatta Club. Because the gist of a trespass action is wrongful interference with the rights of one who is in possession of land, by definition, Debtor cannot be trespasser.

To establish trespass, the Condominium Associations must demonstrate that they had either actual or constructive possession of the Reserved Area when Debtor was on the property. The Bankruptcy Court erroneously held that Debtor had to show that it had exclusive possession of the property. That is not Debtor's burden. The person claiming trespass must show that it has actual or constructive possession of the property at the time of the alleged trespass. The Condominium Associations never had either actual or constructive possession of the Reserved

[39] Because the same shareholder owns both entities and because there has been no challenge that IDC, Inc. and IDC Properties were the consecutive declarants during this period, references to IDC Properties include IDC, Inc. for convenience.

Area during the relevant period. Therefore, they never had a possessory right that the law of trespass protects. Thus, Debtor was not a trespasser.

### 1. The Condominium Associations never had possession of the Reserved Area during the relevant period

The tort of trespass is intended to protect landowners from invasions and interferences with their exclusive possession of real property. 75 Am. Jur. 2d Trespass § 36. It is well-settled, blackletter law that a plaintiff must have had possession of the property at the time the alleged injury occurred in order to maintain an action for trespass. *See Id.* § 37 ("In order to maintain an action of trespass the plaintiff must have had actual or constructive possession of the real property in question at the time when the alleged injury occurred."); *Sayles v. Mitchell*, 47 A. 320 (R.I. 1900) ("The action being trespass *quare clausum*, the only issues were the possession of the plaintiff and the acts of trespass by the defendant."); *Carpenter v. Logee*, 53 A. 288 (R.I. 1902) ("Under the general issue the plaintiff is required only to prove possession at the time of the trespass."); *Wood v. Essex*, 38 R.I. 21, 94 A. 666, 667 (R.I. 1915) ("The acts of trespass were admitted by the defendants and the only issue left was the plaintiff's possession"); *Daniels v. Coleman*, 169 S.E.2d 593, 598 (S.C. 1969) ("The gist of an action for trespass on realty is the injury to the possessory right…."); *Dean v. Comstock*, 1863 Ill. LEXIS 110, *4 (1863) ("The *gist* of the action is the injury to the possession.").

The Restatement Second of Torts defines possession as follows:

> . . . a person who is in possession of land includes one who (a) is in occupancy of land with intent to control it, or (b) has been but no longer is in occupancy of land with intent to control it, if, after he has ceased his occupancy without abandoning the land, no other person has obtained possession as stated in Clause (a), or (c) has the right as against all persons to immediate occupancy of land, *if no other person is in possession as stated in Clauses (a) and (b)*.

RESTATEMENT (SECOND) OF TORTS, § 157 (emphasis added).

In *Daniel*s, supra, at 598, a husband and wife conveyed a farm to the plaintiff, subject to an agreement that the couple could retain the house on the farm as their residence for the remainder of both of their lives. The plaintiffs sought to recover damages from the defendant for a trespass by a third party to the home occupied by the couple. The court acknowledged that the plaintiff had title to the farm and the residence, but reversed the lower court's decision holding that the plaintiff could not sustain an action in trespass where the couple was in "actual occupancy" of the property. The Court emphasized that "[t]he gist of an action for trespass on realty is the injury to the possessory right…." *Id*. at 598.

"Where no actual occupancy exists, it has been held that by showing title in himself the owner may maintain the action, because the title to premises draws after it possession, and this in our cases has been called constructive possession" *Id.* at 598 (citations omitted); *see also Matthews v. Forrest*, 69 S.E.2d 553, 556 (N.C. 1952) ("When land is not in the actual enjoyment or occupation of anybody, the law declares it to be in the constructive possession of the person whose title gives him the right to assume its immediate actual possession."); *Maryland Coal and Realty Company v. Eckhart*, 337 A.2d 150, 161 (Md. 1975) (". . . if a true owner be in actual possession of part of the whole land to which he has record title, he is in constructive possession of all of the land which is not actually possessed by another…").

The Condominium Associations and the unit owners never occupied the Reserved Area before November 2005 and never had possession under Clauses (a) or (b) of the Restatement definition which the tort of trespass affords protection. Although they allege that they had a right to possession, that is, immediate occupancy, another person (IDC, Inc., then IDC Properties and, finally, Debtor) occupied the land continuously from 1988 to 2005 with the intent to possess and control it. Thus, no one else had or could have had possession under Clause (c). Therefore, the

Condominium Associations and the non-IDC unit owners never had the possession necessary to prove trespass.

**2. The burden of proving "exclusive possession" was on the Condominium Associations, not Debtor.**

The Condominium Associations cannot dispute that they had no actual possession of the Reserved Area at the time of the alleged trespass by Clambakes or at any prior time. At no time prior to June 2005 did the Condominium Associations ever seek to disturb the actual possession any IDC entity had of the Reserved Area. As the Condominium Associations never had actual possession at any time between 1988 and April 8, 2005, they must rely on a theory of constructive possession to prove that they had the possession required for an action in trespass. *Robert's River Rides, Inc. v. Steamboat Dev. Corp.*, 520 N.W.2d 294, 301 (Iowa 1994) ("Even if [plaintiff] possessed a right to exclusive possession of the [property] . . . it still must establish that at the time of the alleged interference it was in either actual or constructive possession of the property.")

The Bankruptcy Court held that "[T]o establish a trespass in Rhode Island it must be shown that: (1) the alleged trespasser intentionally entered onto the owner's property; and (2) the *owner* had rightful, *exclusive* possession of the property." *In re IDC Clambake*s*, Inc.*, *5 (Rec. App. #9.) (emphasis added) (citing *Smith v. Hart*, 2005 R.I. Super. LEXIS 34, (R.I Super. Feb. 7, 2005). In *Smith*, the parties litigated a boundary dispute that included a counterclaim for trespass. The trial court described the elements of a trespass action as follows: "To recover for trespass, a party must show (1) the adverse party intentionally entered onto the owner's property; and (2) plaintiff had rightful possession of such property." *Id*. at 5 (citing *State v. Verrecchia*, 766 A.2d 377 (R.I. 2001) and *Berberian v. Avery*, 205 A.2d 579 (R.I. 1964)). However, these

cases are inapposite. Neither they nor any other case requires that the alleged trespasser, here Debtor, prove that it had exclusive possession to *disprove* that it a trespasser.

It was the Condominium Associations' burden to support their Proofs of Claim with proof that they had "rightful possession", that is actual or constructive. The undisputed facts demonstrated that the Condominium Associations never had possession until November 2005. Debtor is not the party seeking to recover damages for trespass and therefore has no burden to establish its exclusive possession under *Smith* or other Rhode Island authorities. *See Sayles*, 47 A. at 320 ("The action being trespass *quare clausum*, the only issues were the possession of the plaintiff and the acts of trespass by the defendant"). Since it is undisputed that the Condominium Associations never had actual or exclusive possession of the Reserved Area until after Debtor quit the property in November 2005 as the Bankruptcy Court had ordered, the correct application of the Rhode Island standard for an action in trespass requires an analysis of the Condominium Associations' constructive possession of the Reserved Area during the alleged trespass.[40]

### 3. The Condominium Associations failed to establish actual or constructive possession of the Regatta Club at the time of the alleged trespass.

At early common law, actual possession was required to maintain an action for trespass. However, as ownership in land evolved, so too did the rule of possession:

> The rule of constructive possession was first enunciated by the courts of this country during the early days when the country was sparsely settled and when it was impossible for one who owned a large tract of land to inclose it and take actual possession thereof. . . . [B]y occupying a part of the real estate, the law presumed that the occupant was in the actual possession of all of the land in that particular tract for which he held legal title, *provided, however, that no one else occupied the land* . . . .

[40] Three other cited authorities are inapposite. *State v. Verrecchia*, 766 A.2d 377 (R.I. 2001) held that a landlord's unauthorized entry into leased premises constitutes a trespass. *Berberian v. Avery*, 205 A.2d 579 (R.I. 1964) held that insufficient facts were presented to prove that the application of pesticides was a trespass, and *Ferreira v. Strack*, 652 A.2d 965 (R.I. 1995) addressed social host liability for serving alcoholic beverages to an uninvited guest.

*Casey v. Mason*, 59 P. 252, 255 (Okla. 1899) (emphasis added).

In *Polk v. Henderson*, 17 Tenn. 310, 311-12 (Tenn. 1836), plaintiff successfully sued for trespass upon lands that were held adversely by defendant. The Supreme Court of Tennessee reversed the judgment, finding that a charge to the jury, which instructed that "either the possession, or the right to the possession" could sustain an action for trespass, was improper. *Id*. at 312. In so holding, the Court said:

> This is clearly erroneous; the right to possession and the right of entry are synonymous terms, *and authorize the bringing on an action of ejectment, but not an action of trespass* . . . . The court should have charged the jury, that a constructive possession would authorize the maintenance of this action against a casual trespasser where there was no person in adverse possession of the disputed premises. But that action could not be supported under any other circumstances, unless the plaintiff were in actual possession at the time when the injury was committed.

*Id*. at 312.

The Condominium Associations have argued that constructive possession is a right of exclusive possession that is inherently present when a plaintiff has fee title to property. (Rec. App. 19 at 16.) However, "right of possession", exclusive or not, is insufficient to maintain an action for trespass on the facts of this case.

> The constructive possession which the legal title draws to itself is sufficient to enable the owner to maintain an action for trespass where the property is not in the actual possession of anyone or where the person in actual possession is the mere agent or representative of the owner of the legal title. <u>However, legal title does not draw after it possession of real property actually occupied by another, so as to enable the owner to maintain trespass against such a possessor</u>.

75 Am. Jur. 2d Trespass § 44 (emphasis added). In *Daniels*, the Court described the long-standing rule behind its holding as follows:

> Constructive possession is displaced by actual possession. [I]t would be 'a solecism to say that one can have a constructive possession of that which is in the

> actual possession of another.' In this contest between actual and constructive possession the latter has always been made to yield . . . .

*Daniels*, 169 S.E.2d at 599 (quoting *Littleton v. Roberts*, 187 S.E. 349 (S.C. 1936); *see also Robert's River Rides, Inc.*, 520 N.W.2d at 301-302); *Brown v. City of State Center*, 2006 Iowa App. LEXIS 1148, *20-21 (IA App. October 11, 2006).

In *More v. Urbano*, 198 A.2d 211 (Conn. 1964), the plaintiff sued to compel an abutting neighbor to remove a retaining wall from her land and for damages resulting from the alleged trespass. The Supreme Court of Connecticut affirmed a decision in favor of the defendant on the trespass count, stating:

> Since trespass is a possessory action, it is incumbent on the plaintiff to prove possession, actual or constructive, in order to recover. If he relies on constructive possession, as distinguished from actual possession, he must prove, *in addition to his title*, the absence of actual exclusive possession by another. The [lower] court found that the defendant was in actual possession of the triangle.

At 212-13 (citation omitted) (emphasis added). The defendant's occupancy of the parcel and construction of a wall thereon precluded the plaintiff from recovery an action for trespass. *Id*. at 213.

In order to successfully claim possession of the Reserved Area prior to the alleged trespass, and thus maintain an action for trespass which can survive summary judgment, the Condominium Associations

> would have to allege either that [they were] in the actual possession of the land, or set forth such a state of facts as would show that [they] had the constructive possession thereof; and to do this [they] would have to allege that the fee was in [them] <u>and that the land was, in fact, not occupied by anyone else</u>.

*Casey*, 59 P. at 257 (emphasis added); *see also* RESTATEMENT (SECOND) OF TORTS, §157.

Here, there is no dispute that Clambakes occupied the Reserved Area during the time of the alleged trespass or that other IDC entities occupied it from 1988.

The Condominium Associations cannot recover based on a naked assertion of legal title. *See also Jaycox v. E.M. Harris Bld'g Co.*, 754 S.W.2d 931, 933 (Mo. 1988) ("The gist of an action for trespass is violation of possession, not challenge to title.").

During the period beginning in 1998 and ending in 2005, Debtor paid, and GISCA accepted, payment of condominium fees for the Reserved Area. In order to proceed with an action for trespass to the Reserved Area, the Condominium Associations must assert that they had good legal title to the Reserved Area and that the land was unoccupied. The Condominium Associations never disputed that IDC or Clambakes had actual possession of the Reserved Area prior to the alleged trespass. In fact, in light of GISCA's collection of condominium fees,[41] such a dispute would be groundless.

The Condominium Associations failed to establish either actual or constructive possession of the Reserved Area from 1998 through April 8, 2005. Although the Condominium Associations may assert that they were entitled to possession during the period of the alleged trespass, such a naked assertion is never sufficient to maintain an action against a party who occupies and possesses property. *See Casey*, 59 P. at 254. The *Casey* Court summarized this common law trespass requirement, which it demonstrated as "amply supported by the authorities," as follows:

> We think that one is not entitled to maintain an action for trespass unless he is in the actual possession of the realty, except where he holds the fee, and the injury is to the land itself, or where plaintiff

[41] As they have often done, the Condominium Associations misdirect the reader with incomplete statements. It is correct that IDC Properties paid condominium fees to a condominium association when it was "IDC-controlled". (Condo Brief, at 2.) However, it continued to pay the fees monthly and the condominium association continued to accept those long after the association became controlled by the unit owners. In light of this course of dealing, a trespass claim cannot lie.

> owns the fee, and further shows by his petition that the land is unoccupied, and he has constructive possession thereof.

*Id.* at 254 (emphasis added). The Condominium Associations failed to establish occupancy and actual possession of the Reserved Area or constructive possession of the Reserved Area during the period of the alleged trespass.

***E. Debtor was on the Reserved Area with the consent or acquiescence of the owners and, therefore, could not be a trespasser.***

It goes without saying that if the owner of real estate consents or acquiesces to another being on the property he can not thereafter claim that there was a trespass. In this case, that is exactly what happened.

As noted above, during oral argument in the Bankruptcy Court, Debtor referred to documents from representatives of the condominium owners establishing that they were aware of Debtor's existence as early as 1997. In 1999, the three sub-condominium associations filed the complaint that resulted in the *America I* and *America II* decisions. In the complaint, plaintiffs stated that IDC was the "owner" of the Reserved Area. In 2003, representatives of the condominium unit owners objected to an expansion of Debtors' entertainment license. From 1998 to early 2005, Debtor openly operated the Regatta Club without question, challenge or dispute by any of the more than 150 property owners. During that same period of time, IDC Properties made monthly condominium fee payments to GISCA. It was not until June 2005 that anyone sought to wrest possession of the Reserved Area from Debtor. The issues concerning consent, acquiescence and the Debtor's other defenses to trespass were the subject of ongoing

discovery, and were not ripe for summary judgment. In fact, the Debtor filed a Motion to Stay Discovery (Rec. App. #1, Dkt. #448), which was granted by Order dated October 31, 2006.[42]

On this inadequately developed record, the Bankruptcy Court erred in deciding *sua sponte* that Debtor (or even IDC Properties) was a trespasser. At a minimum, Debtor should have the opportunity to present evidence of consent, acquiescence and its other defenses to a fact-finder prior to a ruling on the existence of trespass.

## CONCLUSION

Debtor respectfully requests that the Court affirm the Bankruptcy Court's decision to disallow the Condominium Associations' claims and either reverse or strike its determination that Debtor was a trespasser. Alternatively, the Court should remand this case to the Bankruptcy Court for further proceedings on all issues raised by Debtor in defense of the Proofs of Claim.

Respectfully submitted,

**IDC CLAMBAKES, INC.**

By its attorneys,
WINOGRAD, SHINE & ZACKS, P.C.

/s/ S. Michael Levin
S. Michael Levin, Esq. (#3796)
Winograd, Shine, and Zacks, P.C.
123 Dyer Street
Providence, RI 02903
Tel. 401-273-8300
Fax 401-272-5728
E-mail: mlevin@wszlaw.com

---

[42] The Record on Appeal has the docket entries only through October 20, 2006. However, the Court has the right to take judicial notice of the entire docket. *See generally, In re Indian Palms Associates, LTD,* 61 F.3d 197 (3rd Cir. 1995.)

LINOWES AND BLOCHER LLP

/s/ Paul Sweeney
Paul Sweeney (Pro Hac Vice)
7200 Wisconsin Avenue, Suite 800
Bethesda, Maryland 20814
Tel: (301) 961-5119
Fax: (301) 654-2801
E-mail: psweeney@linowes-law.com

Dated: May 21, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of May, 2007, I caused a copy of the foregoing to be served via electronic filing:

William R. Grimm, Esq.
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903

Charles D. Blackman, Esq.
155 South Main Street
Suite 101
Providence, RI 02903

/s/ S. Michael Levin
S. Michael Levin