# EXHIBIT 7

UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

In Re

IDC CLAMBAKES, INC.,

Debtor.

Bankruptcy Case No. 05-12267

* * * * * * * * * * * * * * * * *

IDC CLAMBAKES, INC.,

Plaintiff,

v.

GOAT ISLAND SOUTH CONDOMINIUM ASSOCIATION, INC., AMERICAN ASSOCIATION, INC., CAPELLA SOUTH CONDOMINIUM ASSOCIATION, INC., HARBOR HOUSES CONDOMINIUM ASSOCIATION, INC.

Defendants.

AP No. 05-1040(ANV)

Providence, Rhode Island
September 27, 2006

* * * * * * * * * * * * * * * * *

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE ARTHUR N. VOTOLATO
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Plaintiff:

S. MICHAEL LEVIN, ESQ.
Edwards & Angell
2800 Financial Plaza
Providence, RI 02903

For the Defendant:

WILLIAM R. GRIMM, ESQ.
Hinckley Allen & Snyder
1500 Fleet Center
Providence, RI 02903

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

Fiore Transcription Service, Inc.
67 Elaine Drive
Shelton, Connecticut 06484 (203)929-9992

APPEARANCES: (Cont'd.)

| | |
|---|---|
| For the Debtor: | PAUL J. SWEENEY, ESQ.<br>Linowes and Blocher, LLP<br>7200 Wisconsin Avenue<br>Suite 800<br>Bethesda, MD 20814 |
| | ALLAN SHINE, ESQ.<br>Winograd Shine and Zacks, PC<br>123 Dyer Street<br>Providence, RI 02903 |
| For the Trustee: | JOSEPH M. DiORIO, ESQ.<br>Law Office of Joseph M. DiOrio, Inc.<br>10 Dorrance Street, Suite 1200<br>Providence, RI 02903 |
| For the Accountants: | PETER J. FURNESS, ESQ.<br>Brennan Recupero Cascione et al.<br>362 Broadway<br>Providence, RI 02909 |
| Court Recorder: | JOSEPH WILKICKI |

(Proceedings commenced at 11:12 a.m.)

THE COURT: Okay. In the matter of IDC Clambakes? Sure.

MR. LEVIN: Good morning, Your Honor. Michael Levin on behalf of the debtor, IDC Clambakes. I apologize to the Court earlier for there being some confusion.

As I indicated before, with respect to the claim of the accountants, Verdolino & Lowey, for fees and compensation, the parties, as the record would indicate, have spent a great deal of time or even, as the record might not indicate, the parties have spent a great deal of time and energy and spent a lot of hard work trying to reach a settlement in what is a very, very sensitive and difficult matter, as I'm sure the Court can understand.

With the very helpful assistance of Mr. DiOrio as the trustee and the hard work of Mr. Furness and his clients and our clients, we have reached an agreement on a settlement. The parties have signed a stipulation regarding the fees. There is going to be a reduction in the fee amount request.

A settlement agreement is in the process of being signed by the parties. It's just a matter of logistics, of getting it around to the people that need to sign it -- review it and sign it.

I have with me today a stipulation that has been

signed by Mr. Furness, myself and Mr. DiOrio as the trustee and is the disbursing agent and we will submit to the Court the settlement agreement.

I have an unsigned copy with me and can represent and can represent that that is the document that is being signed.

Our client has signed it already and it's being sent to the accountants for their signature, and request that the Court approve the stipulation, and this matter, I think for -- except for the signing of the settlement agreement itself, I submit to the Court that you may remove this item from your check list.

THE COURT: Okay. And this is a matter that will come up for hearing again?

MR. LEVIN: I don't believe it should, Your Honor. I think the stipulation will resolve it and the only thing to be submitted is maybe the settlement agreement, but I can hand the stipulation to --

THE COURT: Okay. Mr. Furness?

MR. FURNESS: Yes. Good morning, Your Honor. I just wanted to take a moment to apologize. It was my misunderstanding that this was taken off the calendar. That's why I didn't come and I took another hearing and I apologize for the misunderstanding I had with Mr. Levin.

I just wanted to reiterate what Mr. Levin said. As

you probably recall, this went to mediation and there's been a substantial amount of time invested by all parties in good faith to put together this agreement and as Mr. Levin said, the stipulation came over yesterday.

I sent it out to Verdolino & Lowey by Federal Express last night. They've seen the settlement agreement. They agreed to its terms. It's just a matter of getting them to sign it this morning when the Fed Ex package gets received and return it to me, but the terms have been negotiated ad nauseam and they are in agreement with the settlement agreement that's present.

I have signed the stipulation on their behalf and I can represent to the Court that they will sign the settlement agreement this morning and return it back to me.

THE COURT: Okay. Now, Mr. DiOrio, you're --

MR. DiORIO: Your Honor, I have assented to the settlement and I would thank the attorneys involved and the respective clients along with Mr. Poor(ph), who was the mediator.

It took a while, but it got done and hopefully this will be the last matter. Then I can close the Chapter 11 estate and then just simply be a disbursing agent. So I recommend this settlement, Your Honor.

THE COURT: Okay. Anybody else who'd like to be heard?

MR. LEVIN: No, Your Honor. I just point out that this disposes of one of the larger matters. The only items that do remain with respect to this bankruptcy are the claim of the condo associations, and which Your Honor's well aware of and will be hearing a motion for summary judgment today.

There's a tax claim. That was a small item that's being negotiated at this time. It's my understanding that you're not responsible for that and finally, there's an adversary proceeding involving some personal property, but that is not something that the trustee has to worry about. There's escrow funds for --

THE COURT: Okay. Then I assume there's no other party who needs or wants to be heard on the Verdolino & Lowey fee application, which is approved.

MR. FURNESS: Thank you, Judge.

MR. DiORIO: Thank you.

MR. LEVIN: Thank you, Your Honor.

MR. SHINE: Good morning, Your Honor. Allan Shine for the debtor, along with Michael Levin for the debtor.

Your Honor, the matter before the Court today, the motion for summary judgment, with the Court's permission, we'd like to have it presented and argued by Paul Sweeney, who I'd like to re-introduce to the Court, member of the D.C., Maryland and Virginia Bar, who's been admitted pro hoc previously and appeared at an earlier argument and with the

Court's permission, we'd like to proceed with him supporting the motion. Mr. Sweeney.

MR. SWEENEY: Good morning.

THE COURT: Good morning, Mr. Sweeney. No problems? Want any water?

MR. SWEENEY: No. No, Your Honor.

THE COURT: Welcome.

MR. SWEENEY: Thank you. May it please the Court, Paul Sweeney on behalf of IDC Clambakes.

As the Court can tell, this case is wrapping up rather quickly, and that is what Clambakes desires to have done. This remaining claim objection, we think, does not need to drag on and consequently, we filed our motion for summary judgment alleging some fairly straightforward concepts of real property law, which we believe absolutely bars recovery by the condominium associations.

I'm not going to hit every aspect of our memorandum, and we tried to get our reply memorandum over to the Court as quickly as possible yesterday afternoon to give you the benefit of that as well. Hopefully, the Court has received that.

The argument today, I think, will simply hit the high points and certainly address any questions that the Court may have as to why this matter, as a matter of summary judgment, should be disposed of.

Your Honor, trespass law is very straightforward on this point. It requires possession. The Court has had the benefit of all of the other hearings with respect to the very beginning of the case, where the Court heard questions with respect to the application of the stay to Clambakes and then also preliminary injunction proceedings and, of course, the plan of reorganization, which resulted in a 100 percent payout, confirmed within less than one year.

This debtor is highly motivated to get this behind them and to get this claim behind them as well. Now, the Court is also familiar with the fact that the Supreme Court has addressed various issues related to Goat Island. And one of the issues that was resolved related to what relief the condominium associations could get -- the relief.

And the issue decided by the Supreme Court was title rests with the condominium associations. In addition, they clarified with respect to monetary relief. In footnote 24 that I've quoted that they will not get profits from the operation of the Newport Regatta Club.

The Court is probably familiar with the fact that there's several IDC entities. You've got IDC, Inc., which manages the operations. You've got IDC Properties, which is an owner. It owns two units in Capella, the condominium association buildings. And it owns one of the Harbor houses. So even under the most restrictive readings, it is a co-owner

of the common elements on Goat Island.

The fundamental principle that is set forth in the restatement and has been adopted by the courts in Rhode Island is you can't trespass on your own property. Trespass simply doesn't lie here. More importantly, trespass is a violation -- an entry upon the land in the possession of another -- and that never happened.

The trespass claim fails because they cannot prove, and the facts are not disputed. Everyone knows that from the beginning and during the relevant period of time, IDC Properties possessed the reserved area and the Regatta Club. It actually possessed it. Everybody knows that and nobody disputes that.

Where the argument gets a little fuzzier, or at least the condominium association hopes to make it more fuzzy, is what about constructive possession?

They provide a citation to the Dilbert decision out of Massachusetts. And they say we had legal possession as a result of our title.

That doesn't cut it, Your Honor, because when you look at the entire quote rather than the portion that was provided by the condominium association, you see constructive possession doesn't work because constructive possession requires that no one else be in possession of the property. So that fails.

You have IDC Properties in possession from the very beginning. In 1997, 1998, they enter into a lease and begin building the Regatta Club and that possession was seamless. IDC Properties possessed it.

Clambakes, as the tenant, took up that possession. With that possession, those possessory rights absolutely destroy any claim of trespass. It simply cannot stand as a matter of law.

So there's no real material disputes of fact. There are some distractions. There are, perhaps, some straw man arguments and I give credit to opposing counsel, because the results attained in the Supreme Court and in state court were remarkable. But they don't get them where they are today.

They got one recovery. The Supreme Court decided you get the one recovery. They can't come in here and do an end around. They can't say, "Well, the Supreme Court said we can't get profits from the operation by the defendants," and the defendants in the Supreme Court were IDC Properties, IDC Inc. and Tom Roos. Clambakes wasn't a party there.

And, again, that doesn't matter, either. As my brief sets forth, the doctrine of defensive non-mutual collateral estoppel burdens the condominium associations. They are burdened by the Supreme Court's decision. They can't do an end-around and say, "Well, we can't get to IDC

Properties, so we're going to go against their tenant." That doesn't work.

Are we to expect that next they're going to go after the brides who were there, pursuant to each of the events that were held at the Regatta Club?

The Supreme Court didn't contemplate that and I think also in the quotations that I've set forth both in front of Your Honor, but also in State Court, that that expectation simply wasn't something that the condominium associations ever really expected.

You look at their proof of claim and it starts out with the words, "[t]o the extent not precluded by the Supreme Court decision. . ." Your Honor, they're precluded. They can't prove as a matter of law that they have a trespass claim.

Consequently, the case is very ripe for entry of a summary judgment so that this matter -- the whole case -- can be concluded.

I rely on my briefs and certainly if the Court has any questions or on rebuttal, I can certainly address any further points. Thank you.

THE COURT: Okay. Not right now. Thanks.

MR. GRIMM: Good morning, Your Honor. William Grimm for the condo associations.

There are at least five fundamental fallacies with

the debtor's argument on summary judgment. In my view, at least, the argument is based on a studied misinterpretation of the Rhode Island Supreme Court decision, a studied misinterpretation of the Condominium Act, and a studied misinterpretation of the law of trespass.

THE COURT: What do you mean by a studied misinterpretation?

MR. GRIMM: They are ignoring the relevant provisions of trespass at statute and law. They are ignoring relevant provisions of the Condominium Act and they are ignoring the holding of the Rhode Island Supreme Court, that is -- should not be disputed by anyone.

And there's one thing I agree with the debtor on. The Rhode Island Supreme Court decision decides the liability issue in this case. The Rhode Island Supreme Court decision made both IDC Properties, Inc. and its so-called tenant, the Clambake, trespassers because the Rhode Island Supreme Court decision held that the reserved area, which I'm sure Your Honor is familiar with, is the area on which this banquet facility was built -- was, from 1988 forward, when the condominium was first established, common property owned by all the unit owners of the condominium.

It was never owned by IDC Properties, according to the Supreme Court. All IDC Properties had was a development right which extended up through December 31st of 1994 and it

expired in December 31st, 1994.

From 1988 through 1994, through the present, the only owners of this reserved area were the unit owners who held it as common area.

So for IDC to come in and say no one disputes its rights of possession -- IDC Properties -- that's incorrect. The Supreme Court has already found that it had no right of possession. All it had was a development right that expired, unexercised, December 31st of 1994.

IDC Properties never had the right to possess the reserved area. It was always owned by the unit owners-in-common from 1988 on --

THE COURT: Are you using these terms -- in fact, is everybody using these items -- is right to possession synonymous with ownership?

MR. GRIMM: Not necessarily. Not necessarily. For example, if you were an owner of property, you have the right to possess it. Now, you could convey that right to possess to another.

For example, I'm an owner of an apartment and I can pay a lease to my tenant. I, as the owner of the property, after I have conveyed a lease to my tenant, no longer have a right to possess. In fact, my tenant has that right to possess.

THE COURT: Right.

MR. GRIMM: Therefore, any claim for trespass could not be made by me as owner. It would have to be made by the tenant. In fact, the tenant could claim that I, as the owner -- landlord -- was trespassing on his property, because I had given him the possessory interest.

Another example, Your Honor, would be in title states where --

THE COURT: Well, your example paints with a broad brush. Landlords or lessors have some rights probably implicit in every lease. Reasonable rights of possession or inspection -- whatever -- so I don't think a lease creates exclusive possessory rights in the tenant --

MR. GRIMM: It generally does, but --

THE COURT: Oh, I don't know.

MR. GRIMM: Well, it depends on the lease, Your Honor. You're right.

THE COURT: Right. Right.

MR. GRIMM: You're right. I use that as a simple example.

There's another example some states have. Mortgage deeds are actually title instruments so that the owner, in getting his security, actually conveys title to the bank. In those circumstance, the mortgage deed, the bank although it's technically the owner of the property, does not have a right to possession. That's not part of the mortgage deed. That

stays with the owner of the property.

And so in that circumstance, the owner -- not the bank -- would be able to sue for trespass.

The critical element of a trespass case is the plaintiff has to have the right of possession. The right of possession. Here, the Supreme Court has determined that from 1988 on when the condo was established, the unit owners of the condos and their association owned the property and had the right to possess it.

And there is no evidence in the record -- and none exists -- that any association of a condominium owners conveyed any rights to possess the property to IDC Properties or to the debtor, Clambake. Never happened. They don't allege that it happened.

So we have a circumstance here where the only person who had a right to possess -- a lawful right to possess -- was the condominium unit owners as common area represented by their association.

The Supreme Court has decided that point. They decided that point in 2004 and then again in 2005. In the quotation from the Supreme Court decision that Clambakes used in its initial memorandum was wrong and corrected by the Supreme Court in the later decision -- an issue they said that once the development rights had expired, title vested in condo unit owners in the common area and in the 2005

decision, they corrected that language to say quite explicitly that title had always existed in the unit owners from 1988 on and they changed that language.

It's at page 9 of the rescript decision where they said with the benefit of hindsight, we consider our statement in American Condominium One that title to the disputed parcels vested in the individual unit owners upon expiration of the defendant's development rights.

These master units, so-called, always were common elements subject to the exercise of said development rights and title rested with the unit owners in common ownership from the creation of the condominium.

They can't dispute that. And with title and absent some conveyance to someone else of the right to possession by a person in title, the owner of the property has a right to possess it and has standing to assert a trespass claim.

And that's what the law they've cited says. That's why there's discussion of constructive possession in this very restatement that they cite. And their argument is, well IDC Properties was in possession of the property and therefore, the unit owners weren't.

Well, that's no more than saying that a trespasser has come into my house and now I'm no longer in possession of my house, even though I gave him no permission to be there at all.

This is no different a situation than if you own land on Block Island and I went on your land without your permission and constructed a house and then leased the house to Mr. Sweeney.

You never gave anybody the right to possession of your lot on Block Island. You certainly didn't give it to me. I had no right to be there. I had no right to construct a house. You never gave that right to Mr. Sweeney. You retained, as part of the indicia of your ownership, the right to possess your land.

And I'm a trespasser for going on your property, for building a house, and he's a trespasser on your property. He's violating your rights to use and possess your property.

And that is basic trespass law. An owner of property does not have to be in actual possession of his property to maintain an action for trespass. An owner is -- loses the right to sue a trespass only where that owner has given or conveyed the right to possess his property to someone else. And there is no evidence that that occurred here and in fact, it did not occur here.

So we have a situation where the Supreme Court has already held that IDC Properties had no right to possess the property. They've already held that title with its right to possess the property has existed in the unit owners since 1988 and the fact that a trespasser -- IDC Properties -- went

on the property and built a building and then leased it to a related company doesn't change the status of the unit owners as the owners with the right of possession.

And as long as you have the right of possession and have not conveyed it away to someone else, you under the law of trespass, have standing to assert a trespass claim.

The other very curious argument that they make ignores the entire construct -- statutory construct -- of the condominium form of ownership.

I think they agree, although I'm not certain of this, that condominium form of ownership is different from title and fee. It's different from joint tenancy. It's different from tenants-in-common. It is a unique statutory form of ownership. It's created by statute. It's governed by statute.

Their current position is, well, IDC Properties owned a couple condo units within the association. And we don't dispute that, Your Honor. They were owners of three or four or five units. I'm not sure of the exact number. And therefore, IDC was an owner of the common areas in common with all the other unit owners. And therefore, it had the right to lease the property to Clambakes, the debtor.

Well, that analysis is fine up to the point where they claim that a unit owner has the right to lease common areas because the condominium statute is clear on this point.

Section 3436.1-2.07, section (e), says, "[t]he common elements are not subject to partition and any purported conveyance," -- a lease is a conveyance -- "encumbrance, judicial sale or other voluntary or involuntary transfer of an undivided interest in the common elements made without the unit to which that interest is allocated, is void."

So what that says is, in the Act, that a unit owner can't convey or lease his interest in the common elements unless he also conveys at the same time his interest in the condominium unit because they have to go together. And any attempt to separate the ownership of the condo unit from a conveyance of the condo elements is void.

So under the statute -- the condominium statute -- there is no right in unit owners to lease common area. It's prohibited. Such a transaction is void under the statute.

There's one other provision of the Condo Act which also describes in detail how this is supposed to be treated and it's understandable it works this way because you don't want 400 unit owners leasing the common elements to their friends and related companies. That would be absolute chaos.

Section 3436.1-3.1(2) provides that portions of the common elements may be conveyed or subjected to a security interest or mortgage by the association -- by the association, my client -- if persons entitled to cast at least 80 percent of the votes in the association support the

transaction to vote for it.

So the Condominium Act itself has a prohibition against their argument and it also has a procedure whereby the association, with 80 percent unit owner approval, can lease the property.

So for them to come in here and argue that Properties owns a condo and Properties leased the reserved area, common area, element to Clambakes and therefore they are rightful possessors is just contrary to the condominium form of ownership and it's contrary to the Condominium Act.

Condominium owners are not tenants-in-common of the common area elements. It's that simple. They have a different form of ownership in the common areas. It's a form of ownership controlled by the condominium statute and it's a form of ownership which has restrictions to it in terms of leasing conveying areas of the common element.

You can't do it by yourself as a unit owner. You can only do it through an association with 80 percent votes of the unit owners -- all the unit owners.

And there's no dispute of fact that that never occurred. IDC Properties never took a vote of the unit owners to lease the property to its related company, Clambake.

The other studied fallacy in the argument that they've brought is that footnote 24 in the Supreme Court's

decision precludes this claim in some way.

Now, I think it's important for the Court to actually look closely at footnote 24 because it's that language that is controlling here. Your Honor, do you have a copy of that decision? I have an extra one.

THE COURT: Thanks.

MR. GRIMM: On the rescript -- it's on page 27 to 38. First, everyone's in agreement that Clambakes was not a party to the lawsuit which resulted in these Supreme Court decisions.

Everybody's also in agreement that there was no claim adjudicated for Clambakes' use and occupancy in the Supreme Court decision or in the lower court below.

And everybody also should be in agreement that the Supreme Court, after determining the title issue, remanded the case to the Superior Court for a determination of the association's remaining claims for damages against IDC Properties, IDC Inc. and Mr. Thomas Roos and it also remanded the case for the accounting defined in footnote 24.

And as the Court said in footnote 24, this accounting is confined to the common expenses paid by the defendants on their master units after the expiration of their development rights on December 31st, 1994.

It does not include any profits that the defendants, meaning IDC Properties, Inc., IDC Inc. and Thomas

Roos, may have earned from its operation of the Newport Regatta Club.

Now, and we've not engaged in a lot of discovery here, but I do know that IDC Properties, Inc. obtained management fees during the course of the operation of the Newport Regatta Club.

I'm not sure exactly what Mr. Roos may have obtained in connection with the -- I can't go after profits of IDC Properties, Inc., IDC Inc. or Thomas Roos in connection with the accounting action that's going to be heard in the Newport County Superior Court at some point.

This footnote says that that accounting is going to be -- I have to pay them back condo fees and I can't ask for their profits. We're not asking for the profits of IDC Properties, Inc. or IDC Inc. or Thomas Roos in these proceedings.

We are asking for the fair use and occupancy value of the trespasser IDC Clambakes for its unlawful trespass on our property from 1988 through the Spring of 2005 when we cut the arrangement with the trustee for the balance of the wedding season in 2005.

This language has nothing to do with IDC Clambakes. It has nothing to do with the rent in use and occupancy claim. It says it does not include -- the accounting does not include any profits that the defendants may have earned

from its operation in the Newport Regatta Club.

I'm bound by that footnote, vis-a-vis, IDC Properties, Inc., IDC Inc. and Mr. Thomas Roos. I cannot seek their profits -- their profits.

But this footnote does not restrict the associations in any other way. None. So there is no collateral estop. There is no claim preclusion.

The issue of use and occupancy fee from Clambakes who was actually trespassing on the property from 1998 to 2005 was not before the Court. It was never adjudicated. And this language doesn't restrict my ability or right to bring such a claim against Clambakes.

See, when it's useful for IDC Properties and Mr. Roos and Clambakes to conflate their existence, they come into the Court, like now, and they pretend, "Oh, we're all the same happy company."

You know, we've got 14 different companies and they're all inter-related and they're all run by the same guy, Mr. Thomas Roos, and to hear IDC Clambakes argue, this footnote prohibits the associations from bringing any damage claims against any of those 14 entities.

Well, hey, they were here in the summer of 2005 and they sat before you and they represented to you that they're a separate entity. They're a separate entity from Properties. They have their own assets. They have their own

liabilities and they should be treated as a separate entity. And you agreed with them.

And we've gone through a bankruptcy proceeding where that separate entity has reorganized under Chapter 11 and now they want to say, "Oh, well, we're really the same as Properties and that this prohibition against seeking the profits of Properties really applies to us as well." That's not what the Supreme Court said.

And what we have to go on is what the Supreme Court says because neither I nor they can tell you exactly what the Supreme Court meant by this. But clearly what they didn't mean, because Clambakes was not before them, that the associations were forbidden to seeking just compensation for the trespass of Clambakes on the property that they had owned since 1988.

THE COURT: You think that the footnote, worded as it is, contains some over -- that it overlooked other things that it might have meant to say? I'm --

MR. GRIMM: Well, I --

THE COURT: And if so, well, what do you do? What does this Court or what does the Supreme Court do about that?

MR. GRIMM: Number one, I wouldn't describe overlooking to the Supreme Court on this case at all because as you know, this was the first time it was before them, but it was before them again on a re-argument and they took the

time to issue another second --

THE COURT: Right.

MR. GRIMM: -- thoughtful opinion on these issues. So I wouldn't say that they overlooked anything.

THE COURT: But is it an artfully drawn comment? You know, given the nature of the case, the nature of the dispute and what it was --

MR. GRIMM: I don't think so because you have to understand what was before them. There was a complaint in the Superior Court which is actually one of the exhibits we gave you in our two lengthy appendix. It's Exhibit 5.

And what was before them -- there was a complaint filed against IDC Properties, Mr. Roos and IDC Inc., challenging their attempts to extend the development rights beyond December 31st, 1994. It was a voting procedure issue primarily and then an interpretation of the Condo Act.

And it also sought to declare that the extension of those rights was illegal and that title to the reserved area was in the unit owners as the Condo Act said. And it was heard on motion for summary judgment before Judge Famiglietti in the Newport County Superior Court, which she granted in favor of the condominium associations.

In the complaint were also counts for slander of title and for damages including punitive damages and attorneys' fees arising out of the defendant's malicious,

willful and wrongful violation of the Condominium Act.

And those were not decided on Judge Famiglietti's motion for summary judgment and those issues were not before the Supreme Court. It was only the declaratory judgment issue that was before them.

There was no claim in the case ever about use and occupancy for the period 1988 through well, whatever the point of the upward decision was. But it wasn't there. So it wasn't ever adjudicated, either at the Providence, Kent, Newport County Superior Court or at the Supreme Court level.

THE COURT: On that subject, you want to address the issue on the seclusion issue to items that [quote] "or should have been raised, argued and decided" during the general litigation?

MR. GRIMM: Well, first of all, the underlying case to these two Supreme Court decisions is back down in Newport County Superior Court and it's going to be tried in the next year or so. So those damage claims are still pending, as well as the accounting --

THE COURT: Do any of those claims cover the subject that we're --

MR. GRIMM: No. And in fact, as the affidavit of Mr. Kinder indicated, we were unaware of Clambakes' existence until the Summer of 2005. As far as we knew, it was Tom Roos and IDC Properties operating out of the Regatta Club and it

was only when this bankruptcy was filed or shortly before it that we became aware even of IDC Clambakes' existence. So we were not in a position to sue them for trespass without knowing their existence until these proceedings started. And then, of course, we're required to sue them here for that wrong.

THE COURT: You're saying that the existence was concealed somehow, or --

MR. GRIMM: I'm not saying it was concealed. I'm just saying we just -- we didn't know of its existence. Let's put it that way.

And the complaint that was filed -- the one that you have before you -- was designed to resolve the title issue because Mr. Roos and IDC Properties was claiming that they owned the reserved area. That they had validly exercised their development rights and they owned it.

So the trespass action and the claim for damages really only could be brought once that title issue was, in fact, resolved in our favor because then the Supreme Court held, "Yes. Condominium association. You and your unit owners do, in fact, own that property as a common element. You've owned it since 1988."

It's at that time when the Supreme Court made that determination that I have a claim for use and occupancy by trespassers during that period of my ownership, a period

where I had not transferred my right to possession to anybody else.

So it's not a claim that could have been brought and quite frankly, Clambakes was not a party to that suit, so there were no claims brought against Clambakes in that suit. We weren't aware of Clambakes' existence at the time. I should restate that, Your Honor. We were unaware of a lease from IDC Properties to Clambakes until it was brought out in this particular proceeding.

So I guess there's only one thing that we agree on, I think, and that is that the Rhode Island Supreme Court decision controls the liability issues in this case.

The Rhode Island Supreme Court decision makes both IDC Properties, Inc. and IDC Clambakes Inc. trespassers on condominium association unit owners' property from 1988 through 1997 in the case of IDC Properties, Inc. and from 1998 through the Spring of 2005 in connection with IDC Clambakes because the Supreme Court declared that we were the owners. There's no question about that. There can't be.

We were the owners from 1988 on and we never gave IDC Properties permission, nor did we ever give IDC Clambakes Inc. permission to go on our property and use it for their own benefit and not ours.

So we maintain the right of possession. We never gave it to anybody. And it's that right of possession that

you have as an owner that creates the standing to assert the claims that we have asserted here and their status as trespassers is determined by the Rhode Island Supreme Court decision and the only issue in this case, and I assume there'll be some dispute of fact on this issue, is the amount of damages that Clambakes should pay for its illegal trespass in use and occupancy of unit owners' property for the period 1988 through the Spring of 2005.

If Your Honor has any other questions, I'd be happy to respond.

THE COURT: Okay. Thank you. That's good for now.

MR. GRIMM: Thank you, Your Honor.

MR. SWEENEY: I think I'll approach this in a little bit of a reverse order, Your Honor, because you had said, was there some concealment about the existence of Clambakes.

I was little shocked to hear that because I re-read the transcript of the proceedings in front of you on July 5th of last year, where Mr. Kinder, who presented an affidavit in this summary judgment case, clearly went on record and the evidence was produced in that preliminary injunction hearing -- letter from American Condominium, October 13th, 1997 -- addressing Clambakes. Evidence from Powers, Kinney & Kinney, Mr. Kinder -- I'm sorry. Powers, Kinder & Kinney, application of IDC Clambakes Inc., May 7th, 2003.

THE COURT: And what are those documents saying?

MR. SWEENEY: Those are documents that were presented in the context of the preliminary injunction hearing in the State proceeding, Your Honor, on July 5th, 2005. Exhibit 6, 7 and 8, I believe, in that proceeding. So the Court has seen this. I find it remarkable for them to claim that they weren't aware of its existence.

THE COURT: I correct it for the record.

MR. SWEENEY: May 10th, 2003, letter concerning IDC Clambakes, to expand its outdoor public entertainment license signed by Ms. Shirley Mintz -- law firm representing America Condominium, application of IDC Clambakes for entertainment license dated May 13th, 2003 signed by Mr. Regan. I think that's a non-issue.

They knew of Clambakes. They participated and the Court heard, in the context of Exhibit 21 on the preliminary injunction hearing on July 5th, that the zoning and the entertainment licenses, the Court will recall, were hotly contested when Clambakes was seeking to expand its rights on the Regatta Club. That's all Clambakes, so it's a distraction. They knew of Clambakes.

More importantly, let's take a look at the law and I think that there's been an attempt here to claim that ownership equals possession and it doesn't. It severed title. Title was the subject of the Supreme Court and I

think Your Honor clearly understands what my closing counsel have used rough justice that the Supreme Court used when it took and reaffirmed that title rested with the common owners.

They knew and they limited that. They said, "You're going to get -- title rests with the common owners, but that accounting's going to be limited." And this, again, it's just an end-around.

But more importantly, we don't need to get to what the Supreme Court said and did. What we get to is what Mr. Grimm does not dispute.

He does not dispute that we were on the property. He gives Your Honor an example of Block Island. And you know what's wrong with that example? In that example, Mr. Grimm says he comes in an trespasses and then he rents it to me. Mr. Grimm didn't trespass if he used the analogy to Clambakes because IDC Properties was a co-owner.

That's where that syllogism falls to pieces. You've got co-ownership and we don't need the Condominium Act to come into play here because the Condominium Act, as I cite in the reply, is supplemented by principles of Real Property Law.

And those principles of Real Property Law talk about the co-tenancy. The Condo Act talks about the co-tenancy. Your Honor, you have a co-owner. You can't trespass against yourself when you're a co-owner.

Another distinction with the Block Island, Your Honor. The remedy. The remedy's not trespass damages. The remedy is what Rhode Island knows commonly as a T and E. And in our reply, we devote a considerate amount of space to talking about the Dilbert decision and why there's a difference there.

That is a dispute over title. When you have title and you want to obtain possession, you file a trespass and ejectment -- a T and E action. That's not what they filed here. They're coming into Court, saying trespass damages and when they do that, that is an entirely different concept.

As the restatement and as the law specifically states, the issue when you're talking about trespass damages, the key element is possession. And Properties possessed from the very beginning of time until the current time, it possesses and what it possesses it can't trespass.

I'm sorry that our client didn't foresee the remarkable events and structure the lease differently but you know what the remedy is for that under the Condo Act and under the rules and regulations? A $50 fine.

Your Honor, the rules and regulations that my adversary have attached as Exhibit 1, page 337 -- and I can hand you my copy, Your Honor -- it talks specifically -- the Court's indulgence? -- about enforcement on page 342.

And then it also cites to the rules and

regulations. Section 9.2, rights of owners and unit owners -- page 327, and it says, "[w]ith respect to each easement area, all owners and co-owners, their successors and their assigns shall, unless such easement area is withdrawn from the condominium, have the right to use any and all portions of such easement area for all purposes."

It goes on -- I'll cut a little bit of that out, and it says, "[a]nd for any other use or purpose" --

THE COURT: Easement area is the common element space, or --

MR. SWEENEY: I'm sorry. With respect to -- that does say easement areas, but if you look also to the declaration, the reserved area had easement rights over it. Those are in dispute in State Court. There was a helipad easement, there's a dock storage easement, so these easements cross it.

But the concept is clear. And then with respect to the rules and regulations -- the Court's indulgence? The rules and regulations specify that a violation of those rules and regulations results in a $50 fine. Who does the fine go against? It goes against IDC Properties. They're blocked from going against IDC Properties and consequently, they're again, trying to do an end-around.

Those disputes, and as opposing counsel has said most recently in the slander case, they are filing claims for

violation of the Condo Act. That's pending in Newport. It has no business here and it has no bearing on the analysis of the trespass here. Let those matters proceed in Newport. They don't need to proceed here because it is a very basic, straightforward argument.

You can't have trespass. You could have had a T and E action and regained possession and in fact after the Supreme Court decision, that's what they did. And when that happened, we said, "Wait. We have possessory rights, Your Honor. We've got all of these events going on through the summer of 2005," and we stayed in possession and when they did that, we paid rent. But not prior to that.

Prior to that, we were there under a claim of rights. We were there under a claim of a co-owner. And if the lease is not valid under the Condo Act, it doesn't matter. We were there as a business invitee. We were there as a licensee. We are there at the pleasure of the co-owner, IDC Properties.

And no one ever disputed our possession, Your Honor. The record is clear as to how this went down. We were in possession. We built the Regatta Club. The lease or the possession then went into Clambakes.

So when they say, "Clambakes trespassed against us," no, we didn't. We were in possession. We didn't interfere. We did not meet the basic elements of trespass

law because we didn't enter into land in possession of another. We entered into land in possession of a co-owner and that's what the Supreme Court says.

Their trespass argument has that fundamental flaw. They cannot, as a matter of law, get to where they need to be. There's no disputes of fact, Your Honor. This is very straightforward. Most of what Mr. Grimm has said we don't dispute. We may disagree with some points, but it's not material.

The material fact is, Mr. Grimm just told you we were in possession. We took possession from a co-owner. We didn't take it from the condominium associations. Consequently, trespass doesn't lie. All is they get is the T and E. They get the trespass and ejectment preceder and that's it. All other remedies are foreclosed.

Your Honor, I think you clearly understood, and you're picking up on what the Supreme Court intended. Clambakes wasn't a party, but you know what? The condominium associations didn't make them a party. They didn't join them to the proceeding. They didn't take action to separately file a T and E until 2005 because they knew title was disputed. The Supreme Court understands it and gets it.

Also, I would say that clearly based on the quotes that I've set forth that the other side also understood it.

Under these circumstances, it's a very

straightforward issue of law. They cannot prove trespass. The case doesn't need to proceed any further and I would encourage the Court to disallow this claim, grant summary judgment in favor of the debtors so the case can be completed.

If the Court doesn't have any further questions, I don't think I have anything more. I'd rely on the brief and on the reply. Thank you very much for your time.

MR. GRIMM: Back to this same point. The Condominium Act defines the parameters of the ownership rights which every unit owner gets and in those rights, is obviously the right to live in and possess your unit. And then you also have an ownership right in the common elements which is restricted by the Condominium Act. And the Condominium Act forbids an owner like Properties from attempting to lease out the common elements itself.

It says specifically that any such transaction is void. Void. And that's the statutory section I quoted to you earlier, 3436.1-2.07.

THE COURT: Now has that proposition been averred and decided in the State Court's or anywhere?

MR. GRIMM: No. That's not been an issue in the State Court proceedings, Your Honor.

THE COURT: Okay.

MR. GRIMM: But that's a matter of statutory law.

It's matter of statutory definition of a condominium unit owner's ownership rights. It's all property concept that if the fee title has a bunch of sticks in it, all right, and if you own something in fee, one of the sticks you have is the ability to lease it out to somebody else. Ability to sell it. The ability to mortgage it. And there are other sticks that exist as well.

But in a condominium form of ownership, your sticks are limited, particularly as to the common element. You do not have a stick by statute to lease the common element if you're a unit owner. It doesn't exist. Void, according to the statute.

The provision is that 80 percent of the unit owners in the association have that stick. So for them to claim that Clambakes is just on the property pursuant to rights given to it by IDC Properties, we're back to the same place because IDC Properties didn't have the right to lease. Void, according to the statute. Only the association, with 80 percent unit owner approval, has the ability to lease.

So they want to pretend that they were there lawfully under this lease with Properties.

THE COURT: Let me interrupt you for a second. Mr. Sweeney, do you want to respond to that part of Mr. Grimm's argument that the Act by statute or -- yes.

MR. SWEENEY: I understand.

THE COURT: Okay.

MR. SWEENEY: It doesn't matter. It simply does not matter whatsoever. That is a matter that Mr. Grimm has already got pending in Newport County. Violation of the Condo Act. Who violated it? IDC Properties, under his theory.

IDC Properties didn't follow the rules and regulations not just to the Condo Act, but also to the declaration because it leased property. Well, the lease wasn't approved. The lease is void. Well, so what? It absolutely does not matter.

That is totally irrelevant because he can pursue his rights against IDC Properties for being -- for acting inappropriately as a co-owner, for violating the rules and regulations, for violating the Act. That's all already pending in State Court. It's got no business here because it's all about possession.

THE COURT: Okay. The fact that it's an issue pending in the State Court --

MR. GRIMM: It's not, Your Honor.

THE COURT: If it was, but certain of these issues maybe without a lot of calories being put into it, they can overlap, can't they? I know that there's been an extension, but is it possible that some of the arguments that are or will be raised and argued in the Superior Court are also part

of this -- you know, when we get into the --

MR. SWEENEY: It is feasible.

THE COURT: -- ownership issues and stuff like that?

MR. SWEENEY: It's feasible, but it's irrelevant. It is absolutely feasible, Your Honor, that the Court would take a look at the Condominium Act and listen to Mr. Grimm's interesting argument on condominium law.

But at the end of the day, it doesn't matter. What matters are the incidents of possession and there is no dispute of fact, Your Honor, that possession was never taken away from the condominium associations. There is a clear, uninterrupted possession from IDC Properties to Clambakes.

The beef -- the dispute -- is with IDC Properties, not its subtenant. Not its business invitee, licensee, guest -- whatever you want to call Clambakes. The dispute was and is with IDC Properties and it must prove that Clambakes interrupted the condominium associations' possession. It never happened.

Under their theory, maybe there's a violation of possession by IDC Properties, but I don't think that ever happened, either, because remember, this went straight into the declaration of condominium. It was possessed and owned, so they thought. They recorded a declaration. The declaration says that the common elements will be with all

the owners, subject to the development right that expires on December 31st, 1994.

So throughout this period, there is possession -- total possession. The Court may have heard about some of the activities that went on out there or have common knowledge of the tall ships, the X Games. It was possession. No one ever even thought to interfere or to even think of possession because it was actually, notoriously, openly possessed by IDC Properties throughout the period.

And when Clambakes began its possession, it didn't violate the law of trespass because it didn't interfere with the rights of the condominium association. It didn't interrupt their possession.

Possession is the key and only element on trespass. Everything else is a distraction. Only the possession. And there's no dispute of fact as to possession, which is why it makes it so clear with respect to summary judgement because they can't prove either actual or constructive possession. They can't get to a trespass claim. It's an impossibility as a matter of law.

THE COURT: Okay. Thank you. I think you've answered my question on it. Mr. Grimm, if you can remember where you were?

MR. GRIMM: I think I can understand now where the disconnect is. As an owner of property, I have constructive

possession of my property, whether I'm on it or not.

Take that vacant lot up on Block Island. I don't have to be there every day to be in constructive possession. If I give someone else the right to be in possession of my lot, they have rightful possession. I then can't sue for trespass if somebody else comes on.

That's the reality because I've given my right of possession away. But if I've not given my right of possession away and the condominium associations did not, and someone wrongfully possesses my property in violation of my right of possession, that does not insulate that person or someone else claiming through them from a claim of trespass.

The only way that this claim would be inappropriate to bring is if we had given IDC Properties our right of possession in 1998 or later. Then, because I didn't have the stick in the bundle anymore, I couldn't sue for trespass if IDC Properties stayed there or if IDC Properties leased to someone.

But we never gave them or anyone else that stick. We always had the right to possession. Their possession was never rightful and it's only a rightful possession, one which exists as a matter of right, that could defeat my claim of trespass. Because a claim of trespass awards damages for the violation of my right to possess my property.

It is not limited to actual possession. There is

clear law on constructive possession, and as long as I have the right to possess it, which I clearly do from 1988 according to the Supreme Court and I have not given permission to somebody else to use it or possess it -- and we clearly never gave right to IDC Properties or IDC Clambakes -- I have a claim for trespass.

I have standing to assert this claim and the Supreme Court established that both these entities were trespassers as a matter of law.

MR. SWEENEY: Just briefly, Your Honor, I appreciate Mr. Grimm's comment that he never gave up the right of possession, but the law is clear in Rhode Island with respect to trespass. He never had possession, so he didn't have to give it up.

The definition is in *Lavin v. Dodge*, 30 R.I. Reporter, and I quote it on page 12 and I also, in the reply, reiterate it again. The gist of this action is injury to the possession.

In trespass and ejectment, which is an action distinctly to try title upon a plea of general issue, the plaintiff must prove title as a seque non of maintaining an action. In trespass quaere causem, possession alone is sufficient to maintain the action.

The action in being in trespass quaere causem, the only issues were the possession -- not the right of

possession -- the possession of the plaintiff and the acts of trespass by the defendant.

There was no possession. The right of possession, yes. But he had to go and get the T and E to properly possess it. They never possessed it. Consequently, there's no trespass. They got their possession at this point. That's all they get. They could not prove trespass because they were never in possession.

By the magical circumstance of legal precedence, they developed the right, had the declaratory judgment and yes, the common area rested with the co-owners, and then and only then, in 2005, did they assert this concept, "We want possession." Prior to that, they weren't in possession.

THE COURT: Didn't the Supreme Court speak in retrospect and say that although our decision is dated today, this has been the situation from 1988, or whatever?

MR. SWEENEY: We don't dispute that.

THE COURT: Okay.

MR. SWEENEY: And that principle goes strictly to title. It's only a title decision. I think we do disagree or maybe there was misstatement about what the Supreme Court said about possession.

The Supreme Court said nothing about possession. It only addressed title. The possession issue was separate and apart and the law of trespass and the law of trespass and

ejectment recognizes a huge distinction.

And the *Lavin v. Dodge* case -- case one and two -- really nailed that issue and put it to rest that it is possession that's they key. Thank you very much.

THE COURT: Okay. I don't think I'll surprise anybody if I take this under advisement and I'll try to brush up on property one again. I'll be back in touch with you as soon as we can.

MR. GRIMM: Thank you, Your Honor.

MR. SWEENEY: Thank you, Your Honor.

ALL: Thank you, Your Honor.

(Proceedings concluded at 12:24 p.m.)

I, CHRISTINE FIORE, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Christine Fiore (signature) October 2, 2006

Christine Fiore