UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

IN RE :
:
IDC CLAMBAKES, INC., :
: C.A. No. 07-0049-S
DEBTOR :
:
:

**REPLY BRIEF OF GOAT ISLAND SOUTH CONDOMINIUM ASSOCIATION, INC.,**
**AMERICA CONDOMINIUM ASSOCIATION, INC.,**
**CAPELLA SOUTH CONDOMINIUM ASSOCIATION, INC.,**
**HARBOR HOUSES CONDOMINIUM ASSOCIATION, INC.**

ON APPEAL FROM A FINAL JUDGMENT OF THE
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

William R. Grimm (#1938)
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600 (FAX)

Charles D. Blackman (#5522)
155 South Main Street, Suite 101
Providence, Rhode Island 02903
(401) 455-1445
(401) 351-9653 (FAX)

June 8, 2007

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ........ i

INTRODUCTION ........ 1

ARGUMENT ........ 2

A. DEBTOR WAS A STRANGER TO THE *AMERICA CONDOMINIUM* LITIGATION AND HAS LIABILITIES THAT ARE INDEPENDENT OF IDC PROPERTIES ........ 2

B. DEBTOR'S INDEPENDENT TRESPASS LIABILITIES TO THE CONDOMINIUM UNIT OWNERS WERE NOT "ACTUALLY LITIGATED" OR "NECESSARILY DECIDED IN THE AMERICA CONDOMINIUM LITIGATION ........ 3

1. The Issues Raised By the Condominium Associations' Trespass Damage Claims Are Not Identical to the Issues in *America I* and *II* Appeals. ........ 4

2. Neither Debtor's Liabilities, Nor Any Issues Relating to Compensatory Damages, Were Actually Litigated In *America I* and *II*. ........ 6

3. The Issues in this Appeal were Not "Necessarily Decided" By the Rhode Island Supreme Court. ........ 6

C. A BANKRUPTCY COURT CANNOT DISALLOW A LEGAL CLAIM BASED ON SUBJECTIVE NOTIONS OF EQUITY ........ 8

D. THE CONDOMINIUM ASSOCIATIONS REQUESTED A FINDING ON LIABILITY BUT WERE NOT ABLE TO CREATE A RECORD OF THE "TOTALITY OF CIRCUMSTANCES" ........ 11

1. The Associations Requested a Finding on Liability. ........ 11

2. Debtor Did Not Argue for, and the Facts Do Not Compel, Summary Judgment Based on the "Totality of Circumstances" ........ 12

E. NO IDC ENTITY HAS SATISFIED ANY JUDGMENT IN TORT ........ 13

F. IDC PROPERTIES HAD NO LEGAL AUTHORITY TO LEASE THE COMMON ELEMENTS TO DEBTOR ........ 14

G. THE UNIT OWNERS WERE IN ACTUAL POSSESSION OF THEIR UNITS AND THEREFORE WERE IN ACTUAL POSSESSION OF THE COMMON ELEMENTS ........ 15

H. A PLAINTIFF MAY RECOVER DAMAGES FROM A TRESPASSER WHO WRONGLY DENIES HIM POSSESSION OF HIS OWN PROPERTY .................17

CONCLUSION.....................................................................................................................22

CERTIFICATION OF SERVICE..........................................................................................23

ADDENDUM .......................................................................................................................24

Decision, Goat Island South Condominium Association v. IDC Properties, Inc., N.C. 06-295 (R.I. Super. May 21, 2007)

## TABLE OF AUTHORITIES

**Cases**

Adams v. Cleveland-Cliffs Iron Co., 237 Mich.App. 51, 59, 602 N.W.2d 215 (1999)................18

America Condominium Ass'n v. IDC, Inc., IDC Properties, Inc. and Thomas R. Roos, 844 A.2d 117 (R.I. 2004) ("America I"), affirmed on reargument, 870 A.2d 434 (R.I. 2005) ("America II") ........................................................................................... passim

Attorney General v. Dime Savings Bank of New York, FSB, 596 N.E.2d 1013, 1015-1016 (Mass. 1992) ..........................................................................................................19

Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 29 (1st Cir.1996) ..........................................11

Blanchard v. Peerless Ins. Co., 958 F.2d 483, 488 & n.6 (1st Cir. 1992)....................................12

BP West Coast Products LLC v. Green, 318 F. Supp.2d 987 (E.D. Ca. 2004) ..............................4

Campbell v. Lederer Realty Corporation, 125 A. 222 (1924) .....................................................20

Campbell v. Lederer Realty Corporation, 47 R.I. 8, 129 A. 732 (1925) ...............................13, 20

Cargal v. Cargal, 750 S.W.2d 382, 385 (Tex.App. 1988) ..........................................................18

Carpenter v. Logee, 24 R.I. 383, 53 A. 288, 288 (1902) ............................................................19

Carroll v. Rigney, 23 A. 46, 47 (R.I. 1885) .................................................................................19

In re Chicago, Milwaukee, St. Paul & Pac. R.R., 791 F2d 524, 528 (7th Cir. 1986)....................10

Cuevas-Segarra v. Contreras, 134 F.3d 458, 460 (1st Cir. 1998) ..................................................9

Cullins v. Foster, 171 S.W.3d 521, 531 (Tex. App. 2005) ..........................................................18

Daniels v. Coleman, 169 S.E.2d 593 (S.C. 1964)........................................................................17

Davis v. Girard, 70 R.I. 291, 38 A.2d 774 (1944) ......................................................................21

Dugan v. Jensen, 244 Neb. 937, 941, 510 N.W.2d 313 (1994) ...................................................18

E.I. Du Pont De Nemours & Co., Inc. v. Cullen, 791 F.2d 5 (1st Cir. 1986)................................4

E.W. Audet & Sons v. Fireman's Fund Ins. Co., 635 A.2d 1181, 1186 (R.I. 1994)........................3

Eastern Motor Inns, Inc. v. Ricci, 565 A.2d 1265, 1272 (R.I. 1989)...........................................13

Ferriera v. Strack, 652 A.2d 965, 969 (R.I. 1995) ........................................................................5

Firth v. Los Angeles Specific Land Co., 28 Cal. App. 399, 152 P. 935, 405 (1915) ....................17

Hathaway v. Osborne, 55 A. 700, 701 (R.I. 1903) ............................................................19

In re Kaplan, 104 F.3d 589, 597-98 (3d Cir. 1997) ............................................................10

Kulak v. City of New York, 88 F.2d 63, 72 (2d Cir. 1996)..........................................................4

In re Ludlow Hosp. Soc., Inc., 124 F.3d 22, 27 (1st Cir.1997) ....................................................9

Mailloux v. Jordan, 50 R.I. 183, 146 A. 480, 481 (1929)..............................................17, 19

McCann v. Rathbone, 8 R.I. 297, 300 (1866)......................................................................20

McCarthy v. Azure, 22 F.3d 351, 363 (1st Cir. 1994)..................................................................3

McConnell v. Wilson, 543 A.2d 249 (R.I. 1988) ..............................................................14

Mitchell v. Humana Hospital-Shoals, 942 F.2d 1581, 1583 (11th Cir. 1991)...............................8

Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206-07 (1988) .........................................10

Owen v. Treder, 873 F.2d 604, 611 (2d Cir. 1989) ........................................................................8

Pepper v. Litton, 308 U.S. 205 (1939)...........................................................................9, 10

Raleigh v. Illinois Department of Revenue, 530 U.S.15 (2000)....................................................9

Reichard v. Chicago, B. & Q. R. Co., 231 Iowa 563, 1 N.W.2d 721, 575 (1942) .......................17

Rhode Island Economic Development Corporation v. The Parking Company, L.P., 909 A.2d 943, 945 (R.I. 2006)........................................................................................21

Robert's River Rides v. Steamboat Dev. Corp., et al. 520 N.W.2d 294, 302 (Iowa 1994)...........19

St. Sava Home v. Christopher, 537 A.2d 69,72 (Pa. Commw. Ct. 1988)....................................13

Sayles v. Mitchell, 22 R.I. 238, 47 A. 320 (1900) ..............................................................19

Schwartzman v. Schoening, 41 Mass.App.Ct. 220, 669 N.E.2d 228 (1996)................................15

In re SPM Mfg. Corp., 984 F.2d 1305, 1311 (1st Cir. 1993).......................................................10

State v. Pineda, 712 A.2d 858, 863 (R.I. 1998) ..............................................................4

The Mable Cleary Trust v. the Edward-Marrlah Muzyl Trust, 262 Mich.App. 485, 508 (2004)...............................................................................................18

Thomas v. Contoocook Valley School Dist., 150 F.3d 31 (1st Cir. 1998)....................................8

Town of Westerly v. Waldo, 524 A.2d 1117, 1119 (R.I. 1987) ....................14

URI Cogeneration Partners, LP. v. Board of Governors for Higher Education, 915 F.Supp. 1267 (D.R.I. 1996) ....................12

Waterman v. Matteson, 4 R.I. 539, 543 (1857) ....................19

Wood v. Essex, 94 A. 666 (R.I. 1915) ....................19

**Statutes**

11 U.S.C. § 105 ....................9, 10

P.L. 1860, c. 359 ....................20

G.L. 1872, c. 214, § 47 ....................20

G.L. 1909, ch 293, § 52 ....................20

G.L. 1923, ch. 342, § 52 ....................20

G.L. 1938, ch 538, § 12 ....................20

RIGL § 11-44-26(a) ....................18

RIGL § 34-20-2 ....................20

RIGL § 34-36.1-1.03 ....................16

RIGL § 34-36.1-2.07(e) ....................15

RIGL § 34-36.1-3.01 ....................14

RIGL § 34-36.1-3.02(a)(6) ....................14

RIGL § 34-36.1-3.02(a)(9) ....................15

**Treatises**

1 Dobbs on Remedies, § 5.1 at 709 (West 1993) ....................18

1 Fletcher Cyclopedia on the Law of Private Corporations, § 47 at 773 (Rev. 1999) ....................3

Dobbs on Torts, § 52 (West 2000) ....................18

Moore's Federal Practice, §132.05[1] ....................4

**Other Authorities**

3 Blackstone, Commentaries on the Laws of England, 174-75 (1768) ........................................17

Restatement (Second) of Torts, § 157(a) ..........................................................................19

41 Am. Jur. 2d, Improvements § 3 (2004) .........................................................................14

42 C.J.S. Improvements § 3 (1991) ....................................................................................13

87 C.J.S., Trespass § 22 .......................................................................................................16

87 C.J.S., Trespass §§ 15 and 23 ........................................................................................19

Debtor-Appellee IDC Clambakes continues to misrepresent in its papers the scope and issues presented to the Rhode Island courts in America Condominium Ass'n v. IDC, Inc., IDC Properties, Inc. and Thomas R. Roos, 844 A.2d 117 (R.I. 2004) ("America I"), affirmed on reargument, 870 A.2d 434 (R.I. 2005) ("America II"). The only counts adjudicated in that action were declaratory judgment counts related to the invalidity and illegality of IDC Properties' attempts to extend and exercise its development rights in 1994. No issue relating to Debtor's undeniable trespass on the condominium's property was ever raised, argued, or litigated. No issue relating to money damages against any party has been actually litigated or decided. Debtor originally argued to the Bankruptcy Court that "the issue of the use and occupancy of the Reserved Area by Clambakes operating business has never been litigated" and prevailed on that argument. App. 616-17. Indeed, contrary to Debtor's tireless refrain that the Condominium Associations have received "full compensatory damages," the Supreme Court did not address "compensatory damages" and the Condominium Associations have not received one dime in satisfaction of any judgment. No monetary judgment has been entered by any court. The only judgment in the long history of this dispute is the declaratory judgment entered by the Superior Court pursuant to the Supreme Court's mandate on May 25, 2005. App. 0238-39.

The Bankruptcy Court erred in applying the doctrine of *res judicata*. The Bankruptcy Court erred by blindly accepting Debtor's false representation that "the parties actively contested the issue and entitlement to damages in the state court proceedings." App. 0616-17 (Debtor's Memorandum in Support of Motion for Summary Judgment at 16 (September 1, 2006)). Issue preclusion clearly does not apply to bar the Association's damage claims. The Bankruptcy Court erred by introducing and applying the "single satisfaction" rule where there has been no final

judgment and no satisfaction of any judgment, and by importing its subjective notions of "fairness" based of the "totality of the circumstances."

Debtor's lengthy arguments regarding "actual possession" and tenancies in common are ultimately distractions. A condominium, although it has some characteristics of a tenancy in common, is not a tenancy in common. Condominiums are creatures of statute. Individual unit owners cannot lease the common elements of the condominium separately from their units. Rather, the unit owners association is reposed with that authority and can exercise that power through its executive board. IDC Properties could not, as a matter of law, lease the Reserved Area to Debtor. Clambakes, having used and occupied the condominium's valuable property for seven years without the lawful consent of the owners, is a trespasser as a matter of law.

A. DEBTOR WAS A STRANGER TO THE *AMERICA CONDOMINIUM* LITIGATION AND HAS LIABILITIES THAT ARE INDEPENDENT OF IDC PROPERTIES.

Debtor finally admits that claim preclusion does not apply. Debtor's Brief at 25-27. Debtor was not a party to the America Condominium litigation. Debtor has separate liabilities than IDC Properties. Debtor and IDC Properties are different. Debtor argued these positions to justify this bankruptcy in the first instance and prevailed on them. The Bankruptcy Court has since confirmed a plan of reorganization, granted Debtor a discharge, and permitted Debtor to sue the Condominium Associations based on Debtor's contention that "the issue of the use and occupancy of the Reserved Area by Clambakes operating business has never been litigated." App. 616-17. Now, Debtor contends that the issues of its liability for its unauthorized use and occupancy was "actually litigated and decided" by a footnote to a decision in a case to which it was not even a party.

Debtor cannot have it both ways. Debtor cannot rely on the "separateness" of Debtor, "IDC Inc.," IDC Properties, and Roos to justify this bankruptcy in the first instance, to confirm a

plan of reorganization and obtain a discharge of its liabilities under Chapter 11, and to retain substantial profits from its 2005 operations; but now blend these identities together when it no longer serves its interests. See Debtor's Brief at 24 ("because Tom Roos is the sole shareholder of both Debtor and IDC Properties, those profits flow through to him"). Debtor is judicially and equitably estopped to morph the IDC business units together after it prevailed upon the Bankruptcy Court to regard the IDC entities separately. See generally Appellants' Brief at 14-17, citing McCarthy v. Azure, 22 F.3d 351, 363 (1st Cir. 1994) (a party "cannot be permitted to use the alter ego designation to his own behoof") and 1 Fletcher Cyclopedia on the Law of Private Corporations, § 47 at 773 (Rev. 1999) (a corporation "cannot be inconsistently regarded and at the same time disregarded").

The Court must regard Debtor as a third party with independent liabilities to the Condominium Associations, exactly as Debtor originally argued and the Bankruptcy Court accepted.

## B. DEBTOR'S INDEPENDENT TRESPASS LIABILITIES TO THE CONDOMINIUM UNIT OWNERS WERE NOT "ACTUALLY LITIGATED" OR "NECESSARILY DECIDED" IN THE AMERICA CONDOMINIUM LITIGATION

Collateral estoppel requires (a) an identity of issues, (b) a final judgment, and (c) that the party against whom the estoppel is asserted be the same party (or in privity with the party) against whom the issue was previously decided. E.W. Audet & Sons v. Fireman's Fund Ins. Co., 635 A.2d 1181, 1186 (R.I. 1994). The "identity of issues" requirement requires evidentiary proof that:

> (1) the issue sought to be precluded must be identical to the issue determined in the earlier proceedings, (2) the issue must actually have been litigated in the prior proceeding, and (3) the issue must necessarily have been decided.

Id. The burden of showing that the issues are identical and were "actually litigated" and "necessarily decided" in the prior action rests with the party seeking to apply issue preclusion. See Kulak v. City of New York, 88 F.2d 63, 72 (2d Cir. 1996); State v. Pineda, 712 A.2d 858, 863 (R.I. 1998); see also Moore's Federal Practice, §132.05[1].

1. The Issues Raised By the Condominium Associations' Trespass Damage Claims Are Not Identical to the Issues in the *America I and II* Appeals.

The issues in this appeal and the issues that were briefed and litigated in America Condominium are plainly not "identical." The America I and II appeals concerned a declaratory judgment as to whether IDC Properties validly extended (or, alternatively, validly exercised) its development rights in 1994. These issues involved issues of substantive condominium law and the prohibitions of the Condominium Act. No part of the arguments or the Court's decisions or the Amended Partial Judgment concerned compensatory damages. Indeed, no part of the parties' arguments concerned damages.

This Court has the Supreme Court briefs and may take judicial notice of them for the purpose of determining what was "actually litigated" and "necessarily decided" in the America I and II appeals. See E.I. Du Pont De Nemours & Co., Inc. v. Cullen, 791 F.2d 5 (1st Cir. 1986); BP West Coast Products LLC v. Green, 318 F. Supp.2d 987 (E.D. Ca. 2004). Even a cursory review of the briefs reveals that the issues in this appeal are not identical. While Debtor originally misrepresented to the Bankruptcy Court that "the parties actively contested the issue and entitlement to damages in the state court proceedings," App. 616-17, see also Debtor's Brief at 28, it cannot refer to a single page in the State Court record where the Associations' entitlement to recover for fair value of Debtor's unlawful use and occupation of the unit owners property was "actively contested." The issue was never in the State court case, much less contested. The Bankruptcy Court accepted Debtor at its false word; this Court should not.

The Supreme Court remanded the matter for trial of the remaining claims, which include claims for IDC Properties' willful violation of the Condominium Act and breach of fiduciary duty. See America I, 844 A.2d at 135. It did not grant "complete relief," or provide a "complete remedy," or award "full compensatory damages," as Debtor falsely asserts. Debtor's Brief at 14, 18. The remaining claims, which are also different from the claims made here, are now pending in the Rhode Island Superior Court. [1]

2. Neither Debtor's Liabilities, Nor Any Issues Relating to Compensatory Damages, Were Actually Litigated In America I or II.

The issues that were before the Court and that were "actually litigated" involved the voting structure, ownership and control of the Goat Island South Condominium under the Amended and Restated Declaration of Condominium.[2] IDC relied on an elaborate name game to justify a regime in which it claimed to achieve unanimity by only counting its own votes. The Supreme Court held that the 154 unit owners had the right to vote on amendments to their condominium declaration under § 2.17 of the Act and that the disputed parcels of condominium property were not separately owned "units" but rather was commonly owned property that was subject to defeasance only by the timely and valid exercise of the developer's "special declarant rights." Neither IDC nor the associations raised any issue relating to compensatory damages and no such issue was "actually litigated" in the State Court proceedings.

---

[1] Debtor argues that a trespass to land is fundamentally the same as a breach of fiduciary duty, but it is not. Debtor's Brief at 19. A trespass to land is a physical invasion of land without the consent of the owner. Ferriera v. Strack, 652 A.2d 965, 969 (R.I. 1995). A breach of fiduciary duty is a violation of a duty imposed by the Condominium Act on declarant-appointed officers of a condominium association to conduct condominium affairs in the best interests of the unit owners rather than in the best interest of the declarant. RIGL §34-36.1-3.03 (a)(1).

[2] Debtor's statement that "the Original Declaration has not been challenged" is another knowing falsehood. Debtor (and Debtor's counsel) is well aware that IDC Properties is now claiming in a State Court proceeding that America I and II "really mean" that its development rights are reinstated until 2037. To date, the State Court has rejected that contention. App. 0529; see also Addendum. Debtor's suggestion that the Original Declaration "has not been challenged" is illustrative of the many falsehoods in Debtor's brief.

The Court ordered-accounting of Footnote 24 came about as an equitable remedy to address the fact that IDC Properties paid condominium fees based on the incorrect premise that the common element property was separately-owned "units."[3] IDC did not request the accounting. Rather, it was a *sua sponte* remedy to avoid unjust enrichment. Neither party advocated in favor or against the accounting or its scope. It cannot be said in these circumstances that even the issues relating to the accounting or its scope were "actually litigated."

No issue relating to "compensatory damages" was actually litigated. Nothing regarding IDC Clambakes possession of the unit owners' property was "actually litigated." The alleged Properties/Clambakes' lease was not even revealed until June 2005. App. 0266. The issue of Debtor's unlawful use and occupancy of the condominium's property for seven years was not actually litigated or decided in the state court proceedings. That's what Debtor initially told the Bankruptcy Court. App. 0616-17. The "actually litigated" prong of collateral estoppel is simply not met here.

3. The Issues in this Appeal were Not "Necessarily Decided" By the Rhode Island Supreme Court.

Debtor's liabilities for trespass were also not "necessarily decided." The name IDC Clambakes, Inc. does not appear a single time in the America Condominium briefs. There is not a single reference to an unrecorded lease or any tenant thereunder. The Supreme Court did not

[3] The reality of the accounting remedy has its origins in IDC Properties' argument that enforcement of the Condominium Act would be "unfair." It argued that it had paid condominium fees associated with the disputed property for many years. It argued that these payments were "evidence" of its title and, alternatively, of laches, estoppel and like equitable considerations. App. 0900, 915, 917, 927, 939, 1006, 1008, 1020. While the Court declined to strip the unit owners of their property because an IDC-controlled condominium association accepted payments from IDC Properties during a period that IDC Properties' rights and obligations under the condominium declaration were in dispute, it found that there would be unfairness in allowing the associations to benefit from condominium fees that never should have been paid. America I, 844 A.2d at 135. IDC Properties thereafter requested and was permitted to reargue on the issue of title. The reargument was limited to that issue, see Order, America Condominium Ass'n v. IDC, Appeal No. 01-469 (R.I. June 3, 2004), and the Condominium Associations have never been heard on any issue relating to the scope of the court-ordered accounting.

adjudicate, and did not need to adjudicate, the rights of third parties in resolving the issues presented in the America Condominium appeals. Indeed, the Supreme Court could not adjudicate the rights and liabilities of a non-party about which it was completely unaware. The issues that were "necessarily decided" in the America Condominium appeals involved events in 1994 and the parties' rights and liabilities under the formative condominium documents. Clambakes has no rights, and no claim of rights, under the condominium documents.

Footnote 24 says only:

> This accounting is confined to the common expenses paid by defendants on the master units after the expiration of their development rights on December 31, 1994. It does not include any profits that *the defendants* may have earned from its operation of the Newport Regatta Club.

America I, 844 A.2d at 135 n.24. Footnote 24 says nothing about trespass, nothing about "compensatory damages," nothing about third parties. The plain language of the footnote is clearly limited to the "Defendants" in the action, who were IDC Inc. (a marketing company), IDC Properties, Inc. (a real estate holding company), and Thomas R. Roos (an self-appointed officer of the Goat Island South Condominium Association, who willfully violated the Condominium Act to serve his own interests rather than those of the condominium unit owners). The only way to arrive at Debtor's desired result is to insert new words into the footnote such as "Defendants and any third parties" or to conflate the avowed separate identities of Clambakes and Properties that Debtor used to justify this bankruptcy in the first place. Thus, whatever Debtor may think Footnote 24 says relative to "Inc.," Properties, and Roos, it assuredly says

nothing relating to Clambakes or other third parties that used the Reserved Area without authority from the property owners.[4]

Ultimately, Debtor bears the burden of proving the necessary elements of collateral estoppel. See Kulak v. City of New York, 88 F.2d 63, 72 (2d Cir. 1996) ("the burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion"); In re Castaneda, 81 B.R. 470, 472 (Bankr. N.D. Ill. 1988) (party asserting collateral estoppel must supply court with record of proceedings in prior action); State v. Pineda, 712 A.2d 858, 863 (R.I. 1998); see also Moore's Federal Practice, §132.05[1]. Debtor has not sustained its burden by pointing merely to a footnote that addresses a different issue altogether.

## C. A BANKRUPTCY COURT CANNOT DISALLOW A LEGAL CLAIM BASED ON SUBJECTIVE NOTIONS OF EQUITY

The Bankruptcy Court independently disallowed the Associations' claims on summary judgment "based on the totality of circumstances, that to award the Association anything further

---

4 Debtor misplaces reliance on Attorney DeFanti's legal argument on July 5, 2005. Unsuccessful legal argument is neither evidence nor an admission. The America Condominium Court reached two independent conclusions in the final section of America I: (1) a person who builds on the land of another in the face of a known claim does so at his peril and is not entitled to restitution for the value of any improvements, and (2) it would be inequitable for the unit owners to retain the condominium fees that IDC Properties should not have paid in the first place. While Mr. DeFanti speculated in open Court that the Supreme Court may have been attempting to work "rough justice," this Court can only go by what the Court said. It cannot speculate into what "rough justice" the justices may have attempted to work or divine from a footnote some unexpressed intention that the justices might have discussed behind closed doors. Owen v. Treder, 873 F.2d 604, 611 (2d Cir. 1989). The Court simply did not say that the Regatta Club improvements were "compensatory damages" or that the Condominium Associations were not entitled recover the fair value of the a third party's unauthorized use of the condominium's property. See also Thomas v. Contoocook Valley School Dist., 150 F.3d 31 (1st Cir. 1998), citing, Mitchell v. Humana Hospital-Shoals, 942 F.2d 1581, 1583 (11th Cir. 1991) (holding that, when it is impossible to divine from the state court judgment what was actually decided, collateral estoppel should not apply). Footnote 24 excludes the State Court Defendants' profits from the *sua sponte* accounting order but left the parties where it found them on all other issues.

Similar context is necessary to the qualifying language of the Associations' proofs of claim, "[t]o the extent not precluded by [America Condominium]. . . . " The Associations argued at the outset that this bankruptcy was a bad faith filing under 11 U.S.C. § 1102(b) and that the entire case should have been immediately dismissed because it was fundamentally a "two-party" dispute. Record, # 37-39. The Bankruptcy Court did not accept this argument. It regarded the separate corporate identity of Clambakes as a third party and permitted this bankruptcy to go forward, and the Condominium Associations withdrew their motion. App. 0422. It follows, and Debtor now concedes, that *claim preclusion* does not apply. Debtor's Brief at 25-27.

as additional damages in this bankruptcy would be clearly overkill and an unjust enrichment." App. 0142. There is no legal doctrine that permits a bankruptcy court to deny an available legal remedy based on the bankruptcy judge's subjective notions of fairness. See Appellants' Brief at 18 (April 13, 2007). Debtor responds that Section 105 of the Bankruptcy Code [11 U.S.C. § 105] refutes the Associations' "incredibly . . . flawed view of the Bankruptcy Court's authority." It cites Pepper v. Litton, 308 U.S. 205 (1939) for the proposition that a bankruptcy judge can disallow any claim for any reason. Debtor's Brief at 20-21.

Neither Section 105 nor Pepper v. Litton applies here. "Section 105(a) empowers the bankruptcy court to exercise its equitable powers--where 'necessary' or 'appropriate'--to facilitate the implementation of other Bankruptcy Code provisions." In re Ludlow Hosp. Soc., Inc., 124 F.3d 22, 27 (1st Cir.1997). "A proper application of § 105(a) will effectuate the Bankruptcy Code *without fashioning or altering substantive rights of debtors or creditors*, ensuring that 'technical considerations will not prevent substantial justice from being done.'" Cuevas-Segarra v. Contreras, 134 F.3d 458, 460 (1st Cir. 1998) (quoting Pepper v. Litton) (emphasis supplied).[5] Neither Section 105 nor Pepper authorizes a bankruptcy judge to disallow a claim because the bankruptcy judge thinks a legitimate claim is "unfair."

The Supreme Court explained the applicable principles in Raleigh v. Illinois Department of Revenue, 530 U.S.15 (2000):

> Bankruptcy courts do indeed have some equitable powers to adjust rights between creditors. See, e.g., §510(c) (equitable subordination). That is, within the limits of the Code, courts may reorder distributions from the bankruptcy estate, in whole or in

---

[5] In Pepper v. Litton, the Supreme Court held that a bankruptcy court may adjust the priorities between legitimate creditors and "insider claimants," such as a claim by the sole shareholder against the debtor corporation. Pepper could have been applied to subordinate Mr. Roos' and those of the so called "Related Entities" claims to those of Clambakes other creditors. As Mr. Roos did not attempt to go down that road, see App. 0115-16, Pepper did not come into play. Consistent with Pepper, Debtor's confirmed Second Amended Plan of Reorganization that assigns the Associations' claims a higher priority than the Related Entities' claims. See id.

> part, for the sake of treating legitimate claimants to the estate equitably. But the scope of a bankruptcy court's equitable power must be understood in the light of the principle of bankruptcy law . . . that the validity of a claim is generally a function of underlying [State] substantive law. Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides.

Id. at 24-25. Thus, "the fact that a proceeding is equitable does not give the judge a free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness, however enlightened those views may be." In re Chicago, Milwaukee, St. Paul & Pac. R.R., 791 F2d 524, 528 (7th Cir. 1986) (Posner, J.). "[I]f the bankrupt is solvent, the task for the bankruptcy court is simply to enforce creditors' rights . . ." Id.; accord In re Kaplan, 104 F.3d 589, 597-98 (3d Cir. 1997); see also In re SPM Mfg. Corp., 984 F.2d 1305, 1311 (1st Cir. 1993) ("The bankruptcy court has the equitable power [under § 105(a)] "to issue any order, process, or judgment that is necessary or appropriate to carry out provisions" of the Code. However, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code…" …[T]he bankruptcy court has no equitable power to deprive creditors of rights or remedies available to them under the Code. ") *(*citing Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206-07 (1988)) (internal citations omitted).

Debtor's reliance on Section 105 of the Code and Pepper v. Litton is misplaced. The Associations' claims are controlled by Rhode Island law. The Bankruptcy Court correctly found that Debtor trespassed, and the only issue to be determined is the amount of the Associations' damages.

D. THE CONDOMINIUM ASSOCIATIONS REQUESTED A FINDING ON LIABILITY BUT WERE NOT ABLE TO CREATE A RECORD OF THE "TOTALITY OF CIRCUMSTANCES."

Both sides argue that a federal court cannot grant summary judgment on an independent ground without first giving a party notice of its intent to do so.[6] Debtor argues that the Bankruptcy Court violated this principle in finding that Debtor was a trespasser; the Associations assert that the Bankruptcy Court violated this rule by disallowing the Associations' claims based on the "totality of the circumstances." The parties' positions on this issue are qualitatively different. The Condominium Associations requested a finding on liability; Debtor did not argue either the "totality of the circumstances" or the "single satisfaction" rule.

1. <u>The Associations Requested a Finding on Liability</u>.

The Condominium Associations did not move for summary judgment. However, they affirmatively argued that "DEBTOR TRESPASED ON CONDOMINIUM PROPERTY FOR SEVEN YEARS," App. 0248, and asserted in their memorandum that "the matter should proceed for trial for determination of damages." App. 0249. The Condominium Associations repeated these contentions in their conclusion that:

> The Condominium Associations are entitled to judgment on liability and this matter should proceed to trial for determination of the associations' damages.

App. 261. Debtor responded to these arguments. While the Associations did not file a formal motion titled "Motion For Summary Judgment" on the issue of liability, Debtor was on notice of the relief requested and Debtor responded to the arguments made. Debtor had the opportunity to put its best foot forward on the issue. Meanwhile, a court faced with a motion for summary

---

[6] The Condominium Associations cite <u>Berkovitz v. Home Box Office, Inc.</u>, 89 F.3d 24, 29 (1st Cir.1996). Debtor cites different cases but the same basic principle that summary judgment ordinarily should not be applied unless the party against who summary judgment is threatened has an opportunity to put its "best foot forward" on the dispositive issue. <u>See</u> Debtor's Brief at 33-34 n. 37.

judgment always has the discretion to make partial findings on issues that are not genuinely in dispute. See Fed. R. Civ. P. 56(d); URI Cogeneration Partners, LP. v. Board of Governors for Higher Education, 915 F.Supp. 1267 (D.R.I. 1996) (Rule 56(d) permits courts to "bar certain legal arguments and affirmative defenses if it is clear that they run counter to the governing law."). The Bankruptcy Court acted within its authority under Rule 56(d) in finding that Debtor was a trespasser as a matter of undisputed fact and law. Although the court's ultimate conclusion on *res judicata* (claim preclusion) was wrong, it analyzed the trespass issue correctly.

2. Debtor Did Not Argue for, and the Facts Do Not Compel, Summary Judgment Based on the "Totality of Circumstances."

Debtor did not move for summary judgment based on the "totality of the circumstances." Neither party made a record of the totality of the circumstances. The Condominium Associations, unlike Debtor with respect to liability, were denied an opportunity to put their "best foot forward" on this issue.

For example, Debtor claims in State Court to have had gross sales of $28 million dollars since 1998. App. 1115. Although Debtor produced different figures in this bankruptcy, Debtor made millions of dollars through its unlawful use and occupation of the unit owners property. Even if the Court were to except what Debtor claims to have paid IDC Properties in rent and IDC Inc. in marketing and management fees, Debtor still made millions by using the condominium property without permission. Judge Votolato did not have any of the real facts before him and his findings that "anything additional in this bankruptcy would be clearly overkill and an unjust enrichment" do not rest on any evidence. App. 0142.[7] Judge Votolato seems to have said, as a

[7] With no record of the totality of the circumstances, Debtor asks the Court to engage in a mindreading exercise about what Judge Votolato was or was not aware. The reality is that we don't know what facts Judge Votolato was considering in assessing the "totality of the circumstances." We do know that summary judgment is not a fact-finding exercise and that if the facts could lead to more than one conclusion, summary judgment cannot be granted. See Blanchard v. Peerless Ins. Co., 958 F.2d 483, 488 & n.6 (1st Cir. 1992).

matter of Rhode Island law, that landowners have no legal remedy to recover the substantial value of a person's unlawful use and occupany of their land if a wrongdoer knowingly constructs a building on the land in the face of a known claim. That is not Rhode Island law. Campbell v. Lederer Realty Corporation, 47 R.I. 8, 129 A. 732 (1925).

E. NO IDC ENTITY HAS SATISFIED ANY JUDGMENT IN TORT

The Bankruptcy Court plainly erred in introducing to this dispute the principle that "there may be but one satisfaction in tort." While Debtor finds itself compelled to defend that principle, it has no application. The principle that a plaintiff is "entitled to only one satisfaction of the tort, even though two or more parties contributed to the loss" is a rule of joint liability. It is black letter law that an injured party who has been made whole has no further remedy for the same injury after he has been made whole. Here, there is no evidence of what is the associations' "total injury" or that they have been made whole.

The only judgment in the ten year history of this longstanding condominium dispute is the Amended Partial Judgment entered by Judge Nugent pursuant to Rule 54(b) on May 25, 2005. App. 238-239. No money judgment has entered in favor of anyone. No judgment has been satisfied. The Associations claims against IDC Inc., IDC Properties, Inc. and Thomas R. Roos are pending in Newport Superior Court. Judge Thunberg recently assigned those claims to the trial calendar. Debtor's argument turns on the false assumption that the value of the improvements were "awarded" as "compensatory damages." But this is not true. The improvements belong to the unit owners not as "damages" but rather because of the longstanding rule of fixtures that a party who builds in the face of a known claim does so at his peril and is not entitled to restitution for the value thereof. See Eastern Motor Inns, Inc. v. Ricci, 565 A.2d 1265, 1272 (R.I. 1989), St. Sava Home v. Christopher, 537 A.2d 69,72 (Pa. Commw. Ct. 1988), 42 C.J.S. Improvements § 3 (1991) ("a permanent improvement placed on the land of another, by a

person having no title or interest therein, without the owner's consent, becomes a part of the realty and the property of the owner of the fee."); 41 Am. Jur. 2d, Improvements § 3 (2004).

F. IDC PROPERTIES HAD NO LEGAL AUTHORITY TO LEASE THE COMMON ELEMENTS TO DEBTOR

Debtor is also wrong it its claim that it was in rightful possession of the Reserved Area as a lessee of IDC Properties because IDC Properties owns three or four units in Goat Island South. Debtor's reliance on tenancy in common principles is misplaced.

The term "condominium" refers to a *statutory form* of real property ownership –like joint tenancies, life estates, fee tails, tenancies in common, are *common law forms* of real property ownership. See Town of Westerly v. Waldo, 524 A.2d 1117, 1119 (R.I. 1987); McConnell v. Wilson, 543 A.2d 249 (R.I. 1988).[8] Although the condominium form of ownership exhibits some features of a freehold and other features of a tenancy in common, a condominium is not either. A condominium is a creature of statute. The rights, remedies, and obligations among the parties are controlled by the Act, the applicable declaration, by-laws and other documents provided for under the Act.

A tenancy-in-common has no common law mechanism for shared control and management of the common estate. The Condominium Act, by contrast, specifically provides for the shared governance, control, management of the common elements through a unit owners association, which must be composed "exclusively of all the unit owners." RIGL § 34-36.1-3.01. The association may ordinarily regulate the "use, maintenance, repair, replacement and modification of common elements," "cause additional improvements to be made as part of the common elements" and "*lease . . . the common elements*." RIGL § 34-36.1-3.02(a)(6), (a)(7) &

[8] The hallmark of a condominium is that some portions of the real estate are designated for separate ownership (called "units") and the remainder is owned commonly (called "common elements). RIGL § 34-36.1-1.03(7)(i); see also McConnell v. Wilson, 543 A.2d 249 (R.I. 1989).

(a)(9). This is a major advantage of condominiums over the anarchy that often reigns in common law co-tenancies. Thus, while Debtor cites various cases for the proposition that co-tenants in common can freely improve and lease the common estate, those cases have no application here. Under the Act, individual unit owners have no individual right to improve and operate businesses on the common elements, or lease the common elements separate and apart from their units. RIGL § 34-36.1-2.07(e); see also Schwartzman v. Schoening, 41 Mass.App.Ct. 220, 669 N.E.2d 228 (1996). Only the association (or the association acting through its executive board) has the power to lease the common elements. RIGL § 34-36.1-3.02(a)(9), 3.03(a). Condominium unit owners cannot legally do what Debtor now claims that IDC Properties did—annex a portion of the common elements for its exclusive use, and build and lease a building on commonly owned property. Thus, in Goat Island South Condominium Association v. IDC Properties, Inc., N.C. 06-295, the Rhode Island Superior Court rejected the very same argument by IDC Properties. See Addendum [Decision, Slip Op. at 10 (R.I. Super. May 21, 2007) ("it is clear that the legal theory . . . based on the common law doctrine of tenancy in common has no basis in law . . .") (Thunberg, J.)]. After all, the condominium form of ownership would be implausible if every unit owner has the right to annex and develop the common elements on a "first-come-first-serve" basis.

G. THE UNIT OWNERS WERE IN ACTUAL POSSESSION OF THEIR UNITS AND THEREFORE WERE IN ACTUAL POSSESSION OF THE COMMON ELEMENTS

Debtor attempts to construct a defense out of a technical pleading requirement of early common law pleading that a plaintiff must prove actual possession. While Debtor's thesis ultimately relies on a flawed and uninformed understanding of the law of trespass and of common law pleading, see infra, the unit owners were in actual possession of the common elements of the condominium by virtue of their actual possession of their units. Moreover, they

re-entered on the property when their condominium associations filed suit asserting ownership in 1999. That suit was deemed filed in 1997 under the Tolling Agreement, and Debtor had actual knowledge of the associations' claims. App. 0355.

A condominium unit owner owns (1) an undivided and separate interest in some portions of the real estate (i.e., his "unit"), and (2) an undivided and common interest in the remainder of the condominium (i.e., the "common elements"). RIGL § 34-36.1-1.03(4), (7)(i), and (28). It follows that a unit owner who is in lawful and actual "possession" of his unit is also in lawful and actual "possession" of the common elements regardless of where he is physically standing. Unit owners do not need to constantly tread water to be in lawful "possession" of the swimming pool. Meanwhile, Debtor concedes that an owner's possession of part of a tract constitutes possession of the entire tract. <u>See</u> 87 C.J.S., <u>Trespass</u> § 22 ("The owner's possession of part of a tract of land not otherwise actually occupied extends to the whole").

Contrary to Debtor's contention that that IDC continuously occupied the Reserved Area from 1988 to 2005, <u>see</u> Debtor's Brief at 41-42, the Reserved Area was by all accounts an unimproved common element of the condominium prior to 1995, App. 272 (¶ 1.30), and remained unimproved until IDC Properties constructed the Regatta Club during 1998—after it signed the Tolling Agreement. App. 0355, 0465. Thus, what we have is a Debtor who entered on the common elements of the condominium in the face of a known claim against it's landlord's title and operated a business on that property for seven years without authority. The unit owners were in actual and lawful possession of their units and therefore were in actual and lawful possession of the common elements. Debtor was trespassing.

Moreover, under ancient and contemporary authorities, a landowner does not have to breach the peace to enter on his property. Since at least the days of Blackstone, a party has been

entitled to make "a formal, but peaceable, entry on his land by declaring that thereby he takes possession." 3 Blackstone, Commentaries on the Laws of England, 174-75 (1768). The commencement of a lawsuit asserting ownership has long been deemed to be the equivalent of an actual entry on the property. See Reichard v. Chicago, B. & Q. R. Co., 231 Iowa 563, 1 N.W.2d 721, 575 (1942) (commencing an action is the equivalent of a formal re-entry upon the land after a breach of a condition subsequent); Firth v. Los Angeles Specific Land Co., 28 Cal. App. 399, 152 P. 935, 405 (1915) (same). Unlike Debtor and its affiliated companies, the unit owners have never breached the peace. They have steadfastly and peacefully pursued their legal remedies through lawful judicial process. Debtor used and occupied the condominium's property for seven years under a false claim of possession under an invalid lease. Whether considered in tort or quasi-contract, Debtor is obligated to pay the true owners the fair value of its use and occupation.

### H. A PLAINTIFF MAY RECOVER DAMAGES FROM A TRESPASSER WHO WRONGLY DENIES HIM POSSESSION OF HIS OWN PROPERTY

Debtor misstates the law of trespass. In the law of real property, the term "possession"—particularly as it is used in older cases—refers to "lawful possession.” In the familiar "bundle of sticks" metaphor, "lawful possession" is one stick in the bundle that may be transferred separately from legal title. An ordinary lease, for example, is a transfer of the "right of possession" separate from legal title. Life tenants such as in Daniels v. Coleman, 169 S.E.2d 593 (S.C. 1964) similarly have the possessory right; the remaindermen do not. Possession also may be “actual or “constructive.” Constructive possession is the right of exclusive possession that inheres from fee title. See Mailloux v. Jordan, 50 R.I. 183, 146 A. 480, 481 (1929) (“It is a rule

of general and uniform observance that the legal title to land draws to it the legal possession of the same.”).[9]

A trespass is an interference with the *right of* possession. See Adams v. Cleveland-Cliffs Iron Co., 237 Mich.App. 51, 59, 602 N.W.2d 215 (1999) ("[T]respass is an invasion of the plaintiff's interest in the exclusive possession of his land . . . .”); Cargal v. Cargal, 750 S.W.2d 382, 385 (Tex.App. 1988) (“Trespass requires only proof of interference with the right of possession.”); Dobbs on Torts, § 52 (West 2000) (“The common law recognized and protected . . . [t]he right to exclusive possession of land, that is, the right to exclude others from the land . . . .”). Thus, the cases widely observe that “to bring an action for trespass, the party must have had **title or legal possession** of the land when the acts complained of were committed.” Dugan v. Jensen, 244 Neb. 937, 941, 510 N.W.2d 313 (1994) (emphasis added); see also Cullins v. Foster, 171 S.W.3d 521, 531 (Tex. App. 2005); The Mable Cleary Trust v. the Edward-Marrlah Muzyl Trust, 262 Mich.App. 485, 508 (2004). Indeed, it is a criminal offense in Rhode Island to "remain upon the land of another or upon the premises . . . of any person *legally entitled to the possession of that domicile*." RIGL § 11-44-26(a) (emphasis added).

There is no rule that people can enter, build on, or occupy other people's land simply because the true owner is not physically there—or that if they do, the owner has no right to recover money damages. See 1 Dobbs on Remedies, § 5.1 at 709 (West 1993) ("[T]here is an interest in the exclusive right to possession. The trespasser who occupies an owner's vacation cottage or farmhouse in the owner's absence and the neighbor whose garage encroaches six inches are examples [of trespass].") Debtor's argument is circular. According to Debtor, a person who takes actual but wrongful possession of another's property is a trespasser but the

[9] Regardless of the unit owners' *actual possession* of the common areas by virtue of their possession of their units, the unit owners were always in *constructive possession* of the Reserved Area that remained undeveloped and unoccupied until Debtor's trespass began in 1998.

wrongful act itself furnishes the trespasser with a complete defense. In this reality, one could never recover money damages to redress the most egregious form of trespass (i.e., ouster).

The law of trespass, and the older line of cases on which Debtor relies, requires merely that the plaintiff have the *right to possess* the property.[10] Persons with a possessory interest (such as fee owners, life tenants, joint tenants, lessees, and adverse possessors) may sue for trespass. Persons without a possessory interest (licensees, vendees, mortgagees, easement holders) may not. The common law "possession" requirement in this regard informs who can sue and be sued but does not provide a defense to brazen intruders on real property.[11]

Debtor also overlooks the historical context of the early cases from the various jurisdictions on which it relies. Common law pleading had highly technical pleading requirements and there was enormous variation among the procedures followed in the several

---

[10] Debtor relies on an older line of cases, for the proposition that "the only issues in a trespass action are 'the possession of the plaintiff and the acts of trespass by the defendant.'" Debtor's Brief at 40 (citing Carpenter v. Logee, 24 R.I. 383, 53 A. 288, 288 (1902) and Wood v. Essex, 94 A. 666 (R.I. 1915), which emanate from Sayles v. Mitchell, 22 R.I. 238, 47 A. 320 (1900). Carpenter v. Logee, 24 R.I. 383, 53 A. 288, 288 (1902) holds that possession of part of a tract constitutes possession of the entire tract and actually defeats Debtor's position because the condominium unit owners were in actual and lawful possession of the rest of the condominium. In Wood v. Essex, 94 A. 666 (R.I. 1915), the Court held that a trespasser could not defend a trespass claim by the true owner based on adverse possession by a third party. These cases merely stand for the proposition that the plaintiff must prove the right to possession (i.e., a possessory interest) and the fact of the defendant's trespass (i.e., entry on the land) and that *adverse possession* is a common law defense to an action for trespass by the true owner.

[11] Debtor originally cited a line of cases that confirmed these principles. See, i.e., Carroll v. Rigney, 23 A. 46, 47 (R.I. 1885) (landlord cannot sue tenant for trespass); Hathaway v. Osborne, 55 A. 700, 701 (R.I. 1903) (same); Mallinoux v. Jordan, 50 R.I. 183, 146 A. 480, 481 (1929) (vendee under executory sales contract cannot sue for trespass); Waterman v. Matteson, 4 R.I. 539, 543 (1857) (mortgagee cannot sue mortgagor); Attorney General v. Dime Savings Bank of New York, FSB, 596 N.E.2d 1013, 1015-1016 (Mass. 1992) (mortgagee-mortgagor); Robert's River Rides v. Steamboat Dev. Corp., et al. 520 N.W.2d 294, 302 (Iowa 1994) (licensee, as opposed to a tenant, cannot sue for trespass because licensee has no enforceable possessory interest in property). The common denominator among these cases was that the claims were asserted either *by a party without a possessory interest* (such as a mortgagee or a licensee) or *against a person with a possessory interest* (such as a tenant or mortgagor). They all support the proposition that a trespass plaintiff must have the right of lawful possession, not necessarily actual possession. Debtor abandoned reliance on these cases in its present appeal.

Debtor similarly relied on Restatement (Second) of Torts, § 157(a), which recognizes that a mere "occupant," even in wrongful possession, may have superior rights to those of another wrongdoer. However, it is black letter law that a person in wrongful possession derives no rights against *the true owner or others with a superior right of possession* unless his adverse possession ripens into ownership. See id., § 157, cmt b; see also 87 C.J.S., Trespass §§ 15 and 23 ("[wrongful] possession is sufficient against all the world, *except the rightful owner, or one who can show better title, or right to possession.*") (emphasis added).

States. For example, some States permitted a plaintiff to recover the fair value of defendant's use and occupation during the time that he put the plaintiff out of possession in the same ejectment proceeding that he sought to recover possession. Other States required that the plaintiff bring a separate action for damages following a judgment for possession. See 1 Dobbs on Remedies, § 5.10 at 803-04 (West 1993) ("ejectment was a species of trespass claim, open to the plaintiff who could show legal title and a right to immediate possession. At one time, due to the maze of fictions used in the common law development of the ejectment action, the plaintiff had to bring a separate suit for damages, which were traditionally called *mesne profits*. The second action is not now required and the damage claim can be asserted in the ejectment action.").

Meanwhile, Rhode Island abolished in 1860 any common law pleading requirement in trespass and ejection actions that a plaintiff prove an "actual entry" under his title. See P.L. 1860, c. 359; see also McCann v. Rathbone, 8 R.I. 297, 300 (1866) (stating that the 1860 statute has "no meaning other than to provide that [an action for trespass and ejectment] may be brought by any plaintiff with a right of entry.").[12] Rhode Island has never adhered to a rule that a landowner has no legal remedy against one who physically ousts him from his own property.

In Campbell v. Lederer Realty Corporation, 125 A. 222 (1924) (*Campbell III*) , a realty company claiming title under a void deed remained in unlawful possession of certain commercial property for six years. The Supreme Court held that the true owner was entitled to an accounting of the rents and profits that the realty company collected while it was in unlawful possession of the property, and also that it was not entitled to any restitution for improvements that it made to the property knowing that its title was in dispute. See Campbell v. Lederer Realty Corporation, 47 R.I. 8, 129 A. 732 (1925) (*Campbell IV).*

---

[12] The 1860 statute was re-codified over the years but has remained basically in tact. See G.L. 1872, c. 214, § 47, G.L. 1909, ch 293, § 52; G.L. 1923, ch. 342, § 52; G.L. 1938, ch 538, § 12. Today, it is codified at RIGL, 1956 § 34-20-2 (1997 Reenactment).

In Davis v. Girard, 70 R.I. 291, 38 A.2d 774 (1944), in explaining the scope of equity jurisdiction to declare title prior to a 1940 amendment to the statutory procedure to quiet title, the Rhode Island Supreme Court explained that an owner out of possession had a remedy at law in ejectment to obtain both possession and rents and profits provided that owner proved title or superior right of possession to the defendant.

If there were any room for further doubt, this Court need not look beyond Rhode Island Economic Development Corporation v. The Parking Company, L.P., 909 A.2d 943, 945 (R.I. October 24, 2006), a case decided shortly after the parties argued this case to the Bankruptcy Court. In The Parking Company, the EDC seized a parking garage adjacent to the State Airport under the color of its condemnation power. The Rhode Island Supreme Court, however, later concluded that the EDC invalidly exercised of its powers and wrongfully took possession of and operated the parking garage. On remand, the Superior Court initially held that The Parking Company could not claim trespass damages during the period that the EDC maintained possession under color of title, albeit wrongful title. However, the Rhode Island Supreme Court reversed. The Supreme Court held that the true owner was entitled to be compensated for the period that the EDC was in wrongful albeit actual possession of the parking garage property. Id. at 945, citing, Campbell v. Lederer Realty Corporation, supra. The EDC's actual, but wrongful, possession was no defense.

This is really not hard. If someone breaks and enters your vacation home in New Hampshire or builds a house on your empty lot in Iowa, he is trespassing on your property no matter where in the world you are standing and regardless of whether you have ever set foot in New Hampshire or Iowa. All that matters is that you have the right to exclusive possession of the property. A trespass is an invasion of that right. The true owner, in addition to recovering

possession, may also recover money damages. The trespasser has no defense to say that his own wrongful trespass bars recovery by the true owner. The Bankruptcy Court correctly decided that Clambakes was a trespasser. This matter should be remanded for trial on the issue of damages.

**CONCLUSION**

For the reasons originally stated in Appellants' Brief and further stated above, the Decision of the Bankruptcy Court dated January 24, 2007 should be reversed except as to the trespass finding.

GOAT ISLAND SOUTH CONDOMINIUM ASSOCIATION, INC., AMERICA CONDOMINIUM ASSOCIATION, INC., CAPELLA SOUTH CONDOMINIUM ASSOCIATION, INC., HARBOR HOUSES CONDOMINIUM ASSOCIATION, INC.

By their Attorneys

s/ William R. Grimm
William R. Grimm (#1938)
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600 (FAX)

s/ Charles D. Blackman )
Charles D. Blackman (#5522)
155 South Main Street, Suite 101
Providence, Rhode Island 02903
(401) 455-1445
(401) 351-9653 (FAX)

**CERTIFICATION OF SERVICE**

To: Michael Levin, Esq.
Winograd Shine & Zacks
123 Dyer Street
Providence, RI 02903

Paul Sweeney, Esq.
Linowes and Blocher LLP
200 Wisconsin Avenue, Suite 800
Bethesda, MD 20814-4842

I hereby certify that I caused to be delivered by electronic means a copy of this Brief to counsel of record, as above, on the 8th day of June, 2007.

______________________________

# ADDENDUM

Decision, Goat Island South Condominium Association v. IDC Properties, Inc., N.C. 06-295(R.I. Super. May 21, 2007)_(Thunberg, J.)

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

NEWPORT, SC. SUPERIOR COURT

GOAT ISLAND SOUTH CONDOMINIUM ASSOCIATION, INC. :
:
v. : C.A. No.: 06-0295
:
IDC PROPERTIES, INC. and THOMAS R. ROOS :

DECISION

THUNBERG, J. Before this Court is plaintiff Goat Island South Condominium Association, Inc.'s ("Plaintiff") motion to dismiss or, alternatively, for summary judgment on the amended counterclaim filed by defendant IDC Properties, Inc. ("Properties" or "Defendant"). The Court has reviewed the applicable law, together with the parties' legal memoranda and oral arguments, and now issues this written decision.

Facts and Travel

The instant matter pertains to a condominium area situated on Goat Island, and is a by-product of a prior pending action, America Condominium Ass'n v. IDC, Inc., NC 99-0232. That case, which was filed by three, so-called, "sub-condominium" associations[1] against IDC, Inc. ("IDC"), Properties, and Thomas R. Roos ("Roos"), has culminated in two Supreme Court decisions, America Condominium Ass'n v. IDC, Inc., 844 A.2d 117 (R.I. 2004) ("America I") and America Condominium Ass'n v. IDC, Inc., 870 A.2d 434 (R.I. 2005) ("America II"). The facts and travel pertinent to this case are summarized below, with additional facts supplied as needed in the legal analysis.

NEWPORT SUPERIOR COURT FILED JANE H. ANTHONY, CLERK
MAY 21 AM 11:04

[1] More specifically, the three plaintiff condominium associations were America Condominium Association, Inc., Capella South Condominium Association, Inc., and Harbor Houses Condominium Association, Inc.

On January 13, 1988, Globe Manufacturing Co. ("Globe") recorded a declaration of condominium designated as "Goat Island South – A Waterfront Condominium" in the Land Evidence Records of the City of Newport. Globe subsequently transferred its interest in Goat Island South to IDC, which, in turn, transferred its interest to Properties on October 19, 1994. As previously noted, Properties, along with its president, Roos, are defendants in the case now before the Court. In 1998, Properties constructed a function center known as the Newport Regatta Club ("Club"), which IDC Clambakes, Inc. ("Clambakes") operated. IDC and Clambakes, like Properties, were incorporated by Roos, who also serves as the president and sole shareholder of both entities. Properties also owns four residential units in the condominium area. Plaintiff is the unit owners' association and governing body of Goat Island South condominium complex.

In America Condominium Ass'n v. IDC, Inc., NC 99-0232, the plaintiff condominium associations maintained that defendants IDC, Properties, and Roos had improperly extended their development rights on certain parcels located[2] within the condominium area, including where the Club was located, and that because these development rights had expired, title to the common property became vested in the plaintiffs in fee simple. The Rhode Island Supreme Court in America I declared that the defendants did not have legal title to the disputed parcels of land located within the condominium area. America I, 844 A.2d at 131-33. However, the Supreme Court remanded the case to this Court for an accounting on the narrow issue of payments made by defendants IDC, Properties, and Roos for common expenses on those parcels after the

[2] The three parcels in dispute consisted of the so-called "West Development Unit," South Development Unit," and "North Development Unit," also referred to as the "Reserved Area." America I, 844 A.2d at 120. The "Reserved Area" is where Properties constructed the Club in 1998.

declarant's development rights had expired.[3] Id. at 134-35. These holdings were reaffirmed and clarified by the Court in America II. More specifically, with respect to the issue of title/ownership of the disputed parcels, the Court held that they "always were common elements, subject to the exercise of said development rights, and title rested with the unit owners in common ownership from the creation of the condominium[,]" but since the defendants failed to create valid units on the common elements at issue within the meaning of the Rhode Island Condominium Act ("Condominium Act")[4] before December 31, 1994, their development rights expired. America II, 870 A.2d at 439-43.

On remand, the plaintiff condominium associations moved for entry of partial judgment consistent with the Supreme Court's directive. The plaintiffs also sought, and were granted, an execution for possession of the parcels at issue in the America cases, including the property on which the Club was located. After their attempts – both with this Court and with the Supreme Court – to stay the resulting judgment were unsuccessful, Properties and Roos recorded in 2005 a "First Amendment" to the Original Condominium Declaration[5] which purported to exercise the declarant rights. Plaintiff commenced this action seeking a declaration that the 2005 "First Amendment" to the Original Condominium Declaration was void, as well as damages for slander of title. Plaintiff subsequently moved for partial summary judgment with respect to the claim for declaratory relief, which was granted by this Court on September 19, 2006.

---

[3] In a footnote, the Court articulated that "this accounting is confined to the common expenses paid by defendants on the master units after the expiration of their development rights on December 31, 1994. It does not include any profits that the defendants may have earned from its operation of the Newport Regatta Club." America I, 844 A.2d at 135 n.24. That sole remaining issue – an accounting in accordance with the Supreme Court's opinion in America I – is still pending before this Court.

[4] R.I. Gen. Laws § 34-36.1-1.01 *et seq.*

[5] The Original Condominium Declaration was amended in March 1988 resulting in a First Amended and Restated Declaration ("FAR Declaration"). Under the Original Declaration, the declarant had until 2037 to exercise its development rights. The FAR Declaration, among other things, reduced the time period for the exercise of the declarant's development rights from expiring in 2037 to expiring in 1994.

Just prior to the Court's ruling on Plaintiff's motion for partial summary judgment, Properties filed an amended counterclaim asserting counts for a declaration stating that it has right to possession of the "North Development Unit," or "Reserved Area, where the Club is located (Count II), wrongful ejectment (Count III), unjust enrichment (Count IV), and quasi-contract (Count V).[6] Plaintiff now moves to dismiss the counterclaim filed by Properties, and has submitted a memorandum and exhibits in support of its motion. Properties has filed an objection, along with memorandum and exhibits. Additionally, this Court heard oral arguments from the parties with respect to this motion during a hearing held on December 4, 2006.

**Standard of Review**

In determining whether to grant a Rule 12(b)(6) motion to dismiss, this Court "assumes the allegations contained in the complaint to be true and views the facts in the light most favorable to the plaintiffs." Giuliano v. Pastina, Jr., 793 A.2d 1035, 1036-37 (R.I. 2002) (quoting Martin v. Howard, 784 A.2d 291, 297-98 (R.I. 2001)). The Court should not grant the motion "unless it appears to a certainty that [the party] will not be entitled to relief under any set of facts which might be proved in support of [their] claim." Id. at 1037 (quoting Bragg v. Warwick Shoppers World, Inc., 102 R.I. 8, 227 A.2d 582, 584 (R.I. 1967)). When ruling on a Rule 12(b)(6) motion, the Court may consider any documents attached to the pleadings. Bowen Court Assocs. v. Ernst & Young, 818 A.2d 721, 725-726 (R.I. 2003). "The mere fact that a pleading mentions or refers to a document – without attaching it to the pleading – does not cause that document to be incorporated by reference as if the pleader had appended it to the pleading. Id. A motion, relying on documents outside the pleadings, may be converted to a motion for summary

[6] Properties also asserted a count seeking a declaration that the original fifty-year reservation of development rights under the Original Condominium Declaration was reinstated by the America decisions (Count I). However, it concedes that this claim is moot in light of the Court's ruling on Plaintiff's motion for partial summary judgment. See Def.'s Mem. at 10.

judgment; however, the parties must be afforded notice thereof and "given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Id.

"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. Burrillville Racing Ass'n, 603 A.2d 317, 320 (R.I. 1992) (citations omitted); Super. Ct. R. Civ. P. 56(c). When the moving party sustains its burden, "[t]he opposing parties will not be allowed to rely upon mere allegations or denials in their pleadings. Rather, by affidavits or otherwise, they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998) (citing St. Paul Fire & Marine Ins. Co. v. Russo Bros., Inc., 641 A.2d 1297, 1299 (R.I. 1994)).

During a summary judgment proceeding "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano, 603 A.2d at 320 (citing Lennon v. MacGregor, 423 A.2d 820, 822 (R.I. 1980)). "Thus, the only task of a trial justice in ruling on a summary judgment motion is to determine whether there is a genuine issue concerning any material fact." Capital Props. v. State, 749 A.2d 1069, 1080 (R.I. 1999) (citing Palmisciano, 603 A.2d at 320). "'Summary judgment should be granted only if an examination of the pleadings, affidavits, admissions, answers to interrogatories, and other materials viewed in the light most favorable to the party opposing the motion reveals no genuine issue of material fact.'" Stone v. Green Hill Civic Ass'n, Inc., 786 A.2d 387, 389 (R.I. 2001) (quoting Nichola v. John Hancock Mut. Life Ins. Co., 471 A.2d 945, 947-48 (R.I. 1984)).

## Analysis

### *Count II*

As previously mentioned, Properties contends in Count II of its amended counterclaim that it is entitled to possession of the "North Development Unit," or "Reserved Area." Specifically, Properties argues that the Original Declaration, the First Amended and Restated Declaration, and the Sixth Amendment to the First Amended and Restated Declaration provide that the "grantors [IDC Properties, Inc. and its predecessors] retained the right to perfect the rights to use and enjoy the North Master Unit by the execution and recording of an amendment . . . ." Def.'s Mem. at 12. It also maintains that the validity of these documents was not challenged in America I. Id. Thus, according to Properties, since the deeds by which all of the unit owners took title to their units reference the Original Declaration, "as amended," the parties entered into a contract under which Properties is entitled to possession of the "North Development Unit," or "Reserved Area." Id. at 10-12.

Properties correctly asserts that the condominium declaration is akin to a contractual agreement. Generally, a condominium declaration is the instrument that "defines the rights as among the condominium owners, the condominium association, and the developer." Patrick Rohan & Melvin Reskin, Real Estate Transactions: Condominium Law and Practice, § 3.02 (2006). Because the Declaration functions as a contract, this Court will apply contract principles upon reviewing said instrument. See In re Rosteck, 899 F.2d 694, 696 (7th Cir. 1990); Johnson v. Fairfax Vill. Condo. IV Unit Owners Ass'n, 548 A.2d 87, 91 (D.C. 1988) ("[t]he condominium instruments . . . are a contract that governs the legal rights between the Association and unit owners").

"'Contract interpretation is a question of law . . . .'" 1800 Smith St. Assocs., LP v. Gencarelli, 888 A.2d 46, 52 (R.I. 2005) (quoting Lajayi v. Fafiyebi, 860 A.2d 680, 686 (R.I. 2004)). In reviewing ambiguity in contractual language, this Court will "view the agreement[] in [its] entirety and give the contractual language its 'plain, ordinary and usual meaning.'" Id. (quoting Lajayi, 860 A.2d at 686). Thus, this Court will review the Original Declaration and subsequent amendments to determine whether Properties, as the successor declarant of Goat Island South, retained "the right to perfect the rights to use and enjoy the "North Development Unit" by the execution and recording of an amendment.

A review of the relevant documents convinces this Court that the only rights reserved by declarant with respect to the "North Development Unit," or "Reserved Area," were development rights. Indeed, paragraph six of the Original Declaration, in pertinent part, states:

> "(b) The Declarant also *reserves the right to convert* the Reserved Area into a Master Unit owned by the Declarant on or before December 31, 2037 . . . . Such conversion shall be effected by the Declarant executing and recording an amendment to this Master Declaration . . . .
>
> (c) In the event that the Reserved Area is converted into a Master Unit, such Master Unit (and any Unites created within such Master Unit) shall not be restricted exclusively to residential use, any may be used for any purposes permitted by applicable law, ordinance or regulation . . . .
>
> (d) Provided that the Reserved Area has been converted into a Master Unit, the Declarant also reserves the right, through December 31, 2037, to construct improvements on the Reserved Area and submit the Reserved Area to a Declaration of Condominium, thereby creating a condominium containing not more than 315 Units . . . ."

Def.'s Ex. A at ¶ 6.4. (emphasis added). As noted supra note 5, the First Amended and Restated Declaration reduced the time period for the exercise of the development rights from expiring on December 31, 2037 to expiring on December 31, 1994. Def.'s Ex. C at ¶ 6.3. The relevant portions of that paragraph provide as follows:

> "(b) The Declarant also *reserves the right to convert* the Reserved Area into a Master Unit owned by the Declarant on or before December 31, 1994 . . . . Such conversion shall be effected by the Declarant executing and recording an amendment to this Master Declaration . . . .
>
> (c) In the event that the Reserved Area is converted into a Master Unit, such Master Unit (and any Unites created within such Master Unit) shall not be restricted exclusively to residential use, any may be used for any purposes permitted by applicable law, ordinance or regulation . . . .
>
> (d) Provided that the Reserved Area has been converted into a Master Unit, the Declarant also reserves the right, through December 31, 1994, to construct improvements on the Reserved Area and submit the Reserved Area to a Declaration of Condominium, thereby creating a condominium containing not more than 315 Units . . . ."

Id. (emphasis added).

Properties attempted to exercise its development rights on December 29, 1994, two days before they expired, by executing and recording the Sixth Amendment to the First Amended and Restated Declaration. Def.'s Ex. I at ¶¶ 1-4. More specifically, that document states "[t]he North Development Unit (formerly known as RESERVED AREA) comprising the air space over the land . . . is hereby added to the condominium." Id. at ¶ 1. However, as noted by the Supreme Court in America II:

> "[t]he amendment . . . complied with neither the substantial completion requirement of the [Condominium] Act in effect in 1988 nor the 1991 amendment providing for land-only units. Thus, IDC Properties again failed to establish a valid unit in the North Unit. *Its development rights since have expired* and, without a valid unit, it cannot exercise any rights to make improvements or alterations."

870 A.2d at 441-42 (emphasis added).

Clearly, as our Supreme Court concluded, the Original Declaration and the First Amended and Restated Declaration, reserved for the declarant the right to exercise its "development rights." However, relevant to Defendant's argument, the language cited is noticeably silent as the issue of right to "possession" or "use and enjoyment" of the "Reserved

Area." As such, there is nothing in the documents referenced by Defendant which indicates that it is somehow entitled to possession of this property. To accept Defendant's contention would not only require this Court to essentially rewrite the master condominium declaration, but it would also compel the Court to disregard our Supreme Court's determination that the rights reserved by the declarant were, indeed, development rights. The Court declines to do either.

***Count III***

In Count III, Properties – without providing the Court with any authority as to the basis and source of this legal theory – states a claim for "wrongful ejectment." Specifically, Properties asserts that as an owner of residential units within the condominium area, it is a "cotenant of the Unit Owners in the area of the North, South and West Master Units deemed by the Supreme Court to be part of the common elements of the Condominium." Def.'s Countercl. at ¶ 261. According to Defendant, it "had and has the right to use and occupy the area of the South, West and North Master Units . . . ." Id. at ¶ 262. Thus, Properties concludes that it was "wrongfully ejected . . . from the area known as the North Master Unit" when the plaintiffs in the America cases sought and obtained an execution for possession of the "West Development Unit," South Development Unit," and "North Development Unit." Def.'s Mem. at 14. Plaintiff counters that, pursuant to the Condominium Act, the common elements at issue are subject to the regulation and control of the elected Executive Board of the condominium association, and that unit owners have no individual right to exclusive possession of those areas. See Pl.'s Mem. at 10-12.

Defendant's claim is premised upon the theory that "there is a right of action between tenants in common when one or more of the owners of such common property excludes a co-tenant therefrom." Def.'s Mem. at 15 (citing Almy v. Daniels, 15 R.I. 312, 317, 4 A. 753, 757 (1886)). However, this argument presupposes that the rights of condominium unit owners and

tenants in common are one and the same. More precisely, it would require this Court to conclude that unit owners, like tenants in common, are entitled to undivided possession of all common owned property located within a condominium complex. See 4 Thompson on Real Property, Tenancies in Common, § 32.07(d) (1994) (stating that tenants in common are entitled to whole possession of the commonly owned estate).

However, while it is true that "the purchaser of a condominium acquires full title to such buyer's unit, plus an undivided interest in common areas and facilities," see id. at Condominiums and Cooperatives, § 36.04(b), "[u]nit owners' rights in common areas are analyzed with a primary reliance on the relevant condominium act rather than on the common-law concept of tenancy in common . . . ." See 15A Am. Jur. 2d Condominiums and Cooperative Apartments § 32 (2000). Thus, it is clear that the legal theory asserted by Defendant in Count III of its amended counterclaim – based on the common law doctrine of tenancy in common – has no basis in law and fails to state a claim for which relief may be granted.

***Counts IV and V***

Finally, Properties has asserted claims for unjust enrichment (Count IV) and quasi-contract (Count V). According to its counterclaim, "[t]itle to real estate with a value between $15 and $25 million was given to the unit owners of the Condominium by the Supreme Court." Def.'s Countercl. at ¶ 273. Defendant claims that Plaintiff has received an "unjust gain," and that "IDC [Properties] has had no opportunity to show the value of the improvements it made to the estate ["Reserved Area"] by constructing the Regatta Club." Def.'s Mem. at 17-18. Plaintiff counters that these counts were raised and decided by the Supreme Court in America I and, thus, are barred under the doctrine of res judicata.

As a preliminary matter, our Supreme Court has noted that "actions brought upon theories of unjust enrichment and quasi-contract are essentially the same." See R&B Elec. Co. v. Amco Constr. Co., 471 A.2d 1351, 1355 (citing Paschall's Inc. v. Dozier, 219 Tenn. 45, 53, 407 S.W.2d 150, 154 (1966)). In order to recover under quasi-contract for unjust enrichment, a plaintiff is required to prove three elements: (1) a benefit must be conferred upon the defendant by the plaintiff, (2) there must be appreciation by the defendant of such benefit, and (3) there must be an acceptance of such benefit in such circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof. Bouchard v. Price, 694 A.2d 670, 673 (R.I. 1997). However, as noted in America I:

> "'one who knows of a claim to land which he [or she] proposes to use as his [or her] own, proceeds at his [or her] peril if he [or she] goes forward in the face of protest from the claimant and places structures upon the land.' That is because 'the duty of the courts is to protect rights, and innocent complainants cannot be required to suffer the loss of their rights because of the expense to the wrongdoer.'"

844 A.2d at 134-35 (quoting Renaissance Dev. Corp. v. Universal Prop. Group, Inc., 821 A.2d 233, 238 (R.I. 2003) (internal citations omitted).

Defendant argues that it had no notice of a claim to title when it constructed the Club on the "Reserved Area." Def.'s Mem. at 19. Yet, in America I, our Supreme Court explicitly held:

> "[i]n reviewing defendants' assertions that plaintiffs should not benefit from defendants' development of the Newport Regatta Club, we observe that defendants commenced such development with full knowledge of plaintiffs' claims and after they voluntarily entered into the tolling agreement. Considering that they developed the Reserved Area at a time when they were on notice that their right to do so was in dispute, we conclude that they constructed the parcel at their peril and cannot now contend that equity should prevent plaintiffs from prevailing because of their expenditures."

844 A.2d at 135.

It is axiomatic that the doctrine of res judicata, or claim preclusion, "renders a prior judgment by a court of competent jurisdiction in a civil action between the same parties

conclusive as to any issues actually litigated in the prior action, or that could have been presented and litigated therein." Dibattista v. State, 808 A.2d 1081, 1085 (R.I. 2002) (citing ElGabri v. Lekas, 681 A.2d 271, 275 (R.I. 1996)). Courts employ the doctrine of res judicata to maximize judicial efficiency by eliminating duplicative litigation. Id. at 1086 (citing Perez v. Pawtucket Redevelopment Agency, 111 R.I. 327, 336, 302 A.2d 785, 791 (1973) ("res judicata is a vehicle whose goal is the elimination of repetitive litigation"), because such lawsuits only serve to waste the courts' finite resources. Res judicata also operates to prevent "multiple and possibly inconsistent resolutions of the same lawsuit." Id. (citing Gaudreau v. Blasbalg, 618 A.2d 1272, 1275 (R.I. 1993)). As a result, a party defeated in one action may not maintain a later lawsuit based upon a ground that properly could have been asserted in the previous litigation. See ElGabri, 681 A.2d at 275 (citing Wholey v. Columbian National Life Insurance Co., 69 R.I. 254, 262, 32 A.2d 791, 795, 33 A.2d 192 (1943)).

Moreover, our Supreme Court has adopted the "transactional" rule governing the preclusive effect of the doctrine of res judicata, as stated in the Restatement (Second) Judgments § 24. See ElGabri, 681 A.2d at 276. Under this rule, all claims arising from the same transaction or series of transactions which could have properly been raised in a previous litigation are barred from a later action. Id. Res judicata "serves as an 'absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in an earlier action.'" Garganta v. Mobile Village, Inc., 730 A.2d 1, 5 (R.I. 1999) (quoting ElGabri, 681 A.2d at 275).

In the case at bar, all three of the requirements set forth above are satisfied. First, the present parties are identical to, or are in privity with, the parties to the former action. Indeed, Defendant Properties is the same in both actions. Second, the issue presented – whether Defendant knew of a claim to land which it proposed to use as its own and placed a structure

upon the land in the face of protest – is identical. Finally, as previously noted, partial judgment consistent with the Supreme Court's directive in America I was entered in this Court. Since res judicata applies in this context, there is no genuine issue of material fact with respect to Counts IV and V of Defendant's amended counterclaim, and Plaintiff is entitled to judgment as a matter of law.

**Conclusion**

For the foregoing reasons, Plaintiff's motion to dismiss or, alternatively, for summary judgment on Defendant's amended counterclaim is granted.