**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

C.A. No. 07-0049-S

**IN RE:**

IDC CLAMBAKES, INC.,
**DEBTOR**

---

**GOAT ISLAND SOUTH CONDOMINIUM ASSOCIATION, INC., AMERICA CONDOMINIUM ASSOCIATION, INC., CAPELLA SOUTH CONDOMINIUM ASSOCIATION, INC., HARBOR HOUSES CONDOMINIUM ASSOCIATION, INC.,**
**APPELLANTS,**

**v.**

**IDC CLAMBAKES, INC.,**
**APPELLEE and CROSS-APPELLANT.**

---

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

---

**Debtor-Appellee and Cross-Appellant Brief in Response**

---

## Table of Contents

INTRODUCTION ........................................................................................................ 1

I. DEBTOR WAS A RIGHTFUL OCCUPANT OF THE RESERVED AREA AND THEREFORE NOT A TRESPASSER ........................................................................ 4

A. *Actual possession of the Reserved Area by Debtor and its affiliates, without interruption, precludes the Condominium Associations' Proofs of Claim for trespass* ........................................................................................ 4

B. *The Condominium Associations simply did not have possession adequate to claim that Debtor was a trespasser.* ........................................................................ 6

C. *Even under the Bankruptcy Court's standard, Debtor was not a trespasser.* ........................................................................................ 7

D. *The validity of the lease between IDC Properties and Debtor is irrelevant to determining whether Debtor was a trespasser.* ........................................................ 8

E. *Whether IDC Properties had the legal authority to lease the common elements has no bearing on Debtor's status while it occupied the reserved area.* ........................................................................................ 9

F. *Common law principles supplement the Condominium Act.* ..................................... 10

G. *A lessee who enters the property under a void or invalid lease may not be treated as a trespasser.* ........................................................................................ 11

II. THE BANKRUPTCY COURT ERRED IN *SUA SPONTE* GRANTING SUMMARY JUDGMENT TO THE CONDOMINIUM ASSOCIATIONS, NO MOTION HAVING BEEN MADE, DISCOVERY HAVING NOT BEEN COMPLETED AND DEBTOR HAVING DEFENSES NOT PRESENTED ................. 16

III. THE CONDOMINIUM ASSOCIATIONS CONFLATE LEGAL ELEMENTS OF TRESPASS WITH EQUITABLE POWERS OF THE BANKRUPTCY COURT ........................................................................................ 19

CONCLUSION ........................................................................................................ 23

## Table of Authorities

**Cases**

*Bennett v. Napolitano*, 746 A.2d 138, 141 (R.I. 2000) ............................................................. 13
*Buchanan v. Jencks*, 96 A. 307, 311 (R.I. 1916)........................................................................ 14
*Casey v. Mason*, 59 P. 252 (Okla. 1899)..................................................................................... 6
*Diamond Housing Corporation v. Robinson*, 257 A.2d 492, 495 (D.C. App. 1969) ............. 13, 14
*Diocese of Buffalo v. McCarthy*, 91 A.D.2d 213, 222 (N.Y.A.D. 4 Dept. 1983) ........................ 14
*Dutcher v. Owens*, 647 S.W.2d 948, 949 (Tex. 1983) ................................................................ 11
*Ferreira v. Strack*, 652 A.2d 965, 969 (R.I. 1995) ...................................................................... 13
*In re Adelphia Commc'ns Corp.*, 2007 WL 1673928, *31 (Bkrtcy.S.D.N.Y., June 11, 2007) .... 22
*In re Chicago, Milwaukee, St. Paul & Pac. R.R.*, 791 F.2d 524, 528 (7th Cir. 1986).................. 20
*In re Johnson*, 960 F.2d 396, 404 (4th Cir. 1992)........................................................................ 19
*Jardines Bacata, Ltd. v. Diaz-Marquez*, 878 F.2d 1555 (1st Cir. 1989)...................................... 18

*Katchen v. Landy*, 382 U.S. 323, 329 (1966) .......... 20, 21
*Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) .......... 21
*McConnell v. Wilson,* 543 A.2d 249 (R.I. 1988) .......... 11
*Penobscot Indian Nation v. Key Bank of Maine*, 112 F.3d 538, 562 (1st Cir. 1997) .......... 18
*Pepper v. Litton*, 308 U.S. 295 (1939) .......... 21, 22
*Providence Co. Sav. Bank v. Hall*, 13 A. 122 (R.I. 1888) .......... 9, 15
*Raleigh v. Ill. Dept. of Rev*., 530 U.S. 15 (2000) .......... 22
*Snyder v. Harding*, 80 P. 789, 792 (Wash. 1905) .......... 14, 24
*Southern Management Corp., v. Kevin Willes Construction Company Inc*., 856 A.2d 626, 642 (Md. 2004) .......... 11
*St. Jean Place Condo. Ass'n v. DeLeo*, 745 A.2d 738 (R.I. 2000) .......... 12
*Stoll v. Principi*, 449 F.3d 263, 265 (1st Cir. 2006) .......... 20
*Sunshine Development, Inc. v. F.D.I.C.*, 33 F.3d 106, 116 (1st Cir. 1994) .......... 21
*Thomas J. Peck & Sons, Inc., v. Lee Rock Products, Inc.*, 515 P.2d 446, 449 (Utah 1973) .......... 14

**Statutes**

11 U.S.C. §105(a) .......... 21
11 U.S.C. §510(c) .......... 21
28 U.S.C. §157(b)(2)(A) .......... 19
RIGL §11-44-26(a) .......... 7
RIGL §34-36.1-(7)(i) .......... 10
RIGL §34-36.1-1.08 .......... 11
RIGL §34-36.1-2.07 .......... 12
RIGL §34-36-3(18) .......... 10
RIGL §45-23-32(27) .......... 5

**Treatises**

RESTATEMENT (SECOND) OF TORTS, § 157 .......... 6

**Other**

H.R.Rep. No. 595, 95th Congr., 1st Session 359 (1977) .......... 21

## INTRODUCTION

Debtor responds to the Condominium Associations' Reply Brief filed June 8, 2007 (the "Reply Brief"). As provided by the Rules, Debtor will address only those issues raised by its cross-appeal of the Bankruptcy Court's decision that Debtor was a trespasser.[1]

At a cost of millions of dollars, IDC Properties, Debtor's affiliate, developed and constructed the Regatta Club from which Debtor operated a successful commercial banquet facility. Based on its interpretation of the Rhode Island Condominium Act that IDC Properties had not timely preserved its right to develop the Reserved Area, the Rhode Island Supreme Court turned over to the Goat Island condominium unit owners "one of Newport's crown-jewel properties * * * located on prime waterfront property."[2] In return, Debtor's affiliate was awarded no compensation for the value of the multimillion-dollar improvement to the Reserved Area.

Now, pouring salt in a painful wound, the Condominium Associations claim that Debtor was a trespasser on the Reserved Area and should pay for its use of the property from 1998 to April 2005 albeit Debtor paid substantial rent to its assumed rightful lessor for that period.[3] Debtor openly operated the Regatta Club from its inception. Many, if not all, of the individual condominium unit owners and the Condominium Associations[4] were well aware that Debtor was

---

[1] However, Debtor cannot ignore the Condominium Associations' tactic of either incorrectly associating Debtor with arguments it never made or misstating Debtor's positions. For example, the Condominium Associations assert that "[d]ebtor finally admits that claim preclusion does not apply." Reply Brief at 2. Debtor has never argued claim preclusion. The Condominium Associations frequently use such rhetorical technique to set up a straw-man argument. Ordinarily, litigants respond to each argument one-by-one, but time and space here are limited. As necessary, Debtor will selectively do so but also reserves the right to address this issue at oral argument, if afforded that opportunity. Obviously, we firmly dispute such allegations and emphasize that Debtor's silence here is not a concession.

[2] *America Condo. Ass'n v. IDC, Inc.*, 844 A.2d 117, 142 *et seq.* (R.I. 2004), (Flanders, J. dissenting), (Rec.App. #20, Ex. A), *aff'd on reh'g*, 870 A.2d 434 (R.I. 2005) (Rec.App. #20, Ex. B). The 2004 decision is referred to as "*America I*" and the 2005 decision as "*America II*".

[3] Rec.App. #20, p.5.

[4] For convenience, references to the "Condominium Associations" will also include the individual condominium unit owners.

operating the Regatta Club from at least 1998 to April 2005. Nevertheless, the Condominium Associations never raised an objection to, challenged or even questioned Debtor's occupancy until June 2005.[5] Despite this tacit consent as well as instances of explicit assent[6] to Debtor's occupancy of the Reserved Area and despite the Rhode Island Supreme Court's prohibition against the Condominium Associations pursuing IDC entities for profits from the operation of the Regatta Club,[7] the Condominium Associations demand millions of dollars of rent from Debtor.

The Bankruptcy Court erred, both procedurally and substantively, in holding *sua sponte* that Debtor was a trespasser on the Reserved Area and granting summary judgment to the Condominium Associations on that issue.[8] The record clearly reflects that the Condominium Associations never moved for summary judgment. Convinced that the Rhode Island Supreme Court's decision and the law regarding possessory rights would defeat the trespass claims, Debtor, and only Debtor, moved for summary judgment, filing its motion before discovery had been completed. Debtor asked the Bankruptcy Court to grant summary judgment on very narrow issues where the facts of just two of its numerous defenses were clearly undisputed.[9] In fact, the Bankruptcy Court stayed any further discovery pending resolution of Debtor's summary judgment motion. The narrow issues raised were that the Condominium Associations never had the possession necessary to claim trespass damages, that Debtor had leased the Reserved Area from an entity that had a legal right as a tenant in common to rent the property and that the Rhode Island Supreme Court's decisions in *America I* and *America II* collaterally estopped the

---

[5] Rec.App. #20, p.5. Moreover, during the entire period and until Debtor vacated the property, IDC Properties paid condominium fees for the Reserved Area to GISCA, and GISCA continued to accept the fees even after the RISC decision that the Reserved Area belonged to the condominium unit owners as tenants in common.
[6] Rec.App. #16, p. 40 lines 2-25.
[7] *America I*, 844 A.2d at 135, n.24. (Rec.App. #20, Ex. A)
[8] *In re Clambakes*, 360 B.R. 24, 27(Bkrtcy D.R.I. 2007) (Rec.App. #9, pp.7 and 9.)
[9] *In re Clambakes*, 360 B.R. at 27 (Rec.App. #20, p.2.)

Condominium Associations' claims for damages from Debtor. The Condominium Associations did not move for summary judgment, and the Bankruptcy Court was clearly erroneous in stating that the parties had filed cross-motions for summary judgment.[10]

Before discovery was completed and Debtor could develop facts and present defenses raised in its objection to the Condominium Associations' claims, and without a motion, the Bankruptcy Court, *sua sponte*, found Debtor to be a trespasser.[11] This finding was, at best, premature and on an incomplete record.[12] Debtor objected to the Condominium Associations' assertion of trespass and the claims for damages asserting numerous bases for disallowing the claim.[13] Debtor has not been heard on whether the Condominium Associations consented to its occupancy, which consent would preclude their claims that Debtor was a trespasser. Other defenses yet to be considered include whether the Condominium Associations' claims are barred by estoppel, laches and the statute of limitations among other defenses covered by Debtor's objection.[14]

Upon this Court's *de novo* review, Debtor urges that it reverse the Bankruptcy Court's holding that Debtor was a trespasser. This Court should hold as a matter of law that the Debtor was not a trespasser, or alternatively, that Debtor has a right to complete its discovery and to be heard on its defenses to the Condominium Associations' claims.

---

[10] *Id*.
[11] *Id*.
[12] The Bankruptcy Court also found IDC Properties to be a trespasser. Rec.App. #20 at 7. This, too, was error, and as argued in Debtor's earlier brief, in light of the impact such a holding could have on complex state court proceedings among the parties here and others, this ruling on such an incomplete and undeveloped record is inappropriate.
[13] Rec.App. #26.
[14] *Id*.

## I. DEBTOR WAS A RIGHTFUL OCCUPANT OF THE RESERVED AREA AND THEREFORE NOT A TRESPASSER

### *A. Actual possession of the Reserved Area by Debtor and its affiliates, without interruption, precludes the Condominium Associations' Proofs of Claim for trespass.*

The Condominium Associations never had actual possession of the Reserved Area until November 5, 2005. There is simply no authority for their assertion that possession of condominium units by the individual owners gave them actual possession of the non-contiguous Reserved Area.[15] Their individual units and the Reserved Area were legally and physically separate properties. Their ownership interests in each were different. Therefore, it was legally and physically impossible for actual possession of their units to provide them actual possession of the Reserved Area, a common element. There has been no showing that the Condominium Associations had anything other than constructive possession of the common element.

When the Goat Island condominium was created, the original declarant owned all the properties, that is, the individual units and the common elements. The original declarant was Globe Manufacturing, followed immediately by IDC, Inc. in 1988, and then IDC Properties, Inc. in 1994.[16] In fact, Declarants, never the individual unit owners, had actual possession of the Reserved Area continuously from inception of the condominium.[17]

Therefore, from 1988 until November 5, 2005, the Reserved Area was in the uninterrupted, actual possession of the Declarants and then Debtor.[18] Under the law of trespass, Debtor's actual possession of the Reserved Area on these facts precludes anyone who claims to

---

[15] Reply Brief at 15 *et seq*.
[16] For ease of reference, these three entities, collectively as the original declarant and successor declarants, will be referred to the "Declarants."
[17] For example, as noted during oral argument on the Motion for Summary Judgment, IDC Properties had used the Reserved Area for various events. Rec.App. #16, p.40, lines 3-9.
[18] That the Reserved Area was "an unimproved common element . . . prior to 1995" (Reply Brief at 16) does not resolve who had possession of it both prior to 1995 and between 1995 and 1998 when Debtor took actual possession from IDC Properties after construction of the Regatta Club and began occupation.

have constructive possession or anyone who might have actual "co-possession" from claiming damages from Debtor for trespass on the Reserved Area.

The Condominium Associations apparently recognize that their title to the Reserved Area gave them only constructive possession and insufficient to overcome Debtor's actual possession for the purposes of their trespass claim. Therefore, they posit a novel argument for the first time in this dispute that because each unit owner has actual possession of his individual condominium unit "it follows" that he has actual possession of the common elements, here the Reserved Area, in which he holds an undivided interest as a tenant in common.[19] However, there is no authority for this conclusion.

The individual condominium units are legally and physically distinct from the Reserved Area. The nature of the ownership interest in each differs. Under no circumstances, despite the Condominium Associations' argument, could they be considered a "tract," the "owner's possession of part . . . extend[ing] to the whole."[20] This conclusion is reinforced by the statutory definition of "parcel" as "[a] lot, or contiguous group of lots in single ownership or under single control, and usually considered a unit for purposes of development. *Also referred to as a tract*." RIGL §45-23-32(27).[21] (emphasis added.)

[19] Reply Brief, at 16.

[20] Reply Brief at 16 (quoting 87 C.J.S., Trespass §22.)

[21] See also, 26 C.F.R. 1.614-1(a)(3) definition of property,

> The term tract or parcel of land is merely descriptive of the physical scope of the land to which the taxpayer's interest relates. It is not descriptive of the nature of his rights or interests in the land. All contiguous areas (even though separately described) included in a single conveyance or grant or in separate conveyances or grants at the same time from the same owner constitute a single separate tract or parcel of land. Areas included in separate conveyances or grants (whether or not at the same time) from separate owners are separate tracts or parcels of land even though the areas described may be contiguous. *If the taxpayer's rights or interests within the same tract or parcel of land are dissimilar, then each such dissimilar interest constitutes a separate property*. (emphasis added.)

***B. The Condominium Associations simply did not have possession adequate to claim that Debtor was a trespasser.***

The Condominium Associations cannot show they had actual possession of the Reserved Area at any time before November 5, 2005. Although the Condominium Associations may assert that they were entitled to possession during the period of the alleged trespass, such a naked assertion is never sufficient to maintain an action for trespass against a party who occupies and possesses property. *See Casey v. Mason*, 59 P. 252, 254 and 255 (Okla. 1899). The *Casey* Court summarized this common law trespass requirement, which it demonstrated as "amply supported by the authorities," as follows:

> We think that one is not entitled to maintain an action for trespass unless he is in the actual possession of the realty, except where he holds the fee, and the injury is to the land itself, or *where plaintiff owns the fee, and further shows by his petition that the land is unoccupied, and he has constructive possession thereof.*

*Id.* at 254 (emphasis added). The Condominium Associations failed to establish occupancy and actual possession of the Reserved Area or constructive possession of the Reserved Area during the period of the alleged trespass.

> The rule of constructive possession was first enunciated by the courts of this country during the early days when the country was sparsely settled and when it was impossible for one who owned a large tract of land to inclose it and take actual possession thereof. . . . [B]y occupying a part of the real estate, the law presumed that the occupant was in the actual possession of all of the land in that particular tract for which he held legal title, *provided, however, that no one else occupied the land* . . . .

*Casey v. Mason*, 59 P. 252, 255 (Okla. 1899) (emphasis added).

The RESTATEMENT (SECOND) OF TORTS defines possession as follows:

> . . . a person who is in possession of land includes one who (a) is in occupancy of land with intent to control it, or (b) has been but no longer is in occupancy of land with intent to control it, if, after he has ceased his occupancy without abandoning the land, no other

> person has obtained possession as stated in Clause (a), or (c) has the right as against all persons to immediate occupancy of land, *if no other person is in possession as stated in Clauses (a) and (b)*.

RESTATEMENT (SECOND) OF TORTS, § 157 (emphasis added).

In *Knowles v. Nichols*, 2 R.I. 198, 202*,* 1852 R.I. LEXIS 27 (1852), the court stated:

> The defendant admitted his entry upon the premises and carrying away a quantity of sea-weed therefrom, as alleged in the plaintiff's declaration, but put the plaintiffs to prove their possession. No proof was offered of any actual possession or occupation by them, but they proceeded to put in proof of title to the premises in question, and, thereby, to prove a constructive possession of the close, *no other person having been in possession*. (emphasis added.)

Likewise in the instant case, the unit owners were declared the owners of the property in 2004 by the *America I* decision, and such title gave them constructive possession. But, constructive possession was insufficient to create a possessory right that warranted a trespass claim because Debtor and its immediate predecessors had actual and uninterrupted possession of the Reserved Area from its creation. At a minimum, it was incumbent on the unit owners to ask Debtor to leave[22] or ask a court to direct it to leave in accordance with Rhode Island law on ejectment.

***C. Even under the Bankruptcy Court's standard, Debtor was not a trespasser.***

The Bankruptcy Court held that "[t]o establish a trespass in Rhode Island it must be shown that: (1) the alleged trespasser intentionally entered onto the owner's property; and (2) the

[22] The Condominium Associations cite the Rhode Island criminal trespass statute (RIGL §11-44-26(a)) in a surprisingly misleading manner. The statute reads in full:

> Every person who willfully trespasses or, having no legitimate purpose for his or her presence, remains upon the land of another or upon the premises or curtilage of the domicile of any person legally entitled to the possession of that domicile, *after having been forbidden to do so* by the owner of the land or the owner's duly authorized agent or a person legally entitled to the possession of the premises, shall be punished by a fine not exceeding one thousand dollars ($1,000), or imprisonment for a term not exceeding one year, or both. (emphasis added.)

*owner* had rightful, *exclusive* possession of the property." *In re IDC Clambakes, Inc.*, 360 ,B.R. at 27 (emphasis in original)[23] Although this standard is erroneously applied and reversible as a matter of law, the Condominium Associations never made any showing that they had "exclusive possession" of the Reserved Area.

As noted, the Declarants and the Debtor, openly and in uninterrupted succession from 1988 to 2005, had actual possession of the Reserved Area. The Condominium Associations, under their best case, can show only that they along with IDC Properties possessed the Reserved Area when Debtor entered the property in 1998. This is hardly "exclusive" possession that the bankruptcy court incorrectly stated was the standard. Accordingly, the Bankruptcy Court was clearly erroneous as to the relevant facts and its legal conclusion as to Debtor being a trespasser.

***D. The validity of the lease between IDC Properties and Debtor is irrelevant to determining whether Debtor was a trespasser.***

Furthermore, whether the lease between Debtor and IDC Properties was valid or not, Debtor could not be a trespasser. The Condominium Declaration (the "Declaration") has not been challenged, and the Sixth Amendment to the Declaration has not been challenged.[24] By virtue of those two documents, both of which remain valid and operative according to their terms, IDC Properties, as declarant (as well as owner of individual units), had the authority to permit Debtor to enter the Reserved Area. Moreover, the Condominium Associations are in error when they argue that the lease must be held invalid and therefore, Debtor must be found a trespasser. If the lease was void, Debtor was not a wrongdoer or a trespasser until the Condominium Associations put Debtor on notice how they intended to treat Debtor's occupancy

---

[23] Rec. App. #9, p.5.
[24] *America I*, 844 A.2d at 120. (Rec.App. #20, Ex.A)

of the Reserved Area. See *Providence Co. Sav. Bank v. Hall*, 13 A. 122, 124 (R.I. 1888). And, that occurred no earlier than June 2005 with their action for ejectment .

The Condominium Associations knew of Debtor in 1997 and of its occupancy of the Reserved Area in 1998.[25] Nevertheless, they could have, but did not, include Debtor as a party to the 1999 lawsuit.[26] They could have, but did not, take action against Debtor and its occupancy in 2004 after the *America I* decision. In early June 2005, when they filed an Application for Writ of Execution for Possession and Writ of Ejectment, they could have, but again did not, include Debtor.[27] It was not until after Debtor filed its bankruptcy petition on June 16, 2005, seven years after Debtor first occupied the Reserved Area, six years after the Condominium Associations filed the lawsuit that triggered these events, and more than a year after the *America I* decision that the Condominium Associations took any action against Debtor occupying the Reserved Area and operating the Regatta Club.[28] On this record of delay and inaction, the Condominium Associations are not entitled to a finding of trespass or damages.

***E. Whether IDC Properties had the legal authority to lease the common elements has no bearing on Debtor's status while it occupied the reserved area.***

The Condominium Associations argue that the Condominium Act, not common law principles of tenancy in common, controls the rights and responsibilities of those who are subject to a condominium regime. See Reply Brief at 14. According to the Condominium Associations, the Condominium Act prevents a co-owner from conveying any portion of the common element to a third party unless certain procedures are followed. *Id.* Because these procedures were not followed in this case, IDC Properties did not have the right to lease the Reserved Area to the

---

[25] Rec.App. #16, pp.29-30.
[26] Rec.App. #31, p.4.
[27] Rec.App. #36, p.4.
[28] *Id*.

Debtor. *Id*. The Condominium Associations leap to the unsupportable conclusion that Debtor must therefore be a trespasser. *Id*.

Their analysis ignores the case law that a lessee who entered the leased premises under a potentially void lease is not automatically regarded as a trespasser. It is undisputed that IDC Properties could consent to Debtor entering the Reserved Area and that the lease, whether void or not, constituted that consent. Therefore, Debtor occupied the Reserved Area with the explicit consent of an owner of the property.[29] Whether IDC Properties had the right to transfer any common element is completely irrelevant to the analysis of whether Debtor was a trespasser.

***F. Common law principles supplement the Condominium Act.***

Although a condominium is a creature of statute, it does not follow that the condominium form of ownership is neither a freehold nor a tenancy in common. See Reply Brief at 14. The Condominium Act actually provides ownership rights in both fee simple and tenancy in common. In relevant part, a condominium is defined as:

> Real estate, portions of which are designed for separate ownership and the remainder of which is designated for *common ownership* solely by the owners of those portions. Real estate is not a condominium unless the undivided interest in the common elements are vested in the unit owners. (emphasis added).

RIGL §34-36.1-(7)(i).

A "unit owner" in a condominium regime is defined as:

> Person who owns a unit, or a lessee of a unit in a leasehold condominium whose lease expires simultaneously with any lease, the expiration or termination of which will remove the unit from the condominium, but does not include a person having an interest in a unit solely as a security for an obligation.

RIGL §34-36-3(18).

---

[29] By virtue of their failing to take any action regarding Debtor for seven years, there was at least the implicit consent of the Condominium Associations.

To qualify as a condominium, a party must have a fee interest ownership in their unit and an undivided interest in all the common areas with other unit owners as tenants in common. *McConnell v. Wilson,* 543 A.2d 249, 250 (R.I. 1988); *see also Southern Management Corp., v. Kevin Willes Construction Company Inc*., 856 A.2d 626, 642 (Md. 2004) ("in regard to common elements, [a unit owner] can be said to have a tenancy in common with all of the other condominium unit owners"); *Dutcher v. Owens*, 647 S.W.2d 948, 949 (Tex. 1983) ("In essence, the condominium ownership is the merger of two estates into one: the fee simple ownership of an apartment or unit…and a tenancy in common with other co-owners in the common elements.") Hence, the Condominium Act does not create a new legal form of ownership. Instead, the Condominium Act merely joins two types of estates long recognized in common law: fee simple and tenancy in common. In analyzing issues that arise regarding the common areas, courts can and should apply common law principles that apply to tenants in common.

The Condominium Act specifically provides for the application of common law principles of real property to supplement the statute. In relevant part, the Condominium Act states: "The principles of law and equity, including . . . the law of real property. . . or other validating or invalidating cause supplement the provisions of this chapter, except to the extent inconsistent with this chapter." RIGL §34-36.1-1.08. The Commissioner's Comment explains that:

> "this Act displaces existing law relating to condominiums and other law only as stated by specific sections and by reasonable implication therefrom. Moreover, unless specifically displaced by this statute, common law rights are retained. This listing given in this section is merely an illustration; no listing could be exhaustive."

*Id.*

Therefore, to the extent not inconsistent with the Condominium Act, not only do common law principles regarding real property apply, but also principles of statutory construction and Rhode Island law dictate that the common law applies where there is no provision otherwise.[30]

Debtor relies on the cases discussing common law principles of tenancy in common to illustrate by analogy that the Debtor is not a trespasser. These cases give effect to the notion that a tenant in common may legally invite others onto the commonly owned property. Moreover, the Condominium Associations mistakenly try to link the effect the Condominium Act has on the lease as a result of IDC Properties' actions with the effect that such actions have on Debtor's status.

Debtor acknowledges that RIGL §34-36.1-2.07 and the decision in *St. Jean Place Condo. Ass'n v. DeLeo*, 745 A.2d 738 (R.I. 2000) may restrict unit owners from conveying an interest in the common elements.[31] But, breaching that restriction does not transform Debtor into a trespasser during its occupancy of the Reserved Area. The fact of the lease, void or not,[32] determines that Debtor had consent to enter the Reserved Area. Consent is fatal to the Condominium Associations' claim that Debtor was a trespasser. Therefore, at a minimum, the court should consider all of the facts after they are the subject of discovery and properly presented to the court. A *sua sponte* consideration on limited facts is clearly erroneous and should be reversed.

---

[30] See RIGL §43-3-1.
[31] In fact, as was argued below, the penalty for IDC Properties leasing the Reserved Area without proper authority is a $50 fine. (Rec. App. #16, p. 32.)
[32] As noted, for seven years, the Condominium Associations took no action regarding Debtor.

### ***G. A lessee who enters the property under a void or invalid lease may not be treated as a trespasser.***

One who enters the property of another with consent or privilege is not a trespasser. *Ferreira v. Strack*, 652 A.2d 965, 969 (R.I. 1995); *Bennett v. Napolitano*, 746 A.2d 138, 141 (R.I. 2000) ("a trespasser is 'one who intentionally and without consent or privilege enters another's property'"). In fact, Debtor entered the Reserved Area with the explicit consent of IDC Properties. That consent happens to be memorialized by a lease.[33] Although the lease may be void, the underlying consent remains. Debtor received IDC's consent and entered the Reserved Area before the 1999 lawsuit was filed.[34] As the record reflects, the Condominium Associations knew that Debtor was occupying the Reserved Area and knew that Debtor was conducting business at the Regatta Club when they initiated their 1999 lawsuit.[35] They made no reference to Debtor or its operations and never objected to Debtor's occupation until June 2005.[36]

Based on the holdings in *America I* and *America II* that title to the Reserved Area belonged to the unit owners as a common element and provisions of the Condominium Act, the Condominium Associations argue that the lease between IDC Properties and Debtor was void. However, it does not follow that Debtor was a trespasser, and in fact, it was not.

Accepting the Condominium Associations' argument at its most extreme, Debtor was a tenant subject to a void lease. A tenant that enters premises subject to a void or parol lease cannot be a treated as a trespasser. *See Diamond Housing Corporation v. Robinson*, 257 A.2d 492, 495 (D.C. App. 1969) (tenant who entered possession under a void and unenforceable lease

---

[33] Rec.App. #20, p.5.
[34] *Id*.
[35] Rec.App. #16, pp.29-30..
[36] Rec.App. #31, p.4.

was not a trespasser but became a tenant at sufferance);[37] *see also Thomas J. Peck & Sons, Inc., v. Lee Rock Products, Inc.*, 515 P.2d 446, 449 (Utah 1973) (holding that tenant who entered property under a void lease was not a trespasser and explaining "tenancy is not dependent on the terms of the invalid lease, but is implied by the law from the occupancy of the premises under the agreement, and that such tenant cannot justly be treated as a trespasser") (citing 49 Am. Jur. 2d 89); *Snyder v. Harding*, 80 P. 789, 792 (Wash. 1905) (holding that tenant entering a land under a void lease is not a wrongdoer nor a trespasser and stating "he [tenant] was not at the time of sowing said disputed crop a wrongdoer, nor was he a trespasser on said land. On the contrary, he was then rightfully in possession."); *Buchanan v. Jencks*, 96 A. 307, 311 (R.I. 1916) (holding that a party who entered a property owned by several people as tenants in common due to an invitation by one co-owner is not liable for trespass to the other co-owners). In addition, given that Debtor already paid rent to IDC Properties for the use of the Reserved Area pursuant to the void lease, the Condominium Associations are not entitled to any additional rental payments as damages. *See Diocese of Buffalo v. McCarthy*, 91 A.D.2d 213, 222 (N.Y.A.D. 4 Dept. 1983) (holding that lease was void but owner of the property was not entitled to any damages in the form of rent for the use and occupancy of the property from the tenant because the tenant had already paid rent during the occupancy).

[37] Moreover, the court in *Diamond Housing Corporation* further explained, "Appellant contends that the determination that a lease is void and unenforceable results in a rescission of the lease agreement, and requires the tenant to return possession of the premises. We do not agree. It is well established that an agreement entered into in violation of the law creates no rights upon the wrongdoer. The defense of illegality does not rescind the illegal agreement, but merely prevents a party from using the courts to enforce such agreement." *Id.* at 495. In this case, the Condominium Associations incorrectly argue that the legality of the lease is determinative of whether Debtor is trespasser. The legality of the lease only determines whether the document itself can be enforced in a court of law. Thus, Debtor may be precluded from enforcing the lease against the Condominium Associations. But, Debtor does not automatically become a trespasser by operation of law.

Importantly, the Condominium Associations' delay in treating Debtor as a trespasser illustrates that they considered Debtor to be a tenant. *See Providence Co. Sav. Bank v. Hall*, 13 A. at 124, where the Rhode Island Supreme Court stated:

> We decide, in accord with what we consider to be the greater weight of American authority, that if a tenant holds over without a new contract, it is optional with the landlord to treat him either as a trespasser or as a tenant from year to year, in case the prior term was for a year or longer, and, if the prior term was shorter than a year, then from term to term, according to such shorter time,--an election to treat him as a tenant, however, being inferable from any unreasonable delay to proceed against him as a trespasser, as well as from words or acts directly recognizing him as tenant.

IDC Properties leased the Reserved Area to Debtor in 1998.[38] The Rhode Island Supreme Court issued the *America I* decision on March 24, 2004. The decision applied retroactively to 1994, when the development rights of IDC Properties expired, and held that title vested[39] in the unit owners. From March 2004 to June 2005, IDC Properties continued, as it had historically, to pay condominium fees to GISCA for the Reserved Area, and GISCA, as it had historically, solicited and accepted those payments. In June, 2005, more than a year after the *America I* decision, the Condominium Associations initiated eviction proceedings against Thomas Roos and IDC Properties.[40] Although at the time, the Condominium Associations were well aware that Debtor was operating on the Reserved Area, Debtor was not a party to the eviction proceedings.[41] Prior to this bankruptcy case, the Condominium Associations *never*

---

[38] Rec.App. #20, p.5.
[39] In *America II*, the court modified its holding and concluded that title "rested" with the unit owners from creation of the condominium subject to Declarant's development rights. *America II*, ,870 A.2d at 443.
[40] Rec.App. #20, pp.6-7.
[41] Rec.App. #36, p.4.

notified Debtor that it could not occupy the Reserved Area.[42] Debtor finally vacated the Regatta Club on November 5, 2005 pursuant to a consent order entered in August of that year.[43]

The totality of these actions (and inaction) illustrate that the Condominium Associations regarded Debtor as a tenant, not a trespasser. The seven years that passed before they called Debtor a "trespasser" demonstrate that they considered Debtor to be a tenant during that period.[44] Importantly, regardless what the Condominium Associations "considered" Debtor to be, the law is that Debtor was not a trespasser.

The Condominium Associations correctly state, "this is really not hard. If someone breaks and enters your vacation home in New Hampshire or builds a house on your empty lot in Iowa, he is trespassing." Reply Brief at 21. However, Debtor did not "break and enter" and, despite the Condominium Associations unsupported assertion, Debtor did not breach the peace as they curiously argue. Reply Brief at 17. Debtor entered the Reserved Area and operated the Regatta Club with consent of one of the co-owners and with the consent and acquiescence of the Condominium Associations.

## II. THE BANKRUPTCY COURT ERRED IN *SUA SPONTE* GRANTING SUMMARY JUDGMENT TO THE CONDOMINIUM ASSOCIATIONS, NO MOTION HAVING BEEN MADE, DISCOVERY HAVING NOT BEEN COMPLETED AND DEBTOR HAVING DEFENSES NOT PRESENTED

Despite the Bankruptcy Court's reference to there being cross-motions for summary judgment, the Condominium Associations never moved for summary judgment. This was a clear error of fact. Moreover, at the time Debtor's motion was under consideration, discovery had not

[42] Rec.App. #20, p.7.
[43] Rec.App. #20 , p.6; #33.
[44] If they believed Debtor to be a trespasser, the Condominium Associations should have and could have initiated a an action for trespass and ejectment, which would have addressed both possession and Debtor's status. They did not choose to do so.

been completed and, in fact, had been stayed.[45] Additionally, Debtor's objections to the Condominium Associations' Proof of Claim were comprehensive, encompassing factual and legal issues never addressed in its summary judgment motion, including but not limited to estoppel, laches, waiver, consent, limitations and contractual rights.[46] Debtor was neither obligated nor on notice to present these issues for consideration in its summary judgment proceedings.

Despite the Condominium Associations' declarative statement that Debtor was a trespasser, a strategy to rebut Debtor's motion, Debtor had no notice that the court was considering judgment as a matter of law against it. If it had notice, Debtor would have sought an opportunity to complete discovery and to present other objections to the Proofs of Claim. Instead, the court stayed further discovery by order dated October 31, 2006. The court's findings of fact and conclusions of law finding Debtor to be a trespasser were legally and procedurally erroneous. This court should correct that error by reversing the finding of trespass.

If the Bankruptcy Court concluded that Debtor had not demonstrated that it was not a trespasser as a matter of law (and was not prepared to reach the equitable issue) then the court should have simply denied Debtor's motion. But, it was clearly error to deny Debtor's motion and to affirmatively find, on the existing record, that Debtor was a trespasser.

*Sua sponte* grants of summary judgment are not regarded favorably.

> A district court has power to order summary judgment *sua sponte*, . . . but that power should be exercised sparingly. Courts that yearn for the blossom when only the bud is ready act at their peril; proceeding with unnecessary haste frequently results in more leisurely repentance. Consequently, we have too often in the recent past been forced to vacate *sua sponte* summary judgments.

---

[45] Rec.App. #1, Docket Report entries #448 and 471.
[46] Rec.App. #26, p.1.

> For *sua sponte* summary judgment to be a viable option, discovery in the case must be sufficiently advanced and the party against whom judgment was ordered must have been on notice to bring forth all of its evidence on the essential elements of the critical claim or defense. "Notice" in this context means that the losing party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward. Doubts on this score should be resolved in the loser's favor; "great care must be exercised to assure that the [unsuccessful party] has had an adequate opportunity to show that there is a genuine issue and that his opponent is not entitled to judgment as a matter of law." . . . It is only after these preconditions have been met that the court can proceed to ascertain fairly whether a genuine issue of material fact does or does not exist.

*Jardines Bacata, Ltd. v. Diaz-Marquez*, 878 F.2d 1555, 1560-1561 (1st Cir. 1989) (citations omitted).

> .* * * "It is [clear] that district courts have the power to grant summary judgment *sua sponte*." * * * Two conditions, however, circumscribe the district court's exercise of this power: first, discovery must be "sufficiently advanced that the parties have enjoyed a reasonable opportunity to glean the material facts;" second, the district court must "give the targeted party appropriate notice and a chance to present its evidence on the essential elements of the claim or defense."
>
> * * *
>
> . . . however, the district court never "gave the [cross-Appellants] a meaningful opportunity to cull the best evidence supporting [their] positions, and to present that evidence, together with developed legal argumentation, in opposition to the entry of summary judgment" with respect PIN, Phillips, and Pardilla. . . . On the contrary, the district court's *sua sponte* ruling took these parties by surprise; only Marcello had moved for summary judgment and neither Schiavi nor the Palmer Defendants filed defamation claims against Marcello. . . . .

*Penobscot Indian Nation v Key Bank of Maine*, 112 F.3d 538, 562 (1st Cir. 1997) (citations omitted.).

A finding that Debtor and IDC Properties (a party not even before the court) were trespassers promises to confuse related complex state court proceedings pending among these and other parties and will cause unintended consequences. Moreover, in the unlikely event that this Court reverses the disallowance of the Condominium Associations' claims, the remaining

finding of trespass on such an incomplete record exposes Debtor to damages claimed to be in the millions of dollars. Debtor has a right to have the Bankruptcy Court consider all its defenses to the trespass claims, including those already raised and those that may be identified through discovery.

## III. THE CONDOMINIUM ASSOCIATIONS CONFLATE LEGAL ELEMENTS OF TRESPASS WITH EQUITABLE POWERS OF THE BANKRUPTCY COURT

The Condominium Associations argue that the Bankruptcy Court erred by blending legal doctrine with notions of equitable justice. The Bankruptcy Court's power to allow or disallow claims is grounded in equity and is wholly distinct from the Bankruptcy Court's ruling in regard to the legal claim of trespass.

The Fourth Circuit explained this well-established protocol: "[E]ven though the existence of a claim is controlled by state law, the allowance or disallowance of a claim in bankruptcy is a matter of federal law left to the bankruptcy court's exercise of its equitable powers." *In re Johnson*, 960 F.2d 396, 404 (4th Cir. 1992). The Condominium Associations confuse the role of the Bankruptcy Court, asserting error where none exists.

The Bankruptcy Court was presented with Debtor's Motion for Summary Judgment.[47] Prior to completing discovery or any further proceedings Debtor asserted that the Condominium Associations' claims could not be supported because select critical elements required for a finding of trespass were absent. The Bankruptcy Court *sua sponte* and erroneously found trespass as a matter of law.[48] However, the Bankruptcy Court ultimately reached the right

---

[47] Rec. App. #20.
[48] *IDC Clambakes*, 360 B.R. at 27; Rec. App. #9, p. 7

conclusion because it considered some (but not all) of Debtor's defenses in evaluating the equities and properly disallowed the Proofs of Claim.[49]

The Bankruptcy Court was well within its powers to consider the legal merits of the claim for trespass and then disallow the Condominium Associations' trespass claim based upon the Debtors' defenses and equitable arguments. The most appropriate starting point is 11 U.S.C. §502, which gives bankruptcy courts the power to allow or disallow claims. This power predates the current version of the Bankruptcy Code and has been recognized as a "core" element of bankruptcy courts' power. See 28 U.S.C. §157(b)(2)(A). "This power to allow or disallow claims…is essential to the performance of the duties imposed upon [the Bankruptcy Court].'"[50] At the very core of its decision, the Bankruptcy Court disallowed the Condominium Associations' trespass claim. The Court did not engage in a "free-floating discretion to redistribute rights."[51] Instead, with intimate knowledge of the facts and circumstances of this Chapter 11 reorganization, the Bankruptcy Court recognized that Debtor had bona fide defenses that warranted the disallowance of a proof of claim for trespass.

Judge Votolato considered some of Debtor's defenses in properly disallowing the Condominium Associations' Proofs of Claim.[52] However, the court erred when it determined, *sua sponte* and *prior to hearing* Debtor's other defenses, that Debtor was a trespasser.[53]

By filing proofs of claim, the Condominium Associations submitted themselves to the Bankruptcy Court's equitable jurisdiction and to the prospect of an equitable determination of

---

[49] For the reasons set forth below, this Court should affirm the disallowance of the proof of claim but reverse on the Bankruptcy Court's *sua sponte* finding of trespass.
[50] *Katchen v. Landy*, 382 U.S. 323, 329 (1966).
[51] *In re Chicago, Milwaukee, St. Paul & Pac. R.R.*, 791 F.2d 524, 528 (7th Cir. 1986).
[52] *Stoll v. Principi*, 449 F.3d 263, 265 (1st Cir. 2006) (on appeal, court may affirm "on any ground made manifest by the record.")
[53] Debtor has substantial defenses to the trespass claims but had no opportunity to present them in the best possible light given the procedural setting in which Judge Votolato prematurely and sua sponte found trespass as a matter of law.

their claims. See *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) ("In *Granfinanciera* [ *S.A. v. Nordberg*, 492 U.S. 33 (1989)], we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power."); see also *Katchen*, 382 U.S. at 337 ("'So, in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law…but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control.'"). Indeed, this proposition is so well-settled as to be "mundane." *Sunshine Development, Inc. v. F.D.I.C.*, 33 F.3d 106, 116 (1st Cir. 1994). However, now that the court has disallowed their claim, they argue against the long-observed equity authority of the bankruptcy court to which they voluntarily submitted.

The Condominium Associations challenge Debtor's citing the Supreme Court's decision in *Pepper v. Litton*, 308 U.S. 295 (1939). In *Pepper, the Court* stated that "in the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in the administration of the bankrupt estate." *Id*. at 307-08. The Condominium Associations misinterpret that Debtor's argument is that "a bankruptcy judge can disallow any claim for any reason." Reply Brief at 9. Obviously, bankruptcy judges may not "disallow any claim for any reason," and Debtor has not made that argument.

What Debtor argues is what the law allows. 11 U.S.C. §105(a) empowers bankruptcy courts to "issue any order, process, or judgment that is *necessary or appropriate* to carry out the provisions of this title." (emphasis added.) Indeed, even the Condominium Associations recognize that valid claims may be disallowed if equity so demands pursuant to 11 U.S.C.

§510(c).[54] The Bankruptcy Court disallowed the Condominium Associations' Proofs of Claim as to trespass for equitable reasons and based on valid defenses.

The Bankruptcy Court rightly found it "necessary or appropriate," 11 U.S.C. §105(a), to disallow the Condominium Associations' trespass claims, considering some of the defenses Debtor raised and equitable principles in its analysis. Again, it is the interplay between the Bankruptcy Court's power to allow or disallow claims and the legal elements of trespass that the Condominium Associations confuse. The Condominium Associations correctly quote *Raleigh v. Ill. Dept. of Rev.*, 530 U.S. 15 (2000), insofar as that opinion relates to the prohibition against changing the underlying state substantive law. However, the Condominium Associations are simply wrong that the Bankruptcy Court lacked fundamental equitable authority to apply defenses and equitable principles when it disallowed the Condominium Associations' claims for trespass.[55]

---

[54] The legislative history for §510(c) states that "[t]his section is intended to codify case law, such as *Pepper v. Litton*, 308 U.S. 295…and is not intended to limit the court's power in any way….Nor does this subsection preclude a bankruptcy court from completely disallowing a claim in appropriate circumstances." H.R.Rep. No. 595, 95th Congr., 1st Session 359 (1977); see *In re Adelphia Commc'ns Corp.*, 2007 WL 1673928, *31 (Bkrtcy.S.D.N.Y., June 11, 2007). Even in the absence of the legislative history, bankruptcy courts could equitably subordinate a claim behind the last unsecured creditor to the point that it is effectively disallowed.

[55] The Bankruptcy Court was clearly erroneous in finding that Debtor was a trespasser under Rhode Island law. However, the error as to trespass is self-contained and does not bear on the Bankruptcy Court's equitable authority to allow or disallow claims.

## CONCLUSION

Debtor submits that the Bankruptcy Court ultimately achieved the correct result, but not necessarily for the best reason. Debtor simply was not a trespasser and that is what the Bankruptcy Court should have held. This Court should reverse the finding of trespass and affirm the disallowance of the Proofs of Claim. Alternatively, this Court should return this case to the Bankruptcy Court to permit the parties to complete discovery and for hearing on all of Debtor's objections to the Condominium Associations' Proofs of Claim.

Respectfully submitted,

**IDC CLAMBAKES, INC.**

By its attorneys,
WINOGRAD, SHINE & ZACKS, P.C.

/s/ S. Michael Levin
S. Michael Levin, Esq. (#3796)
Winograd, Shine, and Zacks, P.C.
123 Dyer Street
Providence, RI 02903
Tel. 401-273-8300
Fax 401-272-5728
E-mail: mlevin@wszlaw.com

LINOWES AND BLOCHER LLP

/s/ Paul Sweeney
Paul Sweeney (Pro Hac Vice)
7200 Wisconsin Avenue, Suite 800
Bethesda, Maryland 20814
Tel: (301) 961-5119
Fax: (301) 654-2801
E-mail:psweeney@linowes-law.com

Dated: July 3, 2007

**CERTIFICATE OF SERVICE**

I certify that on this ________ day of July, 2007, I caused a copy of the foregoing to be served via electronic filing:

| | |
|---|---|
| William R. Grimm, Esq.<br>Hinckley, Allen & Snyder LLP<br>1500 Fleet Center<br>Providence, RI 02903 | Charles D. Blackman, Esq.<br>155 South Main Street<br>Suite 101<br>Providence, RI 02903 |

/s/ S. Michael Levin
S. Michael Levin